**FILED**

OCT 3 1 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

STATIC CONTROL COMPONENTS, INC.,

    PLAINTIFF/COUNTERCLAIM
    DEFENDANT

V.

LEXMARK INTERNATIONAL, INC.,

    DEFENDANT/COUNTERCLAIM
    PLAINTIFF

v.

WAZANA BROTHERS INTERNATIONAL,
INC. d/b/a MICRO SOLUTIONS ENTERPRISES

    COUNTERCLAIM DEFENDANT

v.

PENDL COMPANIES, INC.

    COUNTERCLAIM DEFENDANT

v.

NER DATA PRODUCTS, INC.

    COUNTERCLAIM DEFENDANT

PENDING IN THE UNITED STATES
DISTRICT COURT EASTERN
DISTRICT OF KENTUCKY, BEFORE
THE HONORABLE GREGORY F. VAN
TATENHOVE, CIVIL ACTION 04-CV-
84-GFVT.

CASE NUMBER  1:06MS00474

JUDGE: Gladys Kessler

DECK TYPE: Miscellanous

DATE STAMP: 10/31/2006

## MOTION TO QUASH LEXMARK'S SUBPOENA ON OPPOSING COUNSEL

As set forth in the attached Memorandum in support of Motion to Quash Lexmark's

Subpoena on Opposing Counsel, McDermott Will & Emery LLP, by counsel and pursuant to

Federal Rule 45 (c), moves this Court to quash Lexmark's October 18, 2006, subpoena.

Furthermore, pursuant to Federal Rule 11, McDermott respectfully requests an Order granting an

award of its costs in preparing and arguing the motion to quash Lexmark's improper subpoena.

    A proposed draft order is attached hereto.



Respectfully Submitted,

*William H. Barrett*

William H. Barrett
Melise R. Blakeslee
Stefan M. Meisner
Paul E. Poirot
MCDERMOTT WILL & EMERY LLP
600 Thirteenth Street, N.W.
Washington, D.C. 20005-3096
Telephone: 202.756.8000

Kevin M. Bolan
MCDERMOTT, WILL & EMERY LLP
28 State Street
Boston, MA 02109-1775

*Attorneys for Plaintiff/Counterclaim Defendant*
*STATIC CONTROL COMPONENTS, INC.,*

Dated: October **29**, 2006

## CERTIFICATE OF SERVICE

I hereby certify that true and correct copies of the foregoing were served this 31st day of October 2006, by hand delivery and first class mail, as indicated, postage prepaid, to the following:

## BY FIRST CLASS MAIL:

Charles F. Shivel, Jr.
Steven B. Loy
Hanly A. Ingram
STOLL, KEENON & PARK, LLP
300 West Vine St., Suite 2100
Lexington, KY 40507
Fax: (859) 253-1093
*Counsel for Lexmark Int'l, Inc.*

Joseph M. Potenza
BANNER & WITCOFF, LTD.
1001 G Street, NW, 11th Floor
Washington, DC 20001
Fax: (202) 508-9299
*Counsel for Lexmark Int'l, Inc.*

Christopher J. Renk
Binal J. Patel
Jason S. Shull
Timothy C. Meece
BANNER & WITCOFF, LTD.
10 S. Wacker Dr., Suite 3000
Chicago, IL 60606
Fax: (312) 715-1234
*Counsel for Lexmark Int'l, Inc.*

*For William Burrett*

McDermott Will & Emery LLP

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

STATIC CONTROL COMPONENTS, INC.,

    PLAINTIFF/COUNTERCLAIM
    DEFENDANT

    v.

LEXMARK INTERNATIONAL, INC.,

    DEFENDANT/COUNTERCLAIM
    PLAINTIFF

    v.

WAZANA BROTHERS INTERNATIONAL,
INC. d/b/a MICRO SOLUTIONS ENTERPRISES

    COUNTERCLAIM DEFENDANT

    v.

PENDL COMPANIES, INC.

    COUNTERCLAIM DEFENDANT

    v.

NER DATA PRODUCTS, INC.

    COUNTERCLAIM DEFENDANT

Pending in the United States District
Court Eastern District of Kentucky
before the Honorable Gregory F. Van
Tatenhove, Civil Action No. CV-84-
CFVI.

CIVIL ACTION NO.

## MEMORANDUM IN SUPPORT OF MCDERMOTT WILL & EMERY'S MOTION TO QUASH LEXMARK'S SUBPOENA ON OPPOSING LITIGATION COUNSEL

Pursuant to Fed. R. Civ. P. 45(c), the law firm of McDermott Will & Emery LLP ("McDermott") moves this Court to quash the October 18, 2006 subpoena that was served on McDermott by attorneys for Lexmark International, Inc. ("Lexmark").

The subpoena seeks deposition testimony and documents from McDermott in its work as litigation counsel for Static Control Components, Inc. ("Static Control"), a p

suing Lexmark, and one of four parties being sued by Lexmark, in the United States District Court for the Eastern District of Kentucky. The subpoena is part of an unabashed attempt by Lexmark to discover the trial strategy and attorney work product of *all* of its opposing parties' trial counsel,[1] apparently based on an unfounded theory that all of those parties waived their privileges when one of them (not McDermott's client, Static Control) asserted an "advice of counsel" defense to willful patent infringement.[2] The opinion letter that formed this "advice of counsel" was procured years before the litigation commenced by a law firm that has never participated in the litigation for a company never represented by McDermott.

Under Rule 45(c), Lexmark's subpoena must be quashed. McDermott seeks an award of legal fees to compensate for the expenses incurred in defending Lexmark's frivolous attempt to obtain privileged materials and to punish Lexmark for making a tactical maneuver in discovery calculated to distract and harass opposing counsel.

## I.    FACTS.

### A.    Nature of the Underlying Litigation:  Static Control Sued Lexmark and Lexmark Counterclaimed Against Static Control.

McDermott brings this motion in this Court because the subpoena at issue on behalf of this Court. *See* Fed. R. Civ. P. 45(c)(1). The underlying litigation is pending in the United States District Court for the Eastern District of Kentucky, before the Honorable Gregory F. Van Tatenhove. It is the consolidation of two actions that have been pending, respectively, since 2002 and 2004. One of the actions was the subject of the Sixth Circuit's opinion in *Lexmark*

---

[1] *See,* Ex. 1, Letter from M. Krashin, Oct. 26, 2006. Lexmark filed subpoenas on all the attorneys representing all of the parties opposing Lexmark. This decision to file baseless subpoenas against all opposing counsel is particularly suspect because it comes less than three weeks before the close of discovery in the pending litigation.

[2] *See id.* (emphasis added) ("the subpoenas that [Lexmark] served on your respective law firms *regarding Pendl's decision to invoke to the* [sic] *advice of counsel defense*).

*Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522 (6th Cir. 2004) (vacating preliminary

injunction and remanding for further proceedings).[3]

The actions concern certain laser printer toner cartridges manufactured by Lexmark.

Lexmark makes and sells laser printers and then attempts to "license" toner cartridges for those

printers by means that include affixing fine-print labels to the cartridges in an effort to declare

unilaterally that anyone who opens the cartridge box or uses the cartridge is a patent licensee of

Lexmark, bound by the label "license" to use the cartridge only once and then return it to

Lexmark. The object of this scheme is to prevent used cartridges from falling into the hands of

companies known as "remanufacturers," which recycle used cartridges by repairing them and

refilling them with toner so that they can be used again – at a price far below that of buying a

new Lexmark cartridge. There are thousands of such remanufacturers in the United States.

Lexmark's adversaries in these actions are three specific remanufacturers – Pendl

Companies, Inc. ("Pendl"); NER Data Products, Inc.; and Wazana Brothers International, Inc.

(collectively, the "Remanufacturers") – as well as the industry's largest supplier of parts to such

remanufacturers, Static Control. McDermott is counsel for Static Control[4] and has at no time

been retained by or represents Pendl.[5]

---

[3] McDermott does not wish to burden the Court with an exhaustive collection of exhibits
supporting this general background information. McDermott therefore submits as general
support for this summary of the nature of the case Static Control's February 24, 2004 Complaint
for Declaratory Judgment (attached as Ex. 2) and Lexmark's November 8, 2004 Second
Amended Answer and Counterclaims (attached as Ex. 3).

[4] Static Control is also represented by the law firm of Constantine Cannon, P.C., Bartlit Beck
Herman Palenchar & Scott LLP and by Mr. Stanley Amberg. Lexmark also improperly
subpoenaed each, requesting the same information as that requested of McDermott. McDermott
understands that Bartlit Beck and Mr. Amberg have each moved to quash their subpoena in the
issuing court (the District of Colorado and the Southern District of New York, respectively).
McDermott understands that Constantine Cannon is filing its own motion to quash in this Court.

[5] Pendl is represented in this litigation by the law firm of Stites & Harbison, PLLC. As discussed

In broad terms, Static Control and the Remanufacturers contend that Lexmark's "licensing" scheme entails false advertising, constitutes patent misuse and is otherwise improperly anti-competitive.  Lexmark contends that Static Control and the Remanufacturers are willfully infringing Lexmark's patents and/or willfully inducing the infringement of Lexmark's patents by enabling consumers to re-use toner cartridges that Lexmark alleges were licensed to those consumers for only one use.

### B.    McDermott's Role As Litigation Counsel To Static Control.

About October 2000, Static Control retained McDermott to represent Static Control in Europe on a trademark matter brought against Static Control by Lexmark.  *See* Ex. 4, Decl. of William H. Barrett at ¶4.  When Lexmark sued Static Control in December 2002 in the United States, Static Control engaged McDermott as its U.S. litigation counsel.  In furtherance of that engagement, Static Control engaged McDermott as litigation counsel to bring a complaint against Lexmark in 2004.  The 2002 and 2004 cases were ultimately consolidated into the matter currently pending in the Eastern District of Kentucky.  *Id.* at ¶5.  McDermott was retained solely as litigation counsel and not to offer any opinions about the validity or infringement of any patent.  *Id.* at ¶6.  McDermott was not retained by any other party to the litigation.  *Id.* at ¶¶6-7.

As litigation counsel for Static Control, McDermott has not provided any party to this litigation, including Static Control, with any opinion about the validity or infringement of any patent.  *Id.* at ¶ 7.  McDermott has provided no legal services whatsoever to any party other than Static Control.  *Id.*

McDermott has participated with other counsel for Static Control and counsel for all of the Remanufacturers in privileged communications concerning matters of common interest to

---

*infra*, Stites & Harbison did not provide the opinion at issue, did not contribute to the opinion, and was retained by Pendl years after the opinion was rendered.

their preparation for trial, pursuant to a common interest agreement. *Id.* at ¶¶8-9. The common interest agreement does not contemplate the provision of, nor has it been used to provide opinions to, any party about the validity or infringement of any patent. *Id.* at ¶ 7-9. All communications between McDermott and Stites & Harbison relevant and possibly responsive to the subpoena have been made subject to this common interest agreement and in furtherance of the common interest. *Id.* at ¶ 7.

### C.    Pendl's Disclosure Of the 1999 Opinion of Attorney Robert Becker.

On October 13, 2006, Pendl – of its own volition and without requesting or receiving any legal advice from McDermott – disclosed to Lexmark a written opinion of counsel that it apparently procured in 1999, years before any of this litigation began. *See* Ex. 5, Opinion Letter (filed under seal). While McDermott has never discussed this opinion letter with Pendl, it is clearly by its nature an opinion that would support an "advice of counsel" defense to willful patent infringement. *See generally, e.g., Mahurkar v. C.R. Bard, Inc.,* 79 F.3d 1572, 1579 (Fed. Cir. 1996) (whether infringer acted willfully is a question of fact that rests on determination of infringer's state of mind; infringer's good faith reliance on competent advice of counsel constitutes defense to willfulness).

The opinion letter was written by an attorney named Robert Becker, who in 1999 was apparently with the law firm of Coudert Brothers. *See* Ex. 5 (filed under seal). To the best of McDermott's knowledge, neither Mr. Becker nor Coudert Brothers has played any role in this litigation. *See* Ex. 4 at ¶11. McDermott has never had any communications with Mr. Becker or Coudert Brothers concerning Pendl or this litigation. *Id.*

5

**D.    Lexmark Subpoenaed Static Control Counsel, McDermott Will & Emery.**

On October 18, 2006, Lexmark issued its subpoena to McDermott. *See* Ex. 6, Subpoena.[6]

Lexmark did so despite knowing that McDermott is litigation counsel to Static Control, and

despite having no reason to believe McDermott had anything to do with the Becker/Coudert

Brothers opinion letter that Pendl disclosed.  Lexmark's subpoena to McDermott is just one of a

barrage of subpoenas that Lexmark issued the same day to trial counsel for all of its adversaries

in the underlying litigation, all premised on *Pendl*'s disclosure of the 1999 Becker/Coudert

Brothers letter.[7]

The subpoena broadly demands "[a]ll documents and things relating to the subject matter

discussed in" the opinion of counsel letter that Pendl produced to Lexmark when asserting its

opinion of counsel defense.  *Id.* at Request No. 1.  That letter mentions:  (i) the patent laws of the

United States; (ii) the contract laws of the United States; (iii) Pendl's repair of Lexmark

cartridges; (iv) the sale by Pendl of repaired Lexmark cartridges; (v) the exhaustion of any

Lexmark patent right(s) in the cartridges; (vi) Lexmark's anti-competitive behavior; and (vii)

Lexmark's pricing schemes.  *See* Ex. 5 (filed under seal).  Lexmark is likely to interpret the

"subject matter" of the letter at issue with great breadth, even so far as to demand all privileged

---

[6] The subpoena commanded production of documents on October 27, 2006 but the date was extended to October 31 through agreement of the parties during a good faith discussion to resolve the dispute created by the subpoenas.

[7] Lexmark has stated that the instant subpoenas on McDermott and Static Control's other litigation counsel were predicated on Pendl's reliance on the advice of counsel defense. Ex. 1. There is a separate privilege waiver dispute pending before Judge Van Tatenhove involving Static Control, whereby Lexmark contends that Static Control's dissemination in 1998 of a letter written by a law professor, who was not retained as counsel to Static Control, effected a broad privilege waiver.  Lexmark has never served a subpoena on Static Control's law firms for those privileged materials, and that matter currently is under review by Judge Van Tatenhove.

6

attorney-client communication between McDermott and Static Control and all work product produced by McDermott during the litigation.

The subpoena also demands various communications between McDermott and "Pendl" related to virtually every legal contention in the case. *See id.* at Requests Nos. 2-9 and Deposition Topics Nos. 1-8. Importantly, "Pendl" is defined to include Pendl's attorneys (*see id.* at Definition 3) without differentiation between the firms of Stites & Harbison (Pendl's current litigation counsel) and Coudert Brothers (Pendl's previous opinion counsel). As mentioned above, there have been numerous common interest privileged communications between McDermott and the litigation counsel for all the Remanufacturers (including Stites & Harbison). Given the breadth of topics specified by the subpoena, Lexmark seeks most, if not all, common-interest-privileged communications that have taken place among litigation counsel for Static Control and litigation counsel for the Remanufacturers over the course of the entire litigation.

## II.    RELEVANT LAW.

### A.    The Subpoena Must Be Quashed Because It Seeks Information Protected by the Attorney-Client Privilege and Work-Product Doctrine.

Rule 45 provides that a Court *must* quash or modify a subpoena that requires disclosure of privileged or other protected material. *See* Fed. R. Civ. P. 45(c)(3)(A)(iii). This protection applies to subpoenas for production of documents as well as the testimony of witnesses. *Id.* A client has the right to seek this protection when its attorney is subpoenaed and the attorney independently has the right to seek it in favor of his client. *See Estate of Yaron Ungar v. Palestinian Authority*, 400 F. Supp. 2d 541, 554 (S.D.N.Y. 2005) (finding subpoena on counsel's documents required a court to "quash, rather than modify, the subpoena under Rule 45(c)"). McDermott is seeking that protection as to each request and deposition topic in Lexmark's subpoena.

7

### B.    The Attorney-Client Privilege.

The attorney-client privilege exists for a communication between a client and its attorney when the communication relates to a fact which the attorney was informed by his client, in confidence, and was made for the purpose of securing primarily an opinion of law, legal services, or assistance in some legal proceeding, and not for the purpose of committing a crime or tort. *See United States v. Hsia*, 81 F. Supp. 2d 7, 16 (D.D.C. 2000); *see also Upjohn Co. v. United States*, 449 U.S. 383, 389, 66 L. Ed. 2d 584, 591, 101 S. Ct. 677, 682 (1981). "The attorney-client privilege exists to protect confidential communications, to assure the client that any statements he makes in seeking legal advice will be kept strictly confidential between him and his attorney; in effect, to protect the attorney-client relationship." *United States v. American Tel. & Tel. Co.*, 642 F.2d 1285, 1299 (D.C. Cir. 1980). "The attorney-client privilege is one of the oldest recognized privileges for the protection of confidential communications between a client and her attorney." *United States v. Hsia*, 81 F. Supp. 2d at 16. The attorney-client privilege "belongs to the client, not the attorney." *In re Grand Jury Proceedings*, 73 F.R.D. 647, 653 (M.D. Fla. 1977).

### C.    The Work Product Privilege.

Work product "prepared in anticipation of litigation or for trial" is privileged and only discoverable upon a showing of substantial need of the privileged materials and inability, without undue hardship, to obtain their substantial equivalent elsewhere. Fed. R. Civ. P. 26(b)(3). Rule 26(b)(3) specifically instructs that, *even where a showing of substantial need and inability to discovery the information elsewhere is made,* the Court "shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." *Id.* While in certain circumstances the attorney-client privilege can be waived through inadvertent disclosure of the privileged information, the work-

8

product privilege is not easily waived. As the DC Circuit explained in comparing the two privileges:

> the work product privilege docs not exist to protect a confidential relationship, but rather *to promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of the opponent*. The purpose of the work product doctrine is *to protect information against opposing parties*, rather than against all others outside a particular confidential relationship, in order to encourage effective trial preparation.

*United States v. American Tel. & Tel. Co.*, 642 F.2d at 1299 (emphasis added). Only under extraordinary circumstances should a Court order that documents protected by the work product doctrine be produced. Fed. R. Civ. P. 26(b)(3); *see also Hickman v. Taylor*, 329 U.S. 495, 510-13 (1947) ("Were [an attorney's 'statements, memoranda, correspondence, briefs, mental impressions, personal beliefs'] open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial.").

### D.    The Common Interest Privilege.

The joint defense privilege "protects communications between two or more parties and their respective counsel if they are engaged in a joint defense effort." *In re Sealed Case*, 29 F.3d 715, 719 n. 5 (D.C. Cir. 1994). "It permits a client to disclose information to [its] attorney in the presence of joint parties and their counsel without waiving the attorney-client privilege and is intended to preclude joint parties and their attorneys from disclosing confidential information learned as a consequence of the joint defense without permission." *United States v. Hsia*, 81 F. Supp. 2d at 16. The joint defense privilege applies not only to communications subject to the attorney-client privilege, but also to communications protected by the work product doctrine. *In*

*re Grand Jury Subpoenas*, 902 F.2d 244, 249 (4th Cir. 1990). In order to establish the existence of a joint defense privilege, the party asserting the privilege must show that "(1) the communications were made in the course of a joint defense effort; (2) the statements were designed to further the effort; and (3) the privilege has not been waived." *In re Sealed Case*, 29 F.3d at 719 n.15 (quoting *In re Bevill, Bresler & Schulman Asset Management*, 805 F.2d 120, 126 (3d Cir. 1986)). Moreover, the D.C. Circuit has instructed that disclosure of work product to others with a "common interest" does not waive the privilege, stating that "so long as a transferor and transferee anticipate litigation against a common adversary on the same issue or issues, they have strong common interests in sharing the fruit of the trial preparation efforts." *United States v. American Tel. & Tel. Co.*, 642 F.2d at 1299. Such a rule against waiver "furthers the purpose of the work product privilege by protecting attorneys' preparations for trial and encouraging the fullest preparation without fear of access by adversaries." *Id.* at 1300.

## III.    ARGUMENT.

### A.    The Subpoena Must Be Quashed Because It Seeks Information Protected by the Attorney-Client Privilege and Work-Product Doctrine.

Lexmark's document requests and deposition topics effectively demand that McDermott – in its role as trial counsel – divulge privileged communications and work product. Privileged documents are not discoverable. Fed. R. Civ. P. 26(b)(1). Any document or other communication between McDermott and Static Control[8] that is responsive to the topics in the subpoena would have been made to Static Control for the purpose of providing legal services in connection with the ongoing litigation in Kentucky (*see* Ex. 4 at ¶14) and are privileged.

---

[8]    Including those that might be encompassed by Lexmark's Request No. 1.

Similarly, McDermott's communications with Static Control,[9] its litigation preparation,[10] and its communications with Stites & Harbison as trial counsel for Pendl[11] reflect the privileged work product of McDermott on behalf of Static Control, and such work product is also not within the proper bounds of discovery. Fed. R. Civ. P. 26(b)(3). Any document in the possession of McDermott or any other communication by McDermott that is responsive to the topics in the subpoena would have been made in preparation for the anticipated trial in Kentucky. *See id.* at ¶15. More specifically, any communication made by McDermott to Stites & Harbison was made in the course of the joint defense effort to defend against Lexmark's counterclaims and any such communication was designed to further the joint defense effort. *See id.* at ¶16.

Therefore, as all of the requests and topics in the subpoena are directed to privileged information, the subpoena *must* be quashed in its entirety. *See* Fed. R. Civ. P. 45(c)(3)(A)(iii).

## 1.    The Privilege at Issue is Static Control's and Has Not Been Waived.

Static Control has not made an improper disclosure of its attorney-client and work-product privileged information and has not otherwise waived its own individual privilege rights. Further, no action by Static Control or Pendl has waived or violated the common interest privilege rights that exist among Static Control and the Remanufacturers. As the subpoena seeks Static Control's privileged information from McDermott for which no waiver has occurred, the subpoena must be quashed. *Id.*

---

[9]  Including those that might be encompassed by Lexmark's Request No. 1.

[10]  Including those that might be encompassed by Lexmark's Requests Nos. 1-9 and Deposition Topic Nos. 1-8.

[11]  Including those that might be encompassed by Lexmark's Requests Nos. 2-9 and Deposition Topic Nos. 1-8.

2.    **Pendl's Advice of Counsel Defense Does Not Waive Static Control's Privilege.**

Lexmark cannot succeed by contending that the alleged waiver of privilege by Pendl extends to the other Remanufacturers or Static Control. Even if Pendl waived its own privileges with respect to certain materials of its own, or related to advice it received from non-litigation counsel (Coudert Brothers) before litigation commenced, that limited waiver cannot be construed to waive the individual privilege that belongs to Static Control, or the common interest privilege that Static Control shares with the Remanufacturers.

First, any alleged waiver of privilege could not vitiate the common interest agreement the co-defendants counsel entered into for trial preparation, years after Pendl received the legal opinion that Pendl now relies upon to refute willful infringement. Lexmark's assertion that Pendl's advice of counsel defense waives privilege as to all co-defendants is both wrong and fundamentally untenable; because the existence of the common interest agreement *prohibits* one party's disclosure from waiving any other party's privilege. *See, e.g., John Morrell & Co. v. Local Union 304A of United Food and Commercial Workers, AFL-CIO*, 913 F.2d 544, 555-56 (8th Cir. 1990) (it is fundamental that joint defense privilege cannot be waived without consent of all parties to the defense) (citing cases); *In re Grand Jury Subpoenas, 89-3 and 89-4, John Doe 89-129*, 902 F.2d 244 (4th Cir. 1990) (one participant in common interest privilege cannot unilaterally waive privilege without consent of other participants in the privilege).

In the specific context of an advice of counsel defense, one co-defendant's decision to raise the defense does not waive the privilege rights of his fellow co-defendants who share a common-interest agreement to defend themselves in a litigation. *Interfaith Housing Delaware, Inc. v. Town of Georgetown*, 841 F. Supp. 1393, 1402 (D. Del. 1994) ("[W]hen one of two or more clients with common interests waives the attorney-client privilege in a dispute with a third

party [raising an advice of counsel defense], that one individual's waiver does not effect a waiver as to the others' attorney-client privilege.")

Second, even in the absence of a joint defense privilege attaching under a common interest agreement, a co-defendant's advice of counsel defense cannot waive privilege as to other co-defendants. *See Ross v. City of Memphis*, 423 F.3d 596, 603 (6th Cir. 2005) ("[A] municipal official's assertion of the advice of counsel defense does not require the City [of Memphis] to relinquish the privilege it holds."); *AT&T Corp. v. Microsoft Corp.*, 2003 U.S. Dist. LEXIS 8710 *20 (N.D. Cal. April 18, 2003) ("this court could not locate any precedent that allows a party in [a] litigation to waive the privilege claims of a third party through the assertion of an advice of counsel defense").

>  3.    **Although Pendl's Advice of Counsel Defense may Open a Narrow Waiver of Privilege, the Waiver Alleged by Lexmark Does Not Extend to Communications with Trial Counsel.**

Lexmark incorrectly contends that the assertion of Pendl (the party) that it will rely on an advice of counsel defense waived even its own privilege over communications with Pendl's own trial counsel (Stites & Harbison) or work product generated by its own trial counsel (Stites & Harbison), as opposed to the limited waiver of communications with its opinion counsel (Coudert Brothers).

If an accused infringer chooses to rely on an advice of counsel defense, it waives privilege with respect to the communications transmitting the reliance opinion. *Thorn EMI North America, Inc. v. Micron Tech.*, 837 F. Supp. 616 (D. Del. 1993). Materials considered by counsel in rendering the opinion, but not communicated to the client, are protected as work product and are not discoverable. *Id.*; *see also Dunhall Pharm., Inc. v. Discus Dental, Inc.*, 994 F. Supp. 1202, 1205-06 (C.D. Cal. 1998); *Steelcase, Inc. v. Haworth, Inc.* 954 F.Supp. 1195

(W.D. Mich. 1997); *Micron Separations, Inc. v. Pall Corp.*, 159 F.R.D. 361 (D. Ma. 1997).[12]

Even when waiver occurs, such waiver is not unfettered:

> Although the Court recognizes plaintiff's valid interest in discovering all work-product related to the subject matter of the asserted defense, that interest must be balanced with defendants' countervailing interest in protecting their work product. Although defendants have waived work-product protection by asserting the advice of counsel defense, that waiver is not absolute . . . . Following the filing of the lawsuit, defense counsel is engaged in critical trial preparation, often including analysis of the weakness of their client's case. Such analysis, while likely related to the subject matter of the asserted defense, is fundamentally different from a similar pre-litigation analysis. In comparison to work product produced prior to the filing of the lawsuit, litigation-related work product deserves greater protection.

*Dunhall Pharm.*, 994 F. Supp. at 1205-06, quoted in *Beneficial Franchise Co. v. Bank One, N.A.*, 205 F.R.D. 212, 217-18 (N.D. Ill. 2001). Generally, any work product waiver ends once a lawsuit is filed. *Id.* The difference between reliance opinions and litigation counseling is highlighted by the rejection of litigation defenses as adequate opinions on which to place reliance in defense of a charge of willfulness. *Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l., Inc.*, 246 F.3d 1336, 1352 (Fed. Cir. 2001).

Waiver created by the advice of counsel defense does not extend to litigation documents created in anticipation of, or for use at, trial. *See Intex Recreation Corp. v. Metalast*, Civ. No. 01-1213 (JDB), 2005 U.S. Dist. LEXIS 10149, at *10 (D.D.C. March 2, 2005) ("the waiver should not extend to include attorney work product materials created for trial").[13] In fact, many

---

[12] *But see, Mushroom Assoc. v. Monterey Mushrooms, Inc.*, 24 U.S.P.Q.2D (BNA) 1767 (N.D. Cal. 1992); *Haney v. Timesavers, Inc.*, 1995 U.S. Dist. LEXIS 15222 (D. Ore. 1995); *Matsushita Elec. Corp. v. Loral Corp.*, 1995 U.S. Dist. LEXIS 12880, *1-4 (S.D.N.Y. 1996).

[13] This Court has already considered the Federal Circuit's recent *Echostar* decision and rejected a wholesale expansion of the waiver to litigation counsel. *Intex Rec. Corp. v. Team Worldwide Corp.*, 439 F. Supp. 2d 46, 52 (D.D.C. 2006) ("The undersigned finds EchoStar's limited

courts hold that the waiver applies only to communications and documents created before the filing of a lawsuit, and communications and documents created thereafter retain their privilege. *See Dunhall*, 994 F.Supp. at 1206 (C.D. Cal. 1998) ("Once the lawsuit is filed, the waiver of work product protection ends."); *Motorola v. Vosi Techs.*, 2002 U.S. Dist. LEXIS 15655 at *2 (N.D. Ill. 2002). Such a limitation "follows the enhanced interest" in protecting a party against wholesale "disclosure of trial strategy and planning." *Dunhall*, 994 F.Supp. at 1206.

Although some courts find that the waiver extends beyond the filing of the lawsuit, these courts nevertheless limit post-filing discovery to *non-litigation counsel*. They continue to protect litigation counsel and apply the privilege to their advice. *See Tivo v. Echostar*, Civ. No. 2:04-CV-1, 2005 U.S. Dist. LEXIS 42481, at **18-19 (E.D. Tex. Sept. 26, 2005) (denying discovery into opinions by litigation counsel). Even when this Court applied an expansive waiver, it still protected litigation counsel's files, limiting any production to litigation counsel opinions that contradict the infringer's previous patent opinions.[14] *See Intex*, 2005 U.S. Dist. LEXIS at *15. All of these interpretations stand for the general premise that regardless of a court's interpretation of waiver, a party cannot – under the guise of discovery pursuant to an advice of counsel defense – "pillage" its opponent's litigation files. *In re Echostar*, 448 F.3d 1294, 78 USPQ2d 1676, at 1682 (Fed. Cir. 1996). That is precisely and transparently what Lexmark is trying to do by extending Pendl's reliance on the opinion of its non-litigation counsel (Coudert

---

discussion concerning this issue is inapplicable to the instant dispute, and that Intex's suggested standard for determining the limits of discoverable communications and work-product has been previously accepted by this Court. ... [T]he facts considered by the Federal Circuit in its limited discussion of the dispute in EchoStar are distinguishable from those present in the instant case.").

[14] Again, Lexmark's subpoena seeks discovery from McDermott as litigation counsel of ***Static Control*** (not Pendl). McDermott has had no communication with Pendl and has thus made no communications to Pendl that contradict the opinion Pendl received.

Brothers) to its litigation counsel (Stites & Harbison), and then further to McDermott as litigation counsel of Static Control.

**B.    The Subpoena Should be Quashed Because It Fails to Meet Mandatory Prerequisites for Deposing Opposing Counsel.**

Depositions of opposing counsel are disfavored. *Corporation for Public Broadcasting v. American Automobile Centennial Comm'n*, 1999 U.S. Dist. LEXIS 1072, at * 3 (D.D.C. 1999). Even "a deposition of counsel limited to relevant and non-privileged information risks disrupting the attorney-client relationship and impeding the litigation." *RESQNET.com v. Lansa, Inc.*, 59 Fed. R. Serv. 3d (Callaghan) 122, 2004 U.S. Dist. LEXIS 13579, at * 5 (S.D.N.Y. July 23, 2004) (citing *Alcorn Labs v. Pharmacia Corp.*, 225 F.Supp. 2d 340 (S.D.N.Y. 2002)). Taking the deposition of opposing counsel not only "lowers the standards of the profession," but also "detracts from the quality of client representation." *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1987). Counsel should instead be free to devote his or her time and efforts to preparing the client's case "without fear of being interrogated by his or her opponent." *Id.*

This Court has applied the strict test announced by the Eight Circuit in *Shelton*. *See Jennings v. Family Management*, 201 F.R.D. 272, 277 (D.D.C. 2001); *Evans v. Atwood*, 1999 WL 1032811 (D.D.C. Sept. 29, 1999); *Corporation for Public Broadcasting v. American Automobile Centennial Comm'n*, 1999 WL 1815561 (D.D.C. Feb. 2, 1999). Under *Shelton*, depositions of opposing counsel are allowed only if three conditions are met: (1) the information sought is relevant and not privileged; (2) "no other means exists to obtain the information" and (3) "the information is crucial to the preparation of the case." *Shelton*, 805 F.2d at 1327.

Lexmark cannot meet any of these prerequisites. First, the information sought is privileged and Static Control has not waived any privilege. *See* Section III.A, *supra.* Second, Lexmark cannot prove that no other means exist to discover the information. The subpoena

16

seeks testimony about communications between McDermott and Pendl and Pendl's attorneys. To the extent the topics encompass any non-privileged information, Lexmark can simply depose Pendl. Discovering any such information from an alternate source is therefore not only possible, but convenient, as Pendl is a party to the litigation. Third, Lexmark has not and cannot show that deposing McDermott is "crucial" to its case. Discovering Static Control's trial strategy is not appropriate, much less "crucial."

Even courts that have not followed *Shelton* acknowledge the limited circumstances under which opposing counsel may be deposed. In *U.S. v. Philip Morris Inc.*, 209 F.R.D. 13 (D.D.C. 2002), for example, Judge Kessler stated that "There is no question that Shelton addressed a troubling and real-world discovery problem." *Id.* at 17. However, the Court held that the case before it was different from *Shelton* in a number of crucial ways, including the fact that the opposing in-house counsel whose depositions were sought were not trial counsel, that they had significant non-legal, non-litigation responsibilities, and that the plaintiff affirmatively represented that it was not seeking litigation strategy in the case, but only non-privileged, pre-litigation factual matters. *Id.* Because of these differences, the Court determined that the *Shelton* factors did not apply to the case. *Id.* In this case, however, Lexmark is specifically seeking privileged information from trial counsel who had no role in pre-litigation dealings.

Similarly, in *Sadowski v. Gudmundson*, 206 F.R.D. 25 (D.D.C. 2002), Magistrate Judge Facciola allowed a limited deposition of opposing counsel who had participated in a telephone conversation with an officer of the Copyright Office pertaining to the copyright at issue in the lawsuit. Because the trial counsel was also involved in the underlying events supporting the lawsuit, and he had "unique or superior knowledge of key facts" of the case, his deposition was allowed for the limited purpose of obtaining factual information related to the telephone

conference and the copyright application. Id. at 26-27. Unlike the attorney in *Sadowski*,

McDermott had no involvement in the underlying events giving rise to the case nor does it have

any unique or superior knowledge of any "key facts" to the case. Under any standard,

Lexmark's subpoena to McDermott represents a "textbook example" of the abuses of the

discovery rules and an attempt to obtain a preview of the defendants' litigation strategies in this

case and should not be condoned. *Phillip Morris*, 209 F.R.D. at 18.

C.    **The Subpoena Should Be Quashed Because It Does Not Provide a Sufficient Response Time, is Overly Broad and Unduly Burdensome, and Seeks Duplicative Information.**

The subpoena should be quashed because of numerous other deficiencies. First, it

allowed only twelve days for what would be tremendously burdensome document production.

Ex. 6 at 2.[15] This does not constitute a reasonable time for compliance. *See* Fed. R. Civ. P.

45(c)(3)(i) (requiring reasonable time for compliance).

Second, the subpoena is overly broad and unduly burdensome. For instance, it requests

all documents and testimony "relating to" the "subject matter" of the Becker/Coudert Brothers

letter from August 1999. Not only is this request vague, but it could be read to include all

statutes and case law, as well as every document ever written about patent infringement. This

subpoena is overly burdensome and should be quashed. *See* Fed. R. Civ. P. 45(c)(3)(A)(iv)

(quashing subpoena for undue burden).

Finally, the subpoena seeks duplicative documents already sought from the appropriate

party – Pendl. Allowing an opposing litigant to serve discovery on a party and then subpoena its

opposing counsel for the same documents is wasteful. Lexmark is taxing both the Eastern

District of Kentucky's resources where the suit is ongoing and this Court's time (and several

---

[15] As previously discussed, the noticed date of October 27 was extended by agreement to October 31.

other Courts' time) as well. For all these reasons enumerated under Rule 45(c), the subpoena should be quashed.

### D.    Static Control Should Be Awarded Attorney Fees.

A party and its attorney issuing and serving a subpoena "shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena." Fed. R. Civ. P. 45(c).  Moreover, the "court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and a reasonable attorney's fee." *Id.*

A cursory review of the attorney-client privilege would have put Lexmark on notice that its document requests and deposition topics were impermissible and untenable. *See* Section II, *supra*. Any serious consideration of the prerequisites for deposing litigation counsel would have put Lexmark on notice of the impropriety of its subpoena. *See id.* Even in Lexmark's broadest, most optimistic reading of the applicable case law, the proper source of any discoverable case law was ***Pendl*** – not McDermott, Static Control, or any of ***the fifteen other law firms*** upon whom Lexmark served subpoenas.

Finally, regardless of whether Lexmark argues it has appropriate grounds based on the advice of counsel defense asserted by one defendant in this case, it is undeniable that it has sought documents and testimony far exceeding that topic, and Lexmark has served these subpoenas with a tactical purpose of distracting and harassing counsel in the closing weeks of discovery.  Based on these actions, McDermott should be awarded its attorney's fees in response to this motion.[16]

---

[16] At the eleventh hour, Lexmark proposed that all of the parties should consolidate their objections before the Court in Lexington; however, Lexmark's proposal refused to recognize that:  (i) Static Control has made no waiver; (ii) even if Pendl (the party) has waived a privilege, it has no right to waive a privilege held by Static Control and that McDermott defends on behalf

## IV.    **CONCLUSION.**

For the foregoing reasons, McDermott respectfully requests that the Court quash the

subpoena issued by Lexmark and award McDermott its costs in preparing and arguing the instant

motion.

of Static Control; and (iii) any information that might be discoverable from Pendl (the party) would be properly discovered from Pendl, not McDermott or any of the other litigation counsel upon whom Lexmark served its vexatious subpoenae. Further, Lexmark's proposal failed to withdraw the overly-broad topics that would go not only to communications with Pendl (the party) but to Static Control's complete litigation strategy.

Respectfully Submitted,

William H. Barrett
Melise R. Blakeslee
Stefan M. Meisner
Paul E. Poirot
MCDERMOTT WILL & EMERY LLP
600 Thirteenth Street, N.W.
Washington, D.C. 20005-3096
Telephone: 202.756.8000

Kevin M. Bolan
MCDERMOTT, WILL & EMERY LLP
28 State Street
Boston, MA 02109-1775

*Attorneys for Plaintiff/Counterclaim Defendant*
*STATIC CONTROL COMPONENTS, INC.,*

Dated: October __29__, 2006

## CERTIFICATE OF SERVICE

I hereby certify that true and correct copies of the foregoing were served this 31st day of October 2006, by hand delivery and first class mail, as indicated, postage prepaid, to the following:

### BY FIRST CLASS MAIL:

Charles F. Shivel, Jr.
Steven B. Loy
Hanly A. Ingram
STOLL, KEENON & PARK, LLP
300 West Vine St., Suite 2100
Lexington, KY 40507
Fax: (859) 253-1093
*Counsel for Lexmark Int'l, Inc.*

Joseph M. Potenza
BANNER & WITCOFF, LTD.
1001 G Street, NW, 11th Floor
Washington, DC 20001
Fax: (202) 508-9299
*Counsel for Lexmark Int'l, Inc.*

Christopher J. Renk
Binal J. Patel
Jason S. Shull
Timothy C. Meece
BANNER & WITCOFF, LTD.
10 S. Wacker Dr., Suite 3000
Chicago, IL 60606
Fax: (312) 715-1234
*Counsel for Lexmark Int'l, Inc.*

For William Barrett

McDermott Will & Emery LLP

## Issued by the
# UNITED STATES DISTRICT COURT

—————————— **DISTRICT OF** —————————— COLUMBIA

U.S. Small Business Administration, as Receiver for Acorn Technology Fund, L.P.

           **Plaintiffs**

           v.

Smith, Stratton, Wise, Heher & Brennan, LLP, et als.,            **Defendants**

**SUBPOENA IN A CIVIL CASE**

Civil Action No. 05-0190 (JTG) —
Related Case No. 03-0070 (JTG)

received
10.06.06
FILED

OCT 2 7 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

TO:   William H. Malloy
      Small Business Administration
      409 3rd Street, S.W.
      Washington, D.C. 20416-0001

☐   YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case. The deposition shall be recorded by stenographic means.

| PLACE OF TESTIMONY | COURTROOM |
| --- | --- |
|  | DATE AND TIME |

☑   YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
| --- | --- |
| McCarter & English, LLP<br>300 E. Lombard Street<br>Baltimore, Maryland 21202-3219 | October 30, 2006 at 12:00 p.m. |

☐   YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or object At the place, date, and time specified below (list documents or objects):

| PLACE | DATE AND TIME |
| --- | --- |
|  |  |

☐   YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below

| PREMISES | DATE AND TIME |
| --- | --- |
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure 30(b)(6)/

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)<br><br>Steven A. Beckelman, Esq., Attorneys for Defendant(s) | DATE AND TIME<br><br>September 26, 2006 |
| --- | --- |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
McCarter & English, LLP, Four Gateway Center, 100 Mulberry Street, Newark, NJ 07101
(973) 622 – 4444

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

† If action is pending in district other than district of issuance, state district under case number

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

RULE 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in

person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the part in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

Issued by the
# UNITED STATES DISTRICT COURT

——————— **DISTRICT OF** ——————— COLUMBIA

U.S. Small Business Administration, as Receiver for Acorn
Technology Fund, L.P.
<div align="center">Plaintiffs</div>
<div align="center">v.</div>
Smith, Stratton, Wise, Heher & Brennan, LLP, et als.,
<div align="center">Defendants</div>

**SUBPOENA IN A CIVIL CASE**

Civil Action No. 05-0190 (JTG) --
Related Case No. 03-0070 (JTG)

received
10.06.06

TO:    Mark Mead
       Small Business Administration
       409 3rd Street, S.W.
       Washington, D.C. 20416-0001

☐    YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified
     below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☑    YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a
     deposition in the above case. The deposition shall be recorded by stenographic means.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| McCarter & English, LLP<br>300 E. Lombard Street<br>Baltimore, Maryland 21202-3219 | November 10, 2006 at 10:00 a.m. |

☐    YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or object
     At the place, date, and time specified below (list documents or objects):

| PLACE | DATE AND TIME |
|---|---|
|  |  |

☐    YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

        Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one
or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set
forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure
30(b)(6)/

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)<br><br>Steven A. Beckelman, Attorney for Defendant (s) | DATE AND TIME<br><br>September 26, 2006 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
McCarter & English, LLP, Four Gateway Center, 100 Mulberry Street, Newark, NJ 07101
(973) 622 – 4444

<div align="center">(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)</div>

[1] If action is pending in district other than district of issuance, state district under case number

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

| DATE | SIGNATURE OF SERVER |
|---|---|

| | ADDRESS OF SERVER |
|---|---|

RULE 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in

person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

Issued by the
# UNITED STATES DISTRICT COURT

_____ **DISTRICT OF** _____ COLUMBIA

U.S. Small Business Administration, as Receiver for Acorn
Technology Fund, L.P.

Plaintiffs

v.

Smith, Stratton, Wise, Heher & Brennan, LLP, et als.,
Defendants

**SUBPOENA IN A CIVIL CASE**

Civil Action No. 05-0190 (JTG) —
Related Case No. 03-0070 (JTG)

received
10.06.06

TO:    Thomas Morris
Small Business Administration
409 3rd Street, S.W.
Washington, D.C. 20416-0001

☐    YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified
below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
| --- | --- |
| | DATE AND TIME |

☑    YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a
deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
| --- | --- |
| McCarter & English, LLP<br>300 E. Lombard Street<br>Baltimore, Maryland 21202-3219 | December 21, 2006 at 10:00 a.m. |

☐    YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or object
At the place, date, and time specified below (list documents or objects):

| PLACE | DATE AND TIME |
| --- | --- |
| | |

☐    YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below

| PREMISES | DATE AND TIME |
| --- | --- |
| | |

    Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one
or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set
forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure
30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE AND TIME |
| --- | --- |
| Steven A. Beckelman, Esq., Attorneys for Defendant(s) | September 26, 2006 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
McCarter & English, LLP, Four Gateway Center, 100 Mulberry Street, Newark, NJ 07101
(973) 622 – 4444

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)
† If action is pending in district other than district of issuance, state district under case number

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on

| DATE | SIGNATURE OF SERVER |
|---|---|

ADDRESS OF SERVER

---

RULE 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in

person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden

(B) if a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the part in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

ME1\5863147.1

Issued by the
# UNITED STATES DISTRICT COURT

———— DISTRICT OF ———— COLUMBIA

U.S. Small Business Administration, as Receiver for Acorn
Technology Fund, L.P.

<div style="padding-left:4em">Plaintiffs</div>
<div style="padding-left:4em">v.</div>

Smith, Stratton, Wise, Heher & Brennan, LLP, et als.,
<div style="padding-left:4em">Defendants</div>

**SUBPOENA IN A CIVIL CASE**
Civil Action No. 05-0190 (JTG) –
Related Case No. 03-0070 (JTG)

received
10.06.06

TO:    Johnny A. Kitts
       Small Business Administration
       409 3rd Street, S.W.
       Washington, D.C. 20416-0001

☐    YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified
     below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
| --- | --- |
|  | DATE AND TIME |

☑    YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a
     deposition in the above case. The deposition shall be recorded by stenographic means.

| PLACE OF DEPOSITION | DATE AND TIME |
| --- | --- |
| McCarter & English, LLP<br>300 E. Lombard Street<br>Baltimore, Maryland 21202-3219 | October 30, 2006 at 10:00 a.m. |

☐    YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or object
     At the place, date, and time specified below (list documents or objects):

| PLACE | DATE AND TIME |
| --- | --- |
|  |  |

☐    YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below

| PREMISES | DATE AND TIME |
| --- | --- |
|  |  |

     Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one
or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set
forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure
30(b)(6)/

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE AND TIME |
| --- | --- |
| Steven A. Beckelman, Esq., Attorneys for Defendant (s) | September 26, 2006 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
McCarter & English, LLP, Four Gateway Center, 100 Mulberry Street, Newark, NJ 07101
(973) 622 – 4444

<div style="text-align:center">(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)</div>

¹ If action is pending in district other than district of issuance, state district under case number

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

RULE 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in

person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the part in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

Issued by the
# UNITED STATES DISTRICT COURT

—————————— **DISTRICT OF** —————————— COLUMBIA

U.S. Small Business Administration, as Receiver for Acorn
Technology Fund, L.P.
                Plaintiffs
          v.
Smith, Stratton, Wise, Heher & Brennan, LLP, et als.,
                Defendants

**SUBPOENA IN A CIVIL CASE**

Civil Action No. 05-0190 (JTG) –
Related Case No. 03-0070 (JTG)

TO:   Walter Peterson, Jr.
      1661B South Hayes Street
      Arlington, VA 22202

☐    YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified
      below to testify in the above case.  The deposition shall be recorded by stenographic means.

| PLACE OF TESTIMONY | COURTROOM |
| --- | --- |
| | DATE AND TIME |

☒    YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a
      deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
| --- | --- |
| McCarter & English, LLP<br>300 E. Lombard Street<br>Baltimore, Maryland 21202-3219 | November 8, 2006 at 10:00 a.m. |

☐    YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or object
      At the place, date, and time specified below (list documents or objects):

| PLACE | DATE AND TIME |
| --- | --- |
| | |

☐    YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below

| PREMISES | DATE AND TIME |
| --- | --- |
| | |

      Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one
or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set
forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure
30(b)(6)/

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE AND TIME |
| --- | --- |
| *[signature]*<br>Steven A. Beckelman, Esq., Attorneys for Defendant (s) | October 17, 2006 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
McCarter & English, LLP, Four Gateway Center, 100 Mulberry Street, Newark, NJ 07101
(973) 622 – 4444

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

[1] If action is pending in district other than district of issuance, state district under case number

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| | |
|---|---|
| SERVED ON (PRINT NAME) | MANNER OF SERVICE |

| | |
|---|---|
| SERVED BY (PRINT NAME) | TITLE |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____          _____
                         DATE                                      SIGNATURE OF SERVER

                                                                  _____
                                                                  ADDRESS OF SERVER

RULE 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in

person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the part in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## Issued by the
# UNITED STATES DISTRICT COURT

————— DISTRICT OF ————— <u>COLUMBIA</u>

U.S. Small Business Administration, as Receiver for Acorn
Technology Fund, L.P.

Plaintiffs

v.

Smith, Stratton, Wise, Heher & Brennan, LLP, et als.,
Defendants

**SUBPOENA IN A CIVIL CASE**

Civil Action No. 05-0190 (JTG) —
Related Case No. 03-0070 (JTG)

TO:  Charles Sjoquist
     Small Business Administration
     409 3rd Street, S.W.
     Washington, D.C. 20416-0001

☐  YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified
   below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☑  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a
   deposition in the above case. The deposition shall be recorded by stenographic means.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| McCarter & English, LLP<br>300 E. Lombard Street<br>Baltimore, Maryland 21202-3219 | November 1, 2006 at 10:00 a.m. |

☐  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or object
   At the place, date, and time specified below (list documents or objects):

| PLACE | DATE AND TIME |
|---|---|
|  |  |

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

    Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one
or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set
forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure
30(b)(6)/

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)<br><br>Steven A. Beckelman, Esq., Attorneys for Defendant (s) | DATE AND TIME<br><br>September 26, 2006 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
McCarter & English, LLP, Four Gateway Center, 100 Mulberry Street, Newark, NJ 07101
(973) 622 – 4444

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

[1] If action is pending in district other than district of issuance, state district under case number

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                        DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

RULE 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in

person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the part in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF KENTUCKY
### AT LEXINGTON
### CASE NO. 04- 8̶4̶-̶K̶S̶E̶

Eastern District of Kentucky
**FILED**

**FEB 2 4 2004**

AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

STATIC CONTROL COMPONENTS, INC.                                        PLAINTIFF

### COMPLAINT FOR DECLARATORY JUDGMENT

LEXMARK INTERNATIONAL, INC.                                        DEFENDANT

Serve:    CT Corporation System
          Kentucky Home Life Building
          Room 1102
          Louisville, Kentucky 40202

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

COMES NOW Plaintiff Static Control Components, Inc. ("SCC"), pursuant to 28 U.S.C.

§ 2201, the Federal Rules of Civil Procedure and the Local Rules of the United States District

Court for the Eastern District of Kentucky, and does hereby state its Complaint for Declaratory

Judgment against Defendant Lexmark International, Inc. ("Lexmark") as follows:

### Introduction

1.    SCC has developed re-engineered replacement chips for certain Lexmark laser

printer toner cartridges. These replacement chips include only original computer programs that

were created by and at the direction of SCC (the "new chips").

2.    Beginning on or about February 24, 2004, SCC began manufacturing and offering

for sale the new chips. SCC markets these new chips to toner cartridge remanufacturers so as to

replace used, broken or missing microchips on Lexmark cartridges, including for the

remanufacture of non-Prebate cartridges, and for the remanufacture of Prebate cartridges

purchased after October 1, 2003, in the state of North Carolina.

3.    SCC seeks in this action a declaratory judgment in favor of SCC so as to establish that SCC's new re-engineered replacement toner cartridge chips can be manufactured, offered for sale and sold in the United States under copyright law and under the Digital Millennium Copyright Act of 1998, 17 U.S.C. § 1201, *et seq.* ("DMCA").

### Jurisdiction and Venue

4.    SCC brings this action under 28 U.S.C. §§ 1331 and 1338 to obtain a declaratory judgment of no copyright infringement and no violation of Section 1201(a)(2) of the DMCA, 17 U.S.C. § 1201(a)(2).

5.    Personal jurisdiction exists in that Lexmark resides in and is doing business in the State of Kentucky and this District.

6.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1400(a).

### The Parties

7.    Plaintiff SCC is a North Carolina corporation with its principal place of business in Sanford, Lee County, North Carolina. SCC, *inter alia*, is a leading supplier of toner and parts and components to toner cartridge remanufacturers. SCC supplies, among other things, toner and other components used by remanufacturers in remanufacturing various brands of computer printer toner cartridges, including Lexmark toner cartridges.

8.    Remanufacturers take used original equipment manufacturer ("OEM") laser toner cartridges, inspect and clean the toner cartridges, replace any worn components in the toner cartridges, and add new toner. The resulting remanufactured laser toner cartridge is sold at a substantial discount when compared to the price of a new toner cartridge.

2

9. Defendant Lexmark, on information and belief, is a Delaware corporation with a principal place of business in Lexington, Kentucky.

10. Lexmark is an OEM of laser printers and laser toner cartridges.

11. Lexmark sells a variety of computer printer models, including the T520/522, T620/622 and T630 laser printers. Lexmark also sells these printers to other computer and computer peripheral manufacturers, under the brand names of such manufacturers and using different model numbers, including IBM Corporation, Toshiba Corporation and Dell, Inc. Lexmark designs its printer models so that only a Lexmark-designed toner cartridge for that particular model will work in a given model of a Lexmark laser printer. Thus, in order for a Lexmark printer to function, it must have either a new or remanufactured Lexmark toner cartridge.

## Lexmark Cartridges and Prior SCC Chips

12. In 2001, Lexmark introduced printer toner cartridges for its T520/522 and T620/622 laser printers containing "disabling chip" microchips. These microchips incorporated a mechanism that enables the Lexmark printer to verify that the toner cartridge chip (and, therefore, the toner cartridge) came from Lexmark. As relevant to this proceeding, whenever a toner cartridge is inserted into a Lexmark printer, the printer is powered on, or the printer is opened and closed, a "handshake" is performed between software in the printer that Lexmark calls a "Printer Engine Program" ("PEP") and software on the disabling chip to verify that only toner cartridges authorized by Lexmark are used. If this "handshake" does not occur, the printer will not print.

13. SCC reverse engineered the Lexmark disabling chips, and designed compatible replacement chips sold under the brand name "SMARTEK" that restored printer and cartridge

3

functionality disabled by the Lexmark chip.    The SMARTEK chips consisted of Texas Instruments chip hardware that incorporated substantial original software developed by SCC that enabled exchange of information and interoperability between the SMARTEK chip and the Lexmark printer.  In or around September 2002, SCC began manufacturing and selling its SMARTEK replacement chips.

### SCC's Independent Creation of New Re-engineered Replacement Chips

14.    In 2002, SCC had begun developing software programs that provided additional functionality for a more advanced generation of replacement chips.

15.    The new chips incorporate portions of the original software written by SCC that was on the prior SMARTEK chips, and new software written by SCC that performs functions not previously available on either the Lexmark or SCC SMARTEK chips, on a new and different chip hardware platform.  These functions of the SCC new chips include maintenance functions relating to communications between the printer and the toner cartridge chip, and enhancement of print quality when the print cartridges are in a "toner low" condition.

16.    SCC registered its copyrights in its original programs used in the new chips for the T520/522 and T620/622 toner cartridges with the United States Copyright Office.  SCC has applied to register its copyright in its original programs used in the new chips for the T630 toner cartridges with the United States Copyright Office.

17.    The new chips also contain a software routine that approximates the level of toner in the printer toner cartridge.  The routine for measuring toner was independently written using a "clean room" procedure, by a computer science student who was not employed by SCC and had no access to the source code of a routine used by Lexmark that Lexmark calls a "Toner Loading Program" ("TLP") and that Lexmark asserts performs a similar function.  After running the

4

routine on actual printers, minor corrective changes were made by SCC so as to improve interoperation between the SCC programs on the cartridge and software in the Lexmark printer.

18.     The toner measuring programs on the new chips include no code copyrighted by Lexmark. They do not include any code from the "TLPs" or the "PEP."

19.     The above-referenced functions and the maintenance and print quality functions performed by the original SCC software programs on the new chips require the exchange of information during communication between the chip and the printer. The maintenance software on each new chip exchanges data with the PEP that instructs the printer to display an error message upon failure of the particular monitored communications functions. The print quality enhancement software program similarly exchanges data with the printer that causes the printer to reduce the amount of toner being deposited on the paper by the printer.

20.     Prior to manufacturing or offering for sale the new chips, SCC provided Lexmark with an opportunity to review and ask questions about the code on the new chips. In early July 2003, SCC's counsel provided outside counsel for Lexmark with copies of program code contained on the new chips for the T520/522 and T620/622 cartridges, pursuant to a confidentiality agreement. On July 24, 2003, SCC counsel, its computer science expert Dr. Benjamin Goldberg, and the SCC engineer who wrote the copyrighted code for the new chip, held a two-hour video conference with counsel for Lexmark and their expert, Dr. Bruce Maggs. During that video conference, SCC responded to Lexmark counsel's questions, and SCC representatives explained the operation of the pre-existing and new programs written by SCC for the new chip, the "clean room" procedure by which the new toner measuring program was written, and the code that implements that program.

21.     In August 2003, Lexmark counsel informed SCC counsel, without explanation, of

Lexmark's view that the new SCC chips would violate the DMCA, and would not concede that

the software for the new chips did not infringe Lexmark's copyright.  Thereafter, Lexmark

continued to contend that manufacture of a new chip by SCC containing software written by

SCC still would violate the DMCA.

22.     After August 2003, SCC continued to test the software for the new chips and, as a

result, made certain minor revisions to the code so as to run the programs on different chip

hardware and to improve reliability and operation.  SCC further adapted the code for use with the

Lexmark T630 printer.

23.     In February 2004, SCC manufactured in North Carolina a number of the re-

engineered replacement chips for use in Lexmark toner cartridges.

24.     The new chips have lawful uses for remanufacturing and repairing of Lexmark

laser printer toner cartridges.

25.     SCC has sold these chips to date exclusively to remanufacturers of toner

cartridges for the Lexmark T520/522, T620/622 and T630 printers for use in remanufacturing

Prebate cartridges that were purchased in North Carolina after October 1, 2003, and for use in

remanufactured non-Prebate cartridges for those printers.  SCC intends to sell such chips also for

use in remanufacturing such cartridges for the above-identified families of printers that are

manufactured by Lexmark but sold under the brand name of other companies.

### COUNT ONE

### DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF COPYRIGHT

26.     SCC incorporates by reference the facts of paragraphs 1-25 as if set forth herein in

their entirety.

27.    The re-engineered replacement chips include software code created by and copyrighted by SCC.

28.    The new chips include no copyrighted software code from the Lexmark PEPs or TLPs.

29.    The new chips include no code that is substantially similar to code from the Lexmark PEP or TLPs.

30.    The software code on the new chips does not infringe any Lexmark copyright.

### COUNT TWO

### DECLARATORY JUDGMENT OF NO VIOLATION OF 17 U.S.C. § 1201(A)(2)

31.    SCC incorporates by reference the facts of paragraphs 1-30 as if set forth herein in their entirety.

32.    Section 1201(a)(2) of the DMCA, 17 U.S.C. § 1201(a)(2), provides:

(2) No person shall manufacture, import, offer to the public, provide, or otherwise traffic in any technology, product, service, device, component, or part thereof, that —

(A) is primarily designed or produced for the purpose of circumventing a technological measure that effectively controls access to a work protected under this title;

(B) has only limited commercially significant purpose or use other than to circumvent a technological measure that effectively controls access to a work protected under this title; or

(C) is marketed by that person or another acting in concert with that person with that person's knowledge for use in circumventing a technological measure that effectively controls access to a work protected under this title.

33.    SCC's re-engineered replacement chips do not violate section 1201(a)(2) because the Lexmark "handshake" protects against use in a Lexmark printer of cartridges other than

7

cartridges authorized for use by Lexmark, and does not protect a copyrighted work, i.e., a "work protected under this title."

34.    SCC's re-engineered replacement chips do not violate section 1201(a)(2) because the Lexmark "handshake" does not prevent anyone from encountering, obtaining, viewing and copying the PEP, but only protects against use of the PEP in a Lexmark printer with cartridges other than cartridges authorized for use by Lexmark, and does not "effectively control access" to the PEP.

### COUNT THREE

### DECLARATORY JUDGMENT OF NO VIOLATION OF 17 U.S.C. § 1201(A)(2)

35.    SCC incorporates by reference the facts of paragraphs 1-34 as if set forth herein in their entirety.

36.    In order to create chips that can interoperate with the PEP in the Lexmark T520/522, T620/622 and T630 printers, SCC needed to understand how to gain access to the PEP for those printers to enable the SCC new chips to operate. Access to the PEP is necessary for any use of that program in conjunction with a Lexmark toner cartridge .

37.    Unless the new chips are able to perform the authentication "handshake" with the PEPs, the PEPs will neither obtain information from the new chips nor allow the PEPs to be used to operate the printer's functions.

38.    Unless the new chips are able to perform the authentication "handshake" with the PEPs, the new programs created by SCC on the new chips cannot interoperate with the PEPs and, therefore, will not be able to perform their functions and make available to the consumer their functionality and competitive choices for remanufactured Lexmark cartridges, including

8

non-probate cartridges and Prebate cartridges sold after October 1, 2003 in the State of North Carolina.

39.     SCC may lawfully identify and analyze those portions of the PEPs necessary for interoperability with the software for the new chips, circumvent protections offered by the authentication "handshake," and distribute in commerce to others its original programs along with the means of circumventing the Lexmark technological protection measure, for the sole purpose of enabling interoperability between the new chip software and the PEPs.

40.     For the reasons set forth in Count Two, the SCC new chips do not violate section 1201(a)(2) of the DMCA, because section 1201(a)(2) does not apply to the circumvention of the "handshake" as deployed by Lexmark.

41.     Even if section 1201(a)(2) were to so apply, SCC's activities of developing, manufacturing, marketing and selling its re-engineered replacement chips are exempt under section 1201(f) of the DMCA.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff Static Control Components, Inc. is entitled to and hereby requests the following relief:

A.     A declaratory judgment on Count One of this Complaint that the software programs on the re-engineered replacement chips do not infringe any copyright of Lexmark;

B.     A declaratory judgment on Count Two of this Complaint that the manufacture, marketing and sale of the new chips do not violate section 1201(a)(2) of the DMCA, 17 U.S.C. § 1201(a)(2);

C.     A declaratory judgment on Count Three of this Complaint that, even if the provisions of section 1201(a)(2) were to apply to the Lexmark "handshake," SCC is entitled,

pursuant to section 1201(f) of the DMCA, 17 U.S.C. § 1201(f), to manufacture, offer to the public, provide and sell its new chips; and,

    D.    Such other relief as this Honorable Court may deem just and proper.

10

This the 24th day of February, 2004        Respectfully submitted,

W. Craig Robertson III
E. Christine Lewis
WYATT, TARRANT & COMBS, LLP
250 West Main Street, Suite 1600
Lexington, KY 40507
859.233.2012

Skip London
Static Control Components, Inc.
3010 Lee Avenue
Post Office Box 152
Sanford, NC 27331
919.774.3808

Seth D. Greenstein
Melise R. Blakeslee
John R. Fuisz
Carrie Shufflebarger
Ann M. Brose
MCDERMOTT, WILL & EMERY
600 13th Street NW
Washington, D.C. 20005
202.756.8000

11



# WYATT

WYATT, TARRANT & COMBS, LLP 500 WEST JEFFERSON STREET, SUITE 2800
LOUISVILLE, KENTUCKY 40202-2898

## TELECOPY TRANSMITTAL SHEET

·DATE: **February 24, 2004**                                                              TIME:

**DELIVER TO:**                          **FAX NUMBER:**        **CONFIRMATION NO.:**

William L. London                        800/356-2729
Seth Greenstein                          202/756-8087

VOICE CONFIRMATION REQUESTED: **NO**

FROM: Geneva Ginter for Craig Robertson     DIRECT DIAL NUMBER: 859.288.7614

TOTAL NUMBER OF PAGES INCLUDING COVER SHEET:

TIME SENT: _____ A.M./P.M. BY: _____

TIME CONFIRMED: _____ A.M./P.M. CONFIRMED BY: _____

CONFIRMED WITH: _____

**ORIGINAL IS BEING SENT VIA U.S. MAIL: NO**

IF YOU DO NOT RECEIVE A CLEAR OR COMPLETE FAX, PLEASE CALL OUR SERVICE
CENTER AT 502.589.5235, EXTENSION 548. OUR FAX NUMBER IS 502.589.0309.

THE INFORMATION CONTAINED IN THIS FAX IS ATTORNEY/CLIENT PRIVILEGED AND
CONFIDENTIAL, INTENDED FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED
ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT (OR THE
EMPLOYEE OR AGENT RESPONSIBLE TO DELIVER IT TO THE INTENDED RECIPIENT), YOU
ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS
COMMUNICATION IS PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN
ERROR, PLEASE NOTIFY US BY COLLECT TELEPHONE AND RETURN THE ORIGINAL
MESSAGE TO US AT THE ADDRESS ABOVE AT OUR EXPENSE.

MESSAGE:

CLIENT NAME: **Static Control**                    CLIENT NO.: **46548**
MATTER NAME: **Lexmark**                           MATTER NO.: **101303**

JS 44  (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| **PLAINTIFFS** | **DEFENDANTS** |
|---|---|
| Static Control Components, Inc. | Lexmark International, Inc. |

(b) County of Residence of First Listed Plaintiff  Lee County, NC
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed  Fayette County, KY
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
See attached.

Attorneys (If Known)
See attached.

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question
(U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | ☒ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | **PERSONAL INJURY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 362 Personal Injury— Med. Malpractice | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 365 Personal Injury— Product Liability | ☐ 690 Other | **LABOR** | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 710 Fair Labor Standards Act | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | **PERSONAL PROPERTY** | **SOCIAL SECURITY** | ☐ 720 Labor/Mgmt. Relations | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 370 Other Fraud | ☐ 861 HIA (1395ff) | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | ☐ 371 Truth in Lending | ☐ 862 Black Lung (923) | ☐ 740 Railway Labor Act | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 380 Other Personal Property Damage | ☐ 863 DIWC/DIWW (405(g)) | ☐ 790 Other Labor Litigation | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 385 Property Damage Product Liability | ☐ 864 SSID Title XVI | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | **CIVIL RIGHTS** | ☐ 865 RSI (405(g)) | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 441 Voting | **FEDERAL TAX SUITS** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 442 Employment | **PRISONER PETITIONS** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | ☐ 443 Housing/ Accommodations | ☐ 510 Motions to Vacate Sentence | | |
| | ☐ 444 Welfare | Habeas Corpus: | | |
| | ☐ 440 Other Civil Rights | ☐ 530 General | | |
| | | ☐ 535 Death Penalty | | |
| | | ☐ 540 Mandamus & Other | | |
| | | ☐ 550 Civil Rights | | |
| | | ☐ 555 Prison Condition | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district (specify)

☐ 6 Multidistrict Litigation

☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

17 USC §1201 (a) (2) — seeking declaratory judgment that plaintiff is not in violation of said statute or applicable copyright law.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ declaratory judgment

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE Karl S. Forester

DOCKET NUMBER 02-571-KSF

DATE 2/24/04

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #_____  AMOUNT_____  APPLYING IFP_____  JUDGE_____  MAG. JUDGE_____

## ATTACHMENT TO CIVIL COVER SHEET

| Attorneys for Plaintiff | |
|---|---|
| W. Craig Robertson III<br>E. Christine Lewis<br>WYATT, TARRANT & COMBS, LLP<br>250 West Main Street, Suite 1600<br>Lexington, KY 40507<br>859.233.2012<br><br>Skip London<br>Static Control Components, Inc.<br>3010 Lee Avenue<br>Post Office Box 152<br>Sanford, NC 27331<br>919.774.3808<br><br>Seth D. Greenstein<br>Melise R. Blakeslee<br>John R. Fuisz<br>Carrie Shufflebarger<br>Ann M. Brose<br>MCDERMOTT, WILL & EMERY<br>600 13th Street NW<br>Washington, D.C. 20005<br>202.756.8000 | |

30319049

AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

### District of _____

Static Control Components, Inc.

V.

Lexmark International, Inc.

**SUMMONS IN A CIVIL ACTION**

CASE NUMBER: 04-84-KSF

TO: (Name and address of Defendant)
Lexmark International, Inc.
c/o C.T. Corporation System
Ky. Home Life Building, Room 1102
Louisville, KY  40202

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

W. Craig Robertson, III
E. Christine Lewis
Wyatt, Tarrant & Combs, LLP
250 West Main Street, Suite 1600
Lexington, KY  40507

an answer to the complaint which is served on you with this summons, within  twenty (20)   days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

LESLIE G. WHITMER

CLERK

Pamela Burgess          pb

(By) DEPUTY CLERK

FEB 2 4 2004

DATE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**LEXINGTON DIVISION**
**CASE NO. 04-CV-84-KSF**

Eastern District of Kentucky
F I L E D

NOV 0 8 2004

AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

STATIC CONTROL COMPONENTS, INC.     PLAINTIFF/COUNTERCLAIM DEFENDANT

v.     <u>**LEXMARK INTERNATIONAL, INC.'S SECOND AMENDED ANSWER
AND COUNTERCLAIMS**</u>

LEXMARK INTERNATIONAL, INC.     DEFENDANT/COUNTERCLAIM PLAINTIFF

v.

WAZANA BROTHERS INTERNATIONAL, INC.
d/b/a MICRO SOLUTIONS ENTERPRISES     COUNTERCLAIM DEFENDANT

v.

PENDL COMPANIES, INC.     COUNTERCLAIM DEFENDANT

v.

IMAGE PROJECTIONS WEST, INC.     COUNTERCLAIM DEFENDANT

v.

NER DATA PRODUCTS, INC     COUNTERCLAIM DEFENDANT

\*\*\* \*\*\* \*\*\* \*\*\* \*\*\* \*\*\* \*\*\* \*\*\* \*\*\*

Defendant and Counterclaim Plaintiff, Lexmark International, Inc. ("Lexmark"), by and through the undersigned counsel, answers and counterclaims to Plaintiff and Counterclaim Defendant's, Static Control Components, Inc.'s ("SCC") Complaint for Declaratory Judgment, and asserts counterclaims against Counterclaim Defendants, Wazana Brothers International, Inc. d/b/a Micro Solutions Enterprises ("MSE"), Pendl Companies, Inc. ("Pendl"), Image Projections West, Inc. ("Image Projections"), and NER Data Products, Inc. ("NER") as follows:

1

FILED
OCT 3 1 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

06454724

### FIRST DEFENSE

The Complaint fails to state claims upon which relief may be granted.

### SECOND DEFENSE

With respect to the numbered paragraphs of the Complaint, Lexmark states:

1.    Lexmark is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 1, and on that basis, denies them.

2.    Lexmark is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 2, and on that basis, denies them.

3.    Lexmark admits that the Complaint for Declaratory Judgment purports to set forth an action arising under the copyright laws of the United States and the Digital Millennium Copyright Act of 1998, 17 U.S.C. § 1201, *et seq.* ("DMCA"). Except as admitted, Lexmark denies that SCC is entitled to relief in accordance with the allegations contained in paragraph 3.

4.    Lexmark admits that the Complaint for Declaratory Judgment purports to set forth an action arising under the copyright laws of the United States and the DMCA, and admits that claims brought under the copyright laws give rise to federal question jurisdiction. Except as admitted, Lexmark denies that SCC is entitled to relief in accordance with the allegations contained in paragraph 4.

5.    Lexmark admits the allegations contained in paragraph 5.

6.    Lexmark admits the allegations contained in paragraph 6.

7.    Lexmark admits that SCC is a North Carolina corporation with its principal place of business in Sanford, Lee County, North Carolina. Lexmark also admits that SCC supplies components used by remanufacturers in remanufacturing various brands of computer toner cartridges, including Lexmark toner cartridges. Except as admitted, Lexmark is without

2

knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 7, and on that basis, denies them.

8.      Lexmark admits that remanufacturers remanufacture used OEM laser toner cartridges, and that remanufacturers sell remanufactured laser toner cartridges at a discount price compared to the price of new OEM laser toner cartridges.    Except as admitted, Lexmark is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 8, and on that basis, denies them.

9.      Lexmark admits the allegations contained in paragraph 9.

10.     Lexmark admits the allegations contained in paragraph 10.

11.     Lexmark admits that its sells numerous computer printer models, including the T520/522, T620/622, and T630 laser printers.    Lexmark admits that it sells some of its printer models to other computer and computer peripheral manufacturers, under the brand names of such manufacturers and using different model numbers.    Except as admitted, Lexmark denies allegations contained in paragraph 11.

12.     Lexmark admits that in 2001, it introduced toner cartridges for its T520/522 and T620/622 laser printers containing microchips that utilize a technological measure.    Lexmark further admits that, in general, the technological measure requires a "secret handshake" between the printer and toner cartridge to enable printer functionality.    Lexmark further admits that the technological measure involves calculations by, and communication between, the printer and the toner cartridge each time a toner cartridge is installed in the printer, the printer is powered on, or whenever the printer is opened and then reclosed.    Lexmark further admits that if the technological measure takes place successfully, then the printer recognizes the toner cartridge as being authorized and printer functionality and access to the Lexmark's copyrighted computer programs is enabled.    Lexmark further admits that unless the technological measure or "secret

3

handshake" takes place successfully, Lexmark's printers will not recognize the toner cartridges as being authorized Lexmark toner cartridges, and the printers will not print. Except as admitted, Lexmark denies allegations contained in paragraph 12.

13.    Lexmark is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 13, and on that basis, denies them.

14.    Lexmark is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 14, and on that basis, denies them.

15.    Lexmark is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 15, and on that basis, denies them.

16.    Lexmark is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 16, and on that basis, denies them.

17.    Lexmark is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 17, and on that basis, denies them.

18.    Lexmark is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 18, and on that basis, denies them.

19.    Lexmark is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 19, and on that basis, denies them.

20.    Lexmark admits that in July 2003 SCC provided Lexmark with source code for a new microchip designed for use with Lexmark's T520/522 and T620/622 toner cartridges, pursuant to a confidentiality agreement. Lexmark also admits that on July 23, 2003, SCC's counsel, SCC's expert Dr. Goldberg, and an SCC engineer held a videoconference with counsel for Lexmark and Lexmark's expert Dr. Maggs. Except as admitted, Lexmark denies allegations contained in paragraph 20.

21.    Lexmark admits that in August 2003 Lexmark's counsel would not concede that SCC's new chip would not violate the DMCA and would not concede that the software for the SCC's new chip did not infringe Lexmark's copyrights. Except as admitted, Lexmark denies allegations contained in paragraph 21.

22.    Lexmark is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 22, and on that basis, denies them.

23.    Lexmark is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 23, and on that basis, denies them.

24.    The allegations contained in paragraph 24 are conclusions of law to which no responsive pleading is required. To the extent a pleading is required, the allegations are denied.

25.    Lexmark is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 25, and on that basis, denies them.

26.    Answering the allegations in paragraph 26, Lexmark repeats and incorporates by reference its answers to paragraphs 1-25 above.

27.    Lexmark is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 27, and on that basis, denies them.

28.    Lexmark is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 28, and on that basis, denies them.

29.    Lexmark is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 29, and on that basis, denies them.

30.    The allegations contained in paragraph 30 are conclusions of law to which no responsive pleading is required. To the extent a pleading is required, Lexmark is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 30, and on that basis, denies them.

5

31.    Answering the allegations in paragraph 31, Lexmark repeats and incorporates by reference its answers to paragraphs 1-30 above.

32.    Lexmark admits that Section 1201(a)(2) of the DMCA, 17.U.S.C. § 1201(a)(1) provides:

> No person shall manufacture, import, offer to the public, provide, or otherwise traffic in any technology, product, service, device, component, or part thereof, that --
> (A) is primarily designed or produced for the purpose of circumventing a technological measure that effectively controls access to a work protected under this title;
> (B) has only limited commercially significant purpose or use other than to circumvent a technological measure that effectively controls access to a work protected under this title; or
> (C) is marketed by that person or another acting in concert with that person with that person's knowledge for use in circumventing a technological measure that effectively controls access to a work protected under this title.

33.    Lexmark is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 33, and on that basis, denies them.

34.    The allegations contained in paragraph 34 are conclusions of law to which no responsive pleading is required. To the extent a pleading is required, Lexmark is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 34, and on that basis, denies them.

35.    Answering the allegations in paragraph 35, Lexmark repeats and incorporates by reference its answers to paragraphs 1-34 above.

36.    Lexmark is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 36, and on that basis, denies them.

37.    Lexmark is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 37, and on that basis, denies them.

38.    Lexmark is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 38, and on that basis, denies them.

39.    The allegations contained in paragraph 39 are conclusions of law to which no responsive pleading is required. To the extent a pleading is required, the allegations are denied.

40.    The allegations contained in paragraph 40 are conclusions of law to which no responsive pleading is required. To the extent a pleading is required, the allegations are denied.

41.    The allegations contained in paragraph 41 are conclusions of law to which no responsive pleading is required. To the extent a pleading is required, the allegations are denied.

## LEXMARK'S COUNTERCLAIMS

## NATURE OF LEXMARK'S COUNTERCLAIMS

42.    Lexmark's counterclaims are for damages and injunctive relief for violations of the Digital Millennium Copyright Act, 17 U.S.C. § 1201 *et seq.*, patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, and for violations of laws of the Commonwealth of Kentucky, including intentional interference with contractual relations, intentional interference with prospective economic advantage, and civil conspiracy.

## ADDITIONAL PARTIES

43.    On information and belief, Counterclaim Defendant Wazana Brothers International, Inc., d/b/a Micro Solutions Enterprises ("MSE"), is a California corporation with its principal place of business at 9111 Mason Avenue, Chatsworth, California. On information and belief, Counterclaim Defendant Pendl Companies, Inc. ("Pendl") is a Wisconsin corporation with its principal place of business at 1825 B Dolphin, Waukesha, Wisconsin. On information and belief, Counterclaim Defendant Image Projections West, Inc. ("Image Projections") is a Colorado corporation with its principal place of business at 14135 E 42nd Avenue, Suite #40,

7

Denver, Colorado. On information and belief, Counterclaim Defendant NER Data Products, Inc. ("NER") is a New Jersey corporation with its principal place of business at 307 S Delsea Drive, Glassboro, New Jersey. MSE, Pendl, Image Projections, and NER are engaged in the business of remanufacturing used toner cartridges, and sell remanufactured used toner cartridges in numerous jurisdictions, including the Eastern District of Kentucky.

## JURISDICTION AND VENUE

44.    This Court has subject matter jurisdiction over these counterclaims pursuant to 28 U.S.C. §§ 1331, 1332, 1338(a), 1367(a) and 17 U.S.C. § 1203(a) and has personal jurisdiction over SCC, MSE, Pendl, Image Projections, and NER. Moreover, venue in this judicial district is proper under 28 U.S.C. §§ 1391 and 1400(a).

## LEXMARK'S BUSINESS AND INTELLECTUAL PROPERTY

### A.    LEXMARK'S PREBATE/RETURN PROGRAM

45.    In 1997, upon the initial introduction of the Lexmark Optra S laser printer family, Lexmark first announced its "Prebate" program to its customers allowing customers an up-front discount when a customer purchased a toner cartridge for an Optra S laser printer in return for the customer's agreement to use the Prebate toner cartridge only once and return the used Prebate toner cartridge only to Lexmark for remanufacturing and/or recycling.

46.    The Prebate program was renamed on April 22, 2003 to the "Lexmark Return Program," but no change was made to the terms of the agreement that are clearly set forth on the top of every applicable toner cartridge. The Prebate program and the Lexmark Return Program will be referred to herein collectively as the "Prebate/Return Program." Lexmark has employed the Prebate/Return Program in various other printer and cartridge lines since the introduction of

8

the Optra S family including, but not limited to the Lexmark T420, T520/522, T620/622, T630/632/634, E320/322, E321/323, and E220 laser printers.

47.    Lexmark's Prebate/Return Program is a printer toner cartridge discount program that features a free and easy way to return empty toner cartridges and allows the customer to avoid the hassles of traditional rebates. Lexmark provides packaging and postage for returning Prebate/Return Program toner cartridges to Lexmark to support Lexmark's remanufacturing business.

48.    Lexmark also offers customers the choice to purchase a "Regular" toner cartridge for those customers who do not choose the Prebate/Return Program toner cartridge with its terms. Regular toner cartridges may be refilled by the purchaser or a third party after its initial use and are readily available for any customer to purchase.

49.    In purchasing a Prebate/Return Program toner cartridge, a customer agrees to certain license/agreement terms in return for a lower price or upfront discount. The current Prebate/Return Program terms placed across the top of every Prebate/Return Program toner cartridge box in English and multiple non-English languages are as follows:

> RETURN EMPTY CARTRIDGE TO LEXMARK FOR
> REMANUFACTURING AND RECYCLING
> Please read before opening. Opening this package or using the patented cartridge inside confirms your acceptance of the following license/agreement: This all-new cartridge is sold at a special price subject to a restriction that it may be used only once. Following this initial use, you agree to return the empty cartridge only to Lexmark for remanufacturing and recycling. If you don't accept these terms, return the unopened package to your point of purchase. A regular price cartridge without these terms is available.

50.    The Prebate/Return Program has significantly increased toner cartridge returns to Lexmark allowing Lexmark the opportunity to participate in remanufacturing operations for these toner cartridges. Lexmark remanufactured toner cartridges for Lexmark printers are priced

even lower than the corresponding Prebate/Return Program toner cartridges and are a high quality alternative for customers desiring lower cost remanufactured toner cartridges.

51.    The discount of the Prebate/Return Program toner cartridge and the lower priced remanufactured toner cartridge allow Lexmark to vigorously compete in the printer market, where lifecycle price, including toner cartridges, is an important factor in the printer purchasing decision.

52.    The Prebate/Return Program is pro-competitive, consistent with applicable laws, and environmentally beneficial.

53.    Based on International Data Corporation's Hardcopy Peripherals Tracker, of all the brands and types of laser printers sold in the United States in 2001, only about 14.6 percent were Lexmark branded laser printers.

54.    Of all the brands and types of cartridges sold in the United States in 2001, only about two and one-half percent were Lexmark Prebate/Return Program toner cartridges based upon industry analyst CAP Ventures' view of the total United States sales of all brands of toner cartridges.

**B.    LEXMARK'S COPYRIGHTED COMPUTER PROGRAMS FOR THE LEXMARK T420, T520/522, T620/622, T630/632/634, E320/322, E321/323, AND E220 LASER PRINTERS**

55.    Among the many products developed and marketed by Lexmark are its T420, T520/522, T620/622, T630/632, E320/322, E321/323, and E220 laser printers and toner cartridges. Lexmark is the owner of valid copyright registrations covering computer programs that are used to control various operations of its T420, T520/522, T620/622, T630/632/634, E320/322, E321/323, and E220 laser printers and to monitor operational characteristics of its toner cartridges.

10

56.    The first set of these copyrighted computer programs are versions of Toner

Loading Programs.  One of the Toner Loading Programs is contained on a microchip located on

the T520/522 toner cartridge, and the other Toner Loading Program is located on a microchip

located on the T620/622 toner cartridge.  The Toner Loading Programs are used to determine

toner levels in the respective toner cartridges.

57.    The second set of these copyrighted computer programs are versions of Printer

Engine Programs that are used by the Lexmark printers to provide printer functionality.  In

particular, each Printer Engine Program is a mechanism control program that controls various

operations of the printer including, for example, paper feed, paper movement, motor control,

fuser operation, and voltage control for the electrophotographic (EP) system.  A different Printer

Engine Program is located on a controller board inside the Lexmark T420, T520/T522,

T620/T622, T630/632/634, E320/E322, E321/E323, and E220 laser printers.

58.    The Toner Loading Programs and the Printer Engine Programs are original works

of authorship owned by Lexmark and comprise copyrightable subject matter under the Copyright

Laws of the United States

59.    Lexmark has complied in all respects with the Copyright Act, 17 U.S.C. § 101 *et

seq.* and all other laws governing copyright, and has obtained Certificates of Registration for the

Toner Loading Programs and the Printer Engine Programs from the Register of Copyrights.

True and correct copies of the registrations for the Toner Loading Programs for the T520/522

and T620/622 laser printers are attached as Exhibits A and B, respectively.  In addition, true and

correct copies of the registrations for the Printer Engine Programs for the T420, T620 and

T630/632/634, E320/322, and E321/323 laser printers are attached as Exhibits C through G,

respectively.  The Printer Engine Programs for the T520, T522, and T622 printers are derivative

11

works of the Printer Engine Program for the T620 printer. The Printer Engine Program for the E220 printer is a derivative work of the Printer Engine Program of the E321/323 printer.

### C.    LEXMARK'S TECHNOLOGICAL MEASURES TO PREVENT UNAUTHORIZED ACCESS TO ITS COPYRIGHTED COMPUTER PROGRAMS FOR THE LEXMARK LASER PRINTERS

60.    Lexmark utilizes a technological measure, or authentication sequence, to prevent unauthorized access to its Toner Loading Programs and Printer Engine Programs.

61.    In general, the technological measure, or authentication sequence, requires a "secret handshake" between the printer and toner cartridge to enable printer functionality. The technological measure involves calculations by, and communication between, the printer and the toner cartridge each time a toner cartridge is installed in the printer, the printer is powered on, or whenever the printer is opened and then reclosed. Both the printer and the microchip on the toner cartridge calculate a code referred to as a Message Authorization Code ("MAC"). The microchip then communicates its calculated MAC to the printer. If the MAC calculated by the microchip matches the MAC calculated by the printer, the printer recognizes the toner cartridge as being authorized and printer functionality and access to the Toner Loading Program and Printer Engine Program is enabled.

62.    By design, unless the technological measure or "secret handshake" takes place successfully, Lexmark's printers will not recognize the toner cartridges as being authorized Lexmark toner cartridges, and the printers will not print. The technological measure prevents access to the Toner Loading Programs located on the toner cartridges and the Printer Engine Programs located on a controller board inside those printers. The technological measure thereby protects consumers to ensure that they are using genuine Lexmark toner cartridges and are not using Prebate/Return Program toner cartridges that have been remanufactured despite the terms of the Prebate/Return Program license/agreement.

### D.    LEXMARK'S PATENTS COVERING ITS TONER CARTRIDGES

63.    Lexmark's T420, T520/522, T620/622, T630/632/634, E320/322, E321/323, and E220 toner cartridges and their components are covered by numerous U.S. Patents.

64.    Lexmark's T420, T520/522, T620/622, and/or T630/632/634 toner cartridges and their components are covered by one or more claims in U.S. Patent Nos. 5,634,169, 5,707,743, 5,758,231[1], 5,758,233, 5,768,661, 5,802,432, 5,804,114, 5,874,172, 5,875,378, 5,880,244, 5,952,442, 5,995,772, 6,009,285, 6,009,291, 6,117,557, 6,160,073, 6,300,025, 6,397,015, 6,459,876[2], 6,487,383, 6,492,083[3], and D399,249, duly and legally issued to Lexmark.

65.    Lexmark's E320/322 and E321/323 toner cartridges and components are covered by one or more claims in U.S. Patent Nos. 5,634,169, 5,707,743, 5,758,231[4], 5,804,114, 5,874,172, 5,880,244, 5,952,442, 5,995,772, 6,009,285, 6,117,557, 6,160,073, 6,300,025, 6,397,015, 6,487,383, 6,492,083[5], and D458,300, duly and legally issued to Lexmark.

66.    Lexmark's E220 toner cartridges and components are covered by one or more claims in U.S. Patent Nos. 5,634,169, 5,758,231, 5,995,772, 6,009,285, 6,397,015, 6,487,383, and D458,300, duly and legally issued to Lexmark.

67.    Lexmark owns all right, title and interest in and has standing to sue for infringement of the above-identified patents, which are collectively referred to as "the Lexmark patents-in-suit." True and correct copies of the Lexmark patents-in-suit are attached hereto as Exhibits H through DD respectively.

---

[1] Lexmark's T420 toner cartridges and components are not covered by U.S. Patent No. 5,758,231.

[2] Lexmark's T420 toner cartridges and components are not covered by U.S. Patent No. 6,459,876.

[3] Lexmark's T520/522 toner cartridges and components are not covered by U.S. Patent No. 6,492,083.

[4] Lexmark's E320/322 toner cartridges and components are not covered by U.S. Patent No. 5,758,231.

[5] Lexmark's E320/322 toner cartridges and components are not covered by U.S. Patent No. 6,492,083.

68.    When Lexmark makes, offers for sale and sells its T420, T520/522, T620/622, T630/632/634, E320/322, E321/323, and E220 toner cartridges that follow the Lexmark patents-in-suit, Lexmark gives notice to the public that such products are patented in accordance with the marking provisions of 35 U.S.C. § 287. In addition, Lexmark places the Prebate/Return Program agreement (set forth above in paragraph 49 above) across the top of every T420, T520/522, T620/622, T630/632/634, E320/322, E321/323, and E220 Prebate/Return Program toner cartridge box. That Prebate/Return Program agreement is a valid and enforceable shrink-wrap license that governs the field of use of Lexmark's patented T420, T520/522, T620/622, T630/632, E320/322, E321/323, and E220 Prebate/Return Program toner cartridges. In acquiring a T420, T520/522, T620/622, T630/632/634, E320/322, E321/323, and E220 Prebate/Return Program toner cartridge, a customer agrees to abide by the field of use restrictions contained in that shrink-wrap license in return for a lower price or upfront rebate.

## SCC, MSE, PENDL, IMAGE PROJECTIONS, AND NER'S VIOLATIONS OF LEXMARK'S INTELLECTUAL PROPERTY RIGHTS AND STATE LAW RIGHTS

69.    SCC engages in the business of manufacturing and selling components to the toner cartridge remanufacturing industry, including replacement microchips for use with refilled toner cartridges.

70.    SCC has made statements stating that Lexmark's Prebate/Return Program is unenforceable and that Prebate/Return Program is unenforceable and that Prebate/Return Program cartridges can be obtained, remanufactured, marketed, and sold to users of Lexmark printers.

71.    SCC manufactures and sells replacement microchips. Despite the terms of the Prebate/Return Program license/agreement, SCC's microchips are designed to enable unauthorized toner cartridges to function with Lexmark's printers. For example, SCC's

14

microchips are designed to enable unauthorized toner cartridges to function with Lexmark's T420, T520/522, T620/622, T630/632/634, E320/322, E321/323, and E220 laser printers.

**A.    SCC'S TRAFFICKING OF DEVICES THAT CIRCUMVENT LEXMARK'S TECHNOLOGICAL MEASURE AND PATENT INFRINGEMENT**

72.    Lexmark's toner cartridges for its T420, T520/522, T620/622, T630/632/634, E320/322, E321/323, and E220 printers are sold as Prebate/Return Program toner cartridges and Regular toner cartridges. Each type of toner cartridge contains a microchip that performs an authentication sequence with the printer.

73.    With regard to Prebate/Return Program toner cartridges, to ensure that consumers return the Prebate/Return Program cartridges to Lexmark after their initial use, the Prebate/Return Program toner cartridge has been designed to no longer operate even if "refilled" with toner by operation of the microchip residing on the toner cartridge and the Printer Engine Program residing on the printer.

74.    Because SCC's microchips are specifically designed to circumvent that technological measure, however, persons can use SCC's microchips to refill and reuse Prebate/Return Program toner cartridges without returning those toner cartridges to Lexmark. Thus, SCC's sale of its microchips enables consumers to obtain a Prebate/Return Program toner cartridge at a significant discount without returning that toner cartridge only to Lexmark for remanufacturing and recycling in accordance with Lexmark's Prebate/Return Program agreement.

75.    With regard to a Regular toner cartridge for the Lexmark T420, T520/522, T620/622, T630/632/634, E320/322, E321/323, and E220 laser printers, after its initial use, the purchaser or a third party may refill that Regular toner cartridge.

15

76.    Unauthorized toner cartridges containing SCC's microchip are able to function with Lexmark's laser printers because each SCC microchip contains technology that circumvents Lexmark's technological measure performed between Lexmark's printers and original microchips.

77.    In particular, SCC's microchips' method of circumvention involves using technology that mimics the technological measure performed by the original microchips on Lexmark's toner cartridges and printers.  For example, when an unauthorized toner cartridge containing an SCC microchip is placed in a Lexmark T420, T520/522, T620/622, T630/632/634, E320/322, E321/323, and E220 laser printer, when the printer containing such a cartridge is powered on, or whenever the printer is opened and closed, the SCC microchip circumvents the technological measure that controls access to Lexmark's copyrighted computer programs.  By circumventing Lexmark's technological measure, SCC's microchips enable printer functionality by providing access to Lexmark's copyrighted computer programs.

78.    SCC's microchips are specifically designed and manufactured to circumvent Lexmark's technological measure, or authentication sequence, so remanufacturers can use the microchips to refill and reuse Prebate/Return Program toner cartridges without the purchaser returning the toner cartridges to Lexmark.

79.    SCC has intentionally and specifically marketed its microchips as being capable of defeating Lexmark's technological measure and as allowing for Prebate/Return Program cartridges for Lexmark's laser printers to be remanufactured.

80.    Thus, SCC's sale of its microchips enables consumers to obtain a Prebate/Return Program toner cartridge at a significant discount without returning that toner cartridge to Lexmark for remanufacturing and recycling in violation of the Prebate/Return Program

16

agreement, which governs the field of use of Lexmark's patented T420, T520/522, T620/622, T630/632/634, E320/322, E321/323, and E220 Prebate/Return Program toner cartridges.

81.     In addition to its microchips, SCC manufactures, distributes, offers for sale, and sells encoder wheels.  An encoder wheel is sold with SCC's replacement microchip.  SCC's encoder wheels replace and simulate Lexmark's patented encoder wheels contained on Lexmark's new Prebate/Return Program toner cartridges.  SCC's infringing encoder wheels, used in conjunction with SCC's microchips, allow Prebate/Return Program cartridges for Lexmark's T420, T520/522, T620/622, T630/632/634, E320/322, and E321/323, and E220 laser printers to be remanufactured.

**B.     MSE, PENDL, IMAGE PROJECTIONS, AND NER'S TRAFFICKING OF DEVICES THAT CIRCUMVENT LEXMARK'S TECHNOLOGICAL MEASURE AND PATENT INFRINGEMENT**

82.     MSE, Pendl, Image Projections, and NER are entities engaged in the business of remanufacturing used toner cartridges, who have purchased SCC's microchips from SCC for use in remanufacturing Prebate/Return Program cartridges for the T420, T520/522, T620/622, T630/632/634, E320/322, E321/323, and/or E220 laser printers.  MSE, Pendl, Image Projections, and NER have engaged in the sale and distribution of illegally remanufactured Prebate/Return Program cartridges containing SCC's microchips, which are designed to circumvent Lexmark's technological measure that controls access to Lexmark's copyrighted computer programs for Lexmark's T420, T520/522, T620/622, T630/632/634, E320/322, E321/323, and/or E220 laser printers..

**C.     SCC, MSE, PENDL, IMAGE PROJECTIONS, AND NER'S INTERFERENCE WITH CONTRACTUAL RELATIONS/PROSPECTIVE ECONOMIC ADVANTAGE AND CIVIL CONSPIRACY**

83.     MSE, Pendl, Image Projections, and NER are engaged in the business of remanufacturing used toner cartridges.  MSE, Pendl, Image Projections, NER, and/or SCC have

17

engaged in one or more of the following: (i) despite knowledge of the Prebate/Return Program license/agreement or contract between Lexmark and its customers, obtained from Lexmark's customers Lexmark Prebate/Return Program toner cartridges for the purpose of remanufacturing and selling those Prebate/Return Program cartridges; (ii) purchased SCC's microchips from SCC for use in remanufacturing Prebate/Return Program cartridges for the T420, T520/522, T620/622, T630/632/634, E320/322, E321/323, and/or E220 laser printers; (iii) engaged in the remanufacturing of Prebate/Return Program cartridges; (iv) engaged in the marketing and sale of the illegally remanufactured Prebate/Return Program cartridges; (v) made statements stating that Lexmark's Prebate/Return Program is unenforceable and that Prebate/Return Program cartridges can be obtained, remanufactured, marketed, and sold to users of Lexmark printers; and (vi) manufactured, trafficked, and/or sold microchips for use in remanufacturing Prebate/Return Program cartridges for the T420, T520/522, T620/622, T630/632/634, E320/322, E321/323, and/or E220 laser printers.

### LEXMARK COUNTERCLAIM – COUNT I

### SCC'S DIGITAL MILLENNIUM COPYRIGHT ACT VIOLATIONS RELATING TO LEXMARK'S PRINTER ENGINE PROGRAMS

84.    Lexmark re-alleges each and every allegation set forth in Paragraphs 1-83, inclusive, and incorporates them by reference herein.

85.    SCC has violated and continues to violate Lexmark's rights protected under 17 U.S.C. § 1201(a)(2)(A), (B) and (C) by manufacturing, marketing, distributing and selling replacement microchips, which are designed and produced to circumvent the technological measures that control access to Lexmark's copyrighted Printer Engine Programs residing in Lexmark's T420, T520/522, T620/622, T630/632/634, E320/322, E321/323, and E220 laser printers.

18

86.    In particular, SCC has violated and continues to violate Lexmark's rights protected under 17 U.S.C. § 1201(a)(2)(A), (B) and (C) because SCC has manufactured and provided a technology, product, device, or component – namely, a replacement microchip – that:

(a) is primarily designed or produced for the purposes of circumventing Lexmark's technological measure that effectively controls access to Lexmark's copyrighted Printer Engine Programs; or
(b) has only limited commercially significant purpose or use other than to circumvent Lexmark's technological measure that effectively controls access to Lexmark's copyrighted Printer Engine Programs; or
(c) is sold for use in circumventing the technological measure that controls access to Lexmark's copyrighted Printer Engine Programs.

87.    Lexmark has been and continues to be damaged by SCC's actions and conduct. Further, if SCC is not enjoined and is allowed to continue its present conduct, Lexmark will suffer irreparable injury, which cannot be adequately compensated by monetary damages. Lexmark is therefore entitled to injunctive relief.

## LEXMARK COUNTERCLAIM – COUNT II

### SCC'S PATENT INFRINGEMENT

88.    Lexmark re-alleges each and every allegation set forth in Paragraphs 1-87, inclusive, and incorporates them by reference herein.

89.    SCC has infringed and continues to infringe the Lexmark patents-in-suit by actively inducing others to infringe with specific intent and by contributing to the infringement by others through the sale, offer for sale, and distribution of SCC's replacement microchips.

90.    SCC's sale, offer for sale, and distribution of its replacement microchips induce existing and prospective Lexmark customers to breach their valid and enforceable Prebate/Return Program agreement with Lexmark that governs the field of use of Lexmark's patented T420, T520/522, T620/622, T630/632/634, E320/322, E321/323, and E220 Prebate/Return Program toner cartridges.

19

91.    Furthermore, SCC has infringed and continues to infringe Lexmark's U.S. Patent No. 6,397,015 through among other activities, the manufacture, use, importation, sale and/or offer for sale of encoder wheels for use with Lexmark's toner cartridges.

92.    SCC has also infringed and continues to infringe U.S. Patent No. 6,397,015 by actively inducing others to infringe with specific intent and by contributing to the infringement by others through the use, sale and/or offer for sale of the infringing encoder wheels.

93.    SCC's infringement of the Lexmark patents-in-suit, including U.S. Patent No. 6,397,015, has been, and continues to be, deliberate and willful.    Lexmark has been and continues to be damaged by SCC's actions and conduct.    Further, if SCC is not enjoined and is allowed to continue its present conduct, Lexmark will suffer irreparable injury.

## LEXMARK COUNTERCLAIM – COUNT III

### MSE, PENDL, IMAGE PROJECTIONS, AND NER'S DIGITAL MILLENNIUM COPYRIGHT ACT VIOLATIONS RELATING TO LEXMARK'S PRINTER ENGINE PROGRAMS

94.    Lexmark re-alleges each and every allegation set forth in Paragraphs 1-93, inclusive, and incorporates them by reference herein.

95.    MSE, Pendl, Image Projections, and NER have violated and continue to violate Lexmark's rights protected under 17 U.S.C. § 1201(a)(2)(A), (B) and (C) by distributing and selling replacement microchips, which are designed and produced to circumvent the technological measures or "secret handshakes" that control access to Lexmark's copyrighted Printer Engine Programs residing in Lexmark's T420, T520/522, T620/622, T630/632/634, E320/322, E321/323, and/or E220 laser printers.

96.    In particular, MSE, Pendl, Image Projections, and NER have violated and continue to violate Lexmark's rights protected under 17 U.S.C. § 1201(a)(2)(A), (B) and (C)

because SCC has distributed, sold, or otherwise trafficked a technology, product, device, or

component – namely, SCC's replacement microchip – that:

> (a) is primarily designed or produced for the purposes of circumventing Lexmark's technological measure that effectively controls access to Lexmark's copyrighted Printer Engine Programs; or
> (b) has only limited commercially significant purpose or use other than to circumvent Lexmark's technological measure that effectively controls access to Lexmark's copyrighted Printer Engine Programs; or
> (c) is sold for use in circumventing the technological measure that controls access to Lexmark's copyrighted Printer Engine Programs.

97.     Lexmark has been and continues to be damaged by MSE, Pendl, Image

Projections, and NER's actions and conduct. Further, if MSE, Pendl, Image Projections, and

NER are not enjoined and are allowed to continue their present conduct, Lexmark will suffer

irreparable injury, which cannot be adequately compensated by monetary damages. Lexmark is

therefore entitled to injunctive relief.

## LEXMARK COUNTERCLAIM – COUNT IV

### MSE, PENDL, IMAGE PROJECTIONS, AND NER'S PATENT INFRINGEMENT

98.     Lexmark re-alleges each and every allegation set forth in Paragraphs 1-97,

inclusive, and incorporates them by reference herein.

99.     MSE, Pendl, Image Projections, and NER have infringed and continue to infringe

the Lexmark patents-in-suit by actively inducing others to infringe with specific intent and by

contributing to the infringement by others through the sale, offer for sale, and distribution of

SCC's replacement microchips.

100.     MSE, Pendl, Image Projections, and NER's sale, offer for sale, and distribution of

SCC's replacement microchips induce existing and prospective Lexmark customers to breach

their valid and enforceable Prebate/Return Program agreement with Lexmark that governs the

field of use of Lexmark's patented T420, T520/522, T620/622, T630/632/634, E320/322, E321/323, and/or E220 Prebate/Return Program toner cartridges.

101.    Furthermore, MSE, Pendl, Image Projections, and NER infringed and continue to infringe Lexmark's U.S. Patent No. 6,397,015 through among other activities, the use, importation, sale and/or offer for sale of encoder wheels for use with Lexmark's toner cartridges.

102.    MSE, Pendl, Image Projections, and NER have also infringed and continue to infringe U.S. Patent No. 6,397,015 by actively inducing others to infringe with specific intent and by contributing to the infringement by others through the use, sale and/or offer for sale of the infringing encoder wheels.

103.    MSE, Pendl, Image Projections, and NER have also directly infringed and continue to directly infringe the Lexmark patents-in-suit by offering for sale and selling used Prebate/Return Program cartridges. Any sale of used Lexmark's patented T420, T520/522, T620/622, T630/632/634, E320/322, E321/323, and/or E220 Prebate/Return Program toner cartridges by MSE, Pendl, Image Projections, and NER is outside the scope of the valid and enforceable shrink-wrap license that governs the field of use of those patented toner cartridges.

104.    MSE, Pendl, Image Projections, and NER's infringement of the Lexmark patents-in-suit, including U.S. Patent No. 6,397,015, has been, and continues to be, deliberate and willful. Lexmark has been and continues to be damaged by MSE, Pendl, Image Projections, and NER's actions and conduct. Further, if MSE, Pendl, Image Projections, and NER are not enjoined and are allowed to continue their present conduct, Lexmark will suffer irreparable injury.

## LEXMARK COUNTERCLAIM – COUNT V

### INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

105.   Lexmark re-alleges each and every allegation set forth in Paragraphs 1-104, inclusive, and incorporates them by reference herein.

106.   The Prebate/Return Program license/agreement is a valid contract between Lexmark and purchasers of Prebate/Return Program toner cartridges.

107.   SCC, MSE, Pendl, Image Projections, and NER have knowledge of the Prebate/Return Program contract between Lexmark and purchasers of Prebate/Return Program toner cartridges.

108.   SCC, MSE, Pendl, Image Projections, and NER engaged in conduct intended to cause, and which did cause, various Lexmark customers to breach their obligations under the Prebate/Return Program contract employed with the Prebate/Return Program Printers.

109.   The conduct of SCC, MSE, Pendl, Image Projections, and NER was improper, willful, and malicious.

110.   The intentional interference with contractual relations committed by SCC, MSE, Pendl, Image Projections, and NER caused Lexmark to suffer damages.

111.   SCC, MSE, Pendl, Image Projections, and NER acted willfully, intentionally and with gross negligence, fraud, oppression, and malice towards Lexmark in committing intentional interference with contractual relations and Lexmark is therefore entitled to punitive damages.

23

## LEXMARK COUNTERCLAIM – COUNT VI

### INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

112.    Lexmark re-alleges each and every allegation set forth in Paragraphs 1-111, inclusive, and incorporates them by reference herein.

113.    Lexmark's Prebate/Return Program employed with the Prebate/Return Program Printers has been, and continues to be, a valid business expectancy and relationship between Lexmark and its existing and prospective customers.

114.    SCC, MSE, Pendl, Image Projections, and NER have knowledge of the valid business expectancy and relationship between Lexmark and its customers.

115.    SCC, MSE, Pendl, Image Projections, and NER engaged in conduct intended to interfere, and which did interfere, with the valid business expectancy and relationship between Lexmark and its customers.

116.    The conduct of SCC, MSE, Pendl, Image Projections, and NER was improper, willful, and malicious.

117.    The intentional interference with prospective economic advantage committed by SCC, MSE, Pendl, Image Projections, and NER caused Lexmark to suffer damages.

118.    SCC, MSE, Pendl, Image Projections, and NER acted willfully, intentionally, and with gross negligence, fraud, oppression, and malice towards Lexmark in committing intentional interference with prospective economic advantage and Lexmark is therefore entitled to punitive damages.

## LEXMARK COUNTERCLAIM – COUNT VII

### CIVIL CONSPIRACY

119.    Lexmark re-alleges each and every allegation set forth in Paragraphs 1-118, inclusive, and incorporates them by reference herein.

120.    SCC, MSE, Pendl, Image Projections, and NER combined to accomplish the interference with contractual relations and interference with prospective economic advantage alleged herein.

121.    SCC, MSE, Pendl, Image Projections, and NER entered into a plan or agreement on the course of action necessary to bring about the unlawful and actionable objects of committing intentional interference with contractual relations and intentional interference with prospective business advantage.

122.    SCC, MSE, Pendl, Image Projections, and NER committed various acts in furtherance of bringing about the unlawful and actionable objects of committing intentional interference with contractual relations and intentional interference with prospective business advantage.

123.    The conspiracy between SCC, MSE, Pendl, Image Projections, and NER to commit intentional interference with contractual relations and intentional interference with prospective business advantage caused Lexmark to suffer damages.

124.    SCC, MSE, Pendl, Image Projections, and NER acted willfully, intentionally, and with gross negligence, fraud, oppression and malice towards Lexmark in conspiring to commit intentional interference with contractual relations and intentional interference with prospective business advantage and Lexmark is therefore entitled to punitive damages against SCC, MSE, Pendl, Image Projections, and NER.

25

## RELIEF REQUESTED

**Wherefore,** Lexmark further respectfully requests that:

A.    Judgment that SCC's Complaint for Declaratory Judgment be dismissed with prejudice and without relief or recovery to SCC.

B.    This Court award Lexmark its reasonable costs and attorneys' fees in maintaining this action and defending against SCC's claims.

C.    This Court adjudge that SCC's manufacture and sale of replacement microchips for use in Lexmark's T420, T520/522, T620/622, T630/632/634, E320/322, E321/323, and E220 laser printers has violated the Digital Millennium Copyright Act, 17 U.S.C. § 1201(a)(2)(A), (B) and (C).

D.    This Court adjudge that MSE's, Pendl's, Image Projections', and NER's distribution and sale of microchips for use in Lexmark's T420, T520/522, T620/622, T630/632/634, E320/322, E321/322, and/or E220 laser printers has violated the Digital Millennium Copyright Act, 17 U.S.C. § 1201(a)(2)(A), (B) and (C).

E.    This Court adjudge that SCC has been and is infringing one or more of the claims of the Lexmark patents-in-suit pursuant to 35 U.S.C. § 271.

F.    This Court adjudge that MSE, Pendl, Image Projections, and NER have been and are infringing one or more of the claims of the Lexmark patents-in-suit pursuant to 35 U.S.C. § 271

G.    SCC, and all officers, directors, agents, servants, employees, affiliates, attorneys, successors, and assigns, and all persons in active concert or participation therewith, including but not limited to their customers, suppliers, contractors, sub-contractors, developers, distributors, retailers, any others to whom SCC's replacement microchips and/or infringing encoder wheels have been otherwise transferred by any means, and others that may become aware of such enjoinment and restraint, be permanently enjoined and restrained from infringing Lexmark

patents-in-suit, or otherwise performing or practicing any process or method enabling them to infringe or induce infringement of the Lexmark patents-in-suit

H.    SCC, and all officers, directors, agents, servants, employees, affiliates, attorneys, successors, and assigns, and all persons in active concert or participation therewith, including but not limited to their customers, suppliers, contractors, sub-contractors, developers, distributors, retailers, any others to whom SCC's replacement microchips and/or any other microchips have been otherwise transferred by any means, and others that may become aware of such enjoinment and restraint, be permanently enjoined and restrained from violating Lexmark's rights under the Digital Millennium Copyright Act, and/or continuing to sell, dispose of, transfer, develop or manufacture any devices, products, or components primarily designed or produced for the purpose of circumventing a technological measure that effectively controls access to the Printer Engine Programs for Lexmark's T420, T520/522, T620/622, T630/632/634, E320/322, E321/E322, and E220 laser printers.

I.    SCC, and all officers, directors, agents, servants, employees, affiliates, attorneys, successors, and assigns, and all persons in active concert or participation therewith, including but not limited to their customers, suppliers, contractors, sub-contractors, developers, distributors, retailers, any others to whom SCC's replacement microchips and/or infringing encoder wheels have been otherwise transferred by any means, and others that may become aware of such enjoinment and restraint, be required to deliver up for destruction all devices, products, or components primarily designed or produced for the purpose of circumventing a technological measure that effectively controls access to the Printer Engine Programs for Lexmark's T420, T520/522, T620/622, T630/632/634, E320/322, E321/323, and E220 laser printers, and/or infringing, contributorily infringing, or inducing infringement of the Lexmark patents-in-suit.

27

J.      MSE, Pendl, Image Projections, and NER, and all officers, directors, agents, servants,

employees, affiliates, attorneys, successors, and assigns, and all persons in active concert or

participation therewith, including but not limited to their customers, suppliers, contractors, sub-

contractors, developers, distributors, retailers, any others to whom SCC's replacement

microchips and/or infringing encoder wheels have been otherwise transferred by any means, and

others that may become aware of such enjoinment and restraint, be permanently enjoined and

restrained from infringing Lexmark patents-in-suit, or otherwise performing or practicing any

process or method enabling them to infringe or induce infringement of the Lexmark patents-in-

suit

K.      MSE, Pendl, Image Projections, and NER, and all officers, directors, agents, servants,

employees, affiliates, attorneys, successors, and assigns, and all persons in active concert or

participation therewith, including but not limited to their customers, suppliers, contractors, sub-

contractors, developers, distributors, retailers, any others to whom SCC's replacement

microchips and/or any other microchips have been otherwise transferred by any means, and

others that may become aware of such enjoinment and restraint, be permanently enjoined and

restrained from violating Lexmark's rights under the Digital Millennium Copyright Act, and/or

continuing to sell, dispose of, transfer, develop or manufacture any devices, products, or

components primarily designed or produced for the purpose of circumventing a technological

measure that effectively controls access to the Printer Engine Programs for Lexmark's T420,

T520/522, T620/622, T630/632/634, E320/322, E321/323, and/or E220 laser printers.

L.      MSE, Pendl, Image Projections, and NER, and all officers, directors, agents, servants,

employees, affiliates, attorneys, successors, and assigns, and all persons in active concert or

participation therewith, including but not limited to their customers, suppliers, contractors, sub-

contractors, developers, distributors, retailers, any others to whom SCC's replacement

28

microchips and/or infringing encoder wheels have been otherwise transferred by any means, and others that may become aware of such enjoinment and restraint, be required to deliver up for destruction all devices, products, or components primarily designed or produced for the purpose of circumventing a technological measure that effectively controls access to the Printer Engine Programs for Lexmark's T420, T520/522, T620/622, T630/632/634, E320/322, E321/323, and/or E220 laser printers, and/or infringing, contributorily infringing, or inducing infringement of the Lexmark patents-in-suit.

M.      SCC, MSE, Pendl, Image Projections, and NER be directed to file with this Court and to serve upon Lexmark within fifteen (15) days after service of any injunction issued in this action, a written report under oath, setting forth in detail the manner of compliance with paragraphs G – M.

N.      Lexmark recover SCC's, MSE's, Pendl's, Image Projections', and NER's profits and the damages sustained by Lexmark arising from SCC's, MSE's, Pendl's, Image Projections', and NER's violations of the DMCA, and infringement of or inducement to infringe the Lexmark patents-in-suit, which damages include but are not limited to Lexmark's lost profits.

O.      Lexmark recover statutory damages sustained by Lexmark based upon violations of the DMCA committed by SCC, MSE, Pendl, Image Projections, and NER, pursuant to 17 U.S.C. § 1203(c)(3).

P.      Lexmark recover an award from SCC, MSE, Pendl, Image Projections, and NER of Lexmark's (i) costs incurred in this action pursuant to 17 U.S.C. § 1203(b)(4) and 35 U.S.C. § 285, and (ii) reasonable attorneys' fees incurred in this action pursuant to 17 U.S.C. § 1203(b)(5) and 35 U.S.C. § 285.

Q.      Lexmark recover damages, jointly and severally, sufficient to compensate it for the intentional interference with contractual relations committed by SCC, MSE, Pendl, Image

29

Projections, and NER and punitive damages sufficient to punish and discourage SCC, MSE, Pendl, Image Projections, and NER, and others from similar conduct in the future.

R.    Lexmark recover damages, jointly and severally, sufficient to compensate it for the intentional interference with prospective economic advantage committed by SCC, MSE, Pendl, Image Projections, and NER and punitive damages sufficient to punish and discourage SCC, MSE, Pendl, Image Projections, and NER, and others from similar conduct in the future.

S.    Lexmark recover damages, jointly and severally, sufficient to compensate it for the civil conspiracy committed by SCC, MSE, Pendl, Image Projections, and NER and punitive damages sufficient to punish and discourage SCC, MSE, Pendl, Image Projections, and NER, and others from similar conduct in the future.

T.    Lexmark recover increased damages as permitted under 35 U.S.C. § 284.

U.    Lexmark recover pre-judgment and post-judgment interest on each and every award.

V.    That Lexmark have such other and further relief as the Court may deem just and proper.

## JURY DEMAND

NOW COMES, Lexmark, and in reliance upon SCC's demand for trial by jury of the issues alleged in SCC's Complaint for Declaratory Judgment, likewise demands trial by jury of those issues and the issues raised by the Answer and Counterclaims of Lexmark.

Respectfully submitted,

Dated: _11/8/04_

By: _____
Charles E. Shivel, Jr.
Steven B. Loy
Hanly A. Ingram
STOLL, KEENON & PARK LLP
300 West Vine Street, Suite
Lexington, KY 40507
Telephone: (859) 231-3000
Facsimile: (859) 253 1093

30

Joseph M. Potenza
BANNER & WITCOFF, LTD.
1001 G Street, N.W., 11th Floor
Washington, DC 20001
Telephone: (202) 508-9100
Facsimile: (202) 508-9299

Christopher J. Renk
Timothy C. Meece
Binal J. Patel
Jason S. Shull
BANNER & WITCOFF, LTD.
10 S. Wacker Drive, Suite 3000
Chicago, IL 60606
Telephone: (312) 715-1000
Facsimile: (312) 715-1234

David A. Shirlen
Mark N. Poovey
John F. Morrow, Jr.
WOMBLE CARLYLE
SANDRIDGE AND RICE, PLLC
One West Fourth Street
Winston-Salem, NC 27101
Telephone: (336) 721-3629

**Attorneys for Plaintiff,
Lexmark International, Inc.**

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing LEXMARK INTERNATIONAL, INC.'S SECOND AMENDED ANSWER AND COUNTERCLAIMS was served by hand delivery or U.S. Mail, postage prepaid, on this 8th day of November, 2004, as follows:

**VIA HAND DELIVERY**
W. Craig Robertson III
Mickey T. Webster
Wyatt, Tarrant & Combs, LLP
250 West Main Street, Suite 1600
Lexington, KY 40507

**VIA U.S. MAIL**
Seth D. Greenstein
William H. Barrett
Melise R. Blakeslee
John R. Fuisz
Stefan M. Meisner
Ann M. Brose
McDermott, Will & Emery
600 13th Street, N.W.
Washington, D.C. 20005-3096

**VIA U.S. MAIL**
William L. London
Static Control Components, Inc.
3010 Lee Avenue, P.O. Box 152
Sanford, North Carolina 27331

BY: _____
        ATTORNEYS FOR DEFENDANT/
        COUNTERCLAIM PLAINTIFF

32

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

STATIC CONTROL COMPONENTS, INC.,

    PLAINTIFF/COUNTERCLAIM
    DEFENDANT

V.

LEXMARK INTERNATIONAL, INC.,

    DEFENDANT/COUNTERCLAIM
    PLAINTIFF

v.

WAZANA BROTHERS INTERNATIONAL,
INC. d/b/a MICRO SOLUTIONS ENTERPRISES

    COUNTERCLAIM DEFENDANT

v.

PENDL COMPANIES, INC.

    COUNTERCLAIM DEFENDANT

v.

NER DATA PRODUCTS, INC.

    COUNTERCLAIM DEFENDANT

PENDING IN THE UNITED STATES
DISTRICT COURT EASTERN
DISTRICT OF KENTUCKY, BEFORE
THE HONORABLE GREGORY F. VAN
TATENHOVE, CIVIL ACTION 04-CV-
84-GFVT.

CIVIL ACTION NO.

## DECLARATION OF WILLIAM H. BARRETT IN SUPPORT OF
## MOTION TO QUASH IMPROPER SUBPOENA
## SERVED ON OPPOSING PARTY'S LITIGATION COUNSEL

I, William H. Barrett, hereby certify and declare as follows:

1.    I am an attorney who has been licensed to practice law in the District of

Columbia, and am admitted to practice before this Court.

2.    I am a partner in the law firm of McDermott Will & Emery LLP ("MWE") based

FILED

OCT 3 1 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

06cz5
474

in the firm's Washington, D.C. office.

3.    I have personal knowledge of the facts stated in this declaration.

4.    In about October 2000, Static Control retained MWE to represent Static Control in Europe on a trademark matter brought against Static Control by Lexmark.

5.    In 2002, Static Control retained MWE to represent it in a copyright dispute against Lexmark, a case that was ultimately consolidated into the above captioned matter.

6.    MWE was retained by Static Control solely as litigation counsel and not to offer any opinions as to the validity or infringement of any patent.

7.    As litigation counsel for Static Control, MWE has not provided any party to this litigation, including Static Control, with any opinion as to the validity or infringement of any patent. Nor has MWE provided any legal services whatsoever to any party in the litigation with Lexmark other than Static Control.

8.    MWE has participated with other counsel for Static Control and counsel of all of the co-defendants in the Lexmark litigation in privileged communications concerning matters of common interest to their preparation for trial, pursuant to a written common interest agreement executed by counsel to each of the co-defendants.

9.    The common interest agreement does not contemplate the provision of, nor has it been used to provide, any party with any opinions as to the validity or infringement of any patent.

10.    On October 18, 2006, Lexmark issued subpoenas to trial counsel for each of the co-defendants in the litigation including: MWE, counsel for Static Control; Bartlit Beck Herman Palenchar & Scott LLP, counsel for Static Control; Stan Amberg, counsel for Static Control; Stites and Harbison PLCC, counsel for Pendl Companies, Inc.; Cesari & McKenna LLP, counsel

-2-

for NER Data Products, Inc.; and Moldo, Davidson, Fraioli, Seror & Sestanovich, LLP, counsel for Wazana Brothers International, Inc.

11.     To the best of my knowledge, neither Robert Becker nor the law firm Coudert Brothers has played any role in this litigation.

12.     MWE has never had any communications with Mr. Becker or Coudert Brothers concerning Pendl or this litigation.

13.     There have been no communications between MWE and Pendl Companies, Inc.

14.     Any document or other communication between McDermott and Static Control that is responsive to the topics in the subpoena would have been made to Static Control for the purpose of providing legal services in connection with the ongoing litigation in Kentucky.

15.     Any document in the possession of McDermott or any other communication by McDermott, including communication with Stites & Harbison, that is responsive and relevant to the topics in the subpoena would have been made in preparation for the anticipated trial in Kentucky.

16.     Any communication made by McDermott to Stites & Harbison that is responsive and relevant to the topics in the subpoena was made in the course of the joint defense effort to defend against Lexmark's counterclaims and any such communication was designed to further the joint defense effort.

I declare under penalty of perjury under the laws of the United States, that the foregoing is true and correct.

Executed October **29**, 2006

_William H. Barrett_
William H. Barrett

EXHIBIT 5 – FILED UNDER SEAL



FILED

OCT 2 1 2006    06 ms 474

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Issued by the

# United States District Court

### DISTRICT OF D.C.

SUBPOENA IN A CIVIL CASE

Static Control Components, Inc.
    Plaintiff/Counterclaim Defendant

v.

Lexmark International, Inc.
    Defendant/Counterclaim Plaintiff

v.

Wazana Brothers International, Inc.
d/b/a Micro Solutions Enterprises
    Counterclaim Defendant

v.

Pendl Companies, Inc.
    Counterclaim Defendant

v.

NER Data Products, Inc.
    Counterclaim Defendant

Civil Action No. 04-CV-84-GFVT
Pending in United States District Court,
Eastern District of Kentucky
Honorable Gregory F. Van Tatenhove

To: **McDermott Will & Emery**
    Attn: Paul E. Poirot
    600 13th St., N.W.
    Washington, DC 20005

_____ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

FILED

OCT 3 1 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

2 6 45
474

__X__ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case pursuant Fed. R. Civ. P. 30(b)(6) and Fed. R. Civ. P. 45. See Exhibit B for the deposition topics.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Banner & Witcoff, Ltd.<br>1001 G St., N.W.<br>Suite 1100<br>Washington, D.C. 20001<br>(or other mutually agreeable location) | November 7, 2006 at 9:00 a.m. |

__X__ YOU ARE COMMANDED to produce and permit inspection and copying of documents or things at the place, date, and time specified below. See Exhibit A for the requests for documents and things.

| PLACE | DATE AND TIME |
|---|---|
| Banner & Witcoff, Ltd.<br>1001 G St., N.W.<br>Suite 1100<br>Washington, D.C. 20001<br>(or other mutually agreeable location) | October 27, 2006 at 9:00 a.m. |

_____ YOU ARE COMMANDED to produce and permit inspection of the following premises at the date and time specified below

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| Issuing Officer Signature and Title (Indicate if attorney for Plaintiff or Defendant)<br>Attorney for Defendant/Counterclaim Plaintiff, Lexmark International, Inc. | Date<br><br>October 18, 2006 |
|---|---|

Issuing Officer's Name, Address, and Phone Number
Jason S. Shull, Banner & Witcoff, Ltd., 10 South Wacker Drive, Suite 3000, Chicago, Illinois, 60606, (312) 463-5000

## PROOF OF SERVICE

| DATE | PLACE |
|---|---|
| | |

SERVED

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on:_____
         DATE

Signature of server:_____

Address of server:_____

## Rule 45, Federal Rule of Civil Procedure, Parts C & D

(c) PROTECTION OF PERSONS SUBJECT TO SUB-POENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(2)(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection is made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, of commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## EXHIBIT A

Pursuant to Federal Rule of Civil Procedure 45 and directed by the subpoena attached hereto, which has been issued by the District of D.C., you are requested to produce all documents and things within the scope of the following definitions and descriptions that are within your possession, custody, or control. With respect to documents and things withheld under a claim of privilege, you are required under Rule 45 to describe the nature of the documents and things withheld in a manner sufficient to enable the demanding party to contest the claims.

### DEFINITIONS

1.    The term "McDermott Will & Emery" means McDermott Will & Emery, its past and current employees, attorneys, licensees, agents, representatives, and investigators, as well as any company name under which McDermott Will & Emery is or was doing business, its predecessors, directors, officers, employees, agents, and each person acting or purporting to act on its or their behalf or under its or their control, including, but not limited to, Seth D. Greenstein, William H. Barrett, Melise R. Blakeslee, John R. Fuisz, Stefan M. Meisner, Ann M. Brose, and Paul E. Poirot.

2.    The term "Lexmark" means Lexmark International, Inc., as well as its employees, attorneys, licensees, agents, representatives, and investigators, as well as any company name under which Lexmark is or was doing business, its predecessors, parents, sisters, subsidiaries, divisions, directors, officers, employees, agents, distributors, jobbers, salespersons, sales representatives, licensors, licensees, and attorneys, and each person acting or purporting to act on its or their behalf or under its or their control.

3.    The term "Pendl" means Pendl Companies, Inc., as well as its employees, attorneys, licensees, agents, representatives, and investigators, as well as any company name

under which Pendl is or was doing business, its predecessors, parents, sisters, subsidiaries, divisions, directors, officers, employees, agents, distributors, jobbers, salespersons, sales representatives, licensors, licensees, and attorneys, and each person acting or purporting to act on its or their behalf or under its or their control, including, but not limited to, Robert D. Becker (the author of the letter to Randy Pendl of August 26, 1999 (attached hereto as Tab 1)).

4.  The term "Lexmark's Patents" means U.S. Patent Nos. 5,634,169, 5,707,743, 5,758,231, 5,758,233, 5,768,661, 5,802,432, 5,804,114, 5,874,172, 5,875,378, 5,880,244, 5,952,442, 5,995,772, 6,009,285, 6,009,291, 6,117,557, 6,160,073, 6,300,025, 6,397,015, 6,459,876,6,487,383,6,492,083, D399,249, and D458,300.

5.  The term "Prebate Program" means and refers to Lexmark's Prebate program for the sale of certain Lexmark toner cartridges that are sold at a special price subject to a restriction that the cartridge be used only once and returned only to Lexmark. Lexmark's Prebate program was renamed the "Lexmark Return Program" on April 22, 2003.

6.  The terms "document" or "documents" mean anything which would be a "writing" or "recording" as defined in Rule 1001(1) of the Federal Rules of Evidence or a "document" as defined in Rule 34(a) of the Federal Rules of Civil Procedure, including, without limitation, every original (and every copy of any original or copy which differs in any way from any original because of notations thereon or attachments thereto or otherwise) of every writing or recording of every kind of description, whether handwritten, typed, drawn, sketched, printed or recorded by any physical, mechanical, electronic or electrical means whatsoever, including without limitation, memoranda, correspondence, electronic mail, electronic data compilations, notes, books, records, papers, pamphlets, brochures, circulars, advertisements, specifications, blueprints, maps, plats, surveys, drawings, sketches, graphs, charts, plans, laboratory or

engineering reports, notebooks, worksheets, reports, lists, analyses, summaries, ledger accounts, audits, inventories, tax returns, financial statements, profit and loss statements, cash flow statements, balance sheets, annual or other periodic reports, prospectuses, registration, solicitations, minutes, appointment books, diaries, telephone bills and toll call records, expense reports, commission statements, itineraries, agenda, payroll records, checkbooks, canceled checks, receipts, contracts, agreements, instrument assignments, applications, offers, acceptances, proposals, financing statements, documents of title, appraisals, purchase orders, invoices, bills of lading, written memorials of oral communications, forecasts, photographs, photographic slides or negatives, films, filmstrips, x-rays, video or audio tapes and recordings.

7.    The terms "thing" or "things" mean any tangible item, and shall be construed as broadly as possible under the Federal Rules of Civil Procedure.

8.    The term "relating to" means alluding to, responding to, concerning, connected with, commenting on, in respect of, about, regarding, discussing, evidencing, showing, describing, reflecting, analyzing and/or constituting.

9.    "And," "or," as well as "and/or," shall be construed disjunctively or conjunctively as necessary in order to bring within the scope of the request all responses which otherwise might be construed to be outside its scope.

10.    The terms "any" and "all" shall be read to mean each and every.

11.    The term "person" means a natural or judicial person, including any corporation, proprietorship, partnership, agency, or business association of any type.

## INSTRUCTIONS

1.    In producing documents and things responsive to these requests, McDermott Will & Emery shall furnish all documents and things within its possession, custody or control, as they

are kept in the ordinary course of business or they shall be organized and labeled to correspond with the document requests to which they are responsive, regardless of whether these documents and things are possessed directly by McDermott Will & Emery or by its present or past agents, employees, companies, licensees, representatives, investigators, or attorneys.

2.    If the attorney-client privilege or work product immunity is asserted as to any document or thing, or if any document or thing is not produced in full, produce the document or thing to the extent the request for production is not objected to, and, in so doing, state the following:

    (a)    the specific ground(s) for not producing the document or thing in full;

    (b)    the basis for such a claim of privilege or immunity and the facts supporting that basis; and

    (c)    fully identify the information or material contained within the document or thing for which such privilege or immunity is asserted, including as applicable, the name of any document or thing; its date; the name, address and job title of each author or other person involved in its preparation, each addressee and each person to whom a copy of the document or thing has been sent or received; and the general nature of the document or thing (e.g., memoranda, letter).

3.    Where an objection is made to a request, state all grounds upon which McDermott Will & Emery's objection is based.

4.    If, after exercising due diligence, McDermott Will & Emery is unable to determine the existence of any documents or things falling within a specific request, McDermott Will & Emery shall so state in its written response.

5.     With respect to each of the following requests, McDermott Will & Emery shall identify and/or produce all documents which are known to it or which can be located or discovered by McDermott Will & Emery through diligent effort on McDermott Will & Emery's part, including, but not limited to, all documents which are in the business or personnel files of McDermott Will & Emery employees or contained or stored within a computer in the possession of McDermott Will & Emery or its representatives, attorneys, or accountants, or accessible to McDermott Will & Emery, its employees, or its representatives, attorneys, or accountants.

6.     Whenever used herein, the singular shall be deemed to include the plural and the plural shall be deemed to include the singular and the disjunctive shall be deemed to include the conjunctive and the conjunctive shall be deemed to include the disjunctive so as to elicit all information potentially responsive to the request for production and all of its context.

### REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS

**Request No. 1:**    All documents and things relating to the subject matter discussed in Robert Becker's letter to Randy Pendl of August 26, 1999 (attached hereto as Tab 1).

**Request No. 2:**    All documents and things that reflect, embody, or discuss communications between McDermott Will & Emery and Pendl relating to the subject matter discussed in Robert Becker's letter to Randy Pendl of August 26, 1999.

**Request No. 3:**    All documents and things that reflect, embody, or discuss communications between McDermott Will & Emery and Pendl relating to Pendl's advice of counsel defense, including Pendl's decision to invoke the defense.

**Request No. 4:**    All documents and things that reflect, embody, or discuss communications between McDermott Will & Emery and Pendl relating to the scope, validity, and/or enforceability of Lexmark's Prebate Program.

**Request No. 5:**    All documents and things that reflect, embody, or discuss communications between McDermott Will & Emery and Pendl relating to communications with Pendl regarding the infringement of Lexmark's Patents.

**Request No. 6:**    All documents and things that reflect, embody, or discuss communications between McDermott Will & Emery and Pendl relating to the antitrust implications, *vel non*, of Lexmark's Prebate Program.

**Request No. 7:**    All documents and things that reflect, embody, or discuss communications between McDermott Will & Emery and Pendl relating to the contract law concerns, *vel non*, of Lexmark's Prebate Program.

**Request No. 8:**    All documents and things that reflect, embody, or discuss communications between McDermott Will & Emery and Pendl relating to the issue of whether Pendl's remanufacturing of used toner cartridges constitutes permissible repair.

**Request No. 9:**    All documents and things that reflect, embody, or discuss communications between McDermott Will & Emery and Pendl relating to the legal and/or factual bases set forth in Robert Becker's letter to Randy Pendl of August 26, 1999.

**EXHIBIT B**

The definitions set forth in Exhibit A are incorporated herein by reference.

## DEPOSITION TOPICS

**Deposition Topic No. 1:**    Communications between McDermott Will & Emery and Pendl relating to the subject matter discussed in Robert Becker's letter to Randy Pendl of August 26, 1999.

**Deposition Topic No. 2:**    Communications between McDermott Will & Emery and Pendl relating to Pendl's advice of counsel defense, including Pendl's decision to invoke the defense.

**Deposition Topic No. 3:**    Communications between McDermott Will & Emery and Pendl relating to the scope, validity, and/or enforceability of Lexmark's Prebate Program.

**Deposition Topic No. 4:**    Communications between McDermott Will & Emery and Pendl relating to the infringement of Lexmark's Patents.

**Deposition Topic No. 5:**    Communications between McDermott Will & Emery and Pendl relating to the antitrust implications, *vel non*, of Lexmark's Prebate Program.

**Deposition Topic No. 6:**    Communications between McDermott Will & Emery and Pendl relating to the contract law concerns, *vel non*, of Lexmark's Prebate Program.

**Deposition Topic No. 7:**    Communications between McDermott Will & Emery and Pendl relating to the issue of whether Pendl's remanufacturing of used toner cartridges constitutes permissible repair.

**Deposition Topic No. 8:**    Communications between McDermott Will & Emery and Pendl relating to the legal and/or factual bases set forth in Robert Becker's letter to Randy Pendl of August 26, 1999.