**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION
CASE NO. 04-CV-84-KSF**

Eastern District of Kentucky
FILED

NOV 0 8 2004

AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

STATIC CONTROL COMPONENTS, INC.     PLAINTIFF/COUNTERCLAIM DEFENDANT

v.     **LEXMARK INTERNATIONAL, INC.'S SECOND AMENDED ANSWER
AND COUNTERCLAIMS**

LEXMARK INTERNATIONAL, INC.     DEFENDANT/COUNTERCLAIM PLAINTIFF

v.

WAZANA BROTHERS INTERNATIONAL, INC.
d/b/a MICRO SOLUTIONS ENTERPRISES     COUNTERCLAIM DEFENDANT

v.

PENDL COMPANIES, INC.     COUNTERCLAIM DEFENDANT

v.

IMAGE PROJECTIONS WEST, INC.     COUNTERCLAIM DEFENDANT

v.

NER DATA PRODUCTS, INC     COUNTERCLAIM DEFENDANT

\*\*\* \*\*\* \*\*\* \*\*\* \*\*\* \*\*\* \*\*\* \*\*\* \*\*\*

Defendant and Counterclaim Plaintiff, Lexmark International, Inc. ("Lexmark"), by and through the undersigned counsel, answers and counterclaims to Plaintiff and Counterclaim Defendant's, Static Control Components, Inc.'s ("SCC") Complaint for Declaratory Judgment, and asserts counterclaims against Counterclaim Defendants, Wazana Brothers International, Inc. d/b/a Micro Solutions Enterprises ("MSE"), Pendl Companies, Inc. ("Pendl"), Image Projections West, Inc. ("Image Projections"), and NER Data Products, Inc. ("NER") as follows:

1

FILED

OCT 3 1 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

06045474

## FIRST DEFENSE

The Complaint fails to state claims upon which relief may be granted.

## SECOND DEFENSE

With respect to the numbered paragraphs of the Complaint, Lexmark states:

1.    Lexmark is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 1, and on that basis, denies them.

2.    Lexmark is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 2, and on that basis, denies them.

3.    Lexmark admits that the Complaint for Declaratory Judgment purports to set forth an action arising under the copyright laws of the United States and the Digital Millennium Copyright Act of 1998, 17 U.S.C. § 1201, *et seq.* ("DMCA"). Except as admitted, Lexmark denies that SCC is entitled to relief in accordance with the allegations contained in paragraph 3.

4.    Lexmark admits that the Complaint for Declaratory Judgment purports to set forth an action arising under the copyright laws of the United States and the DMCA, and admits that claims brought under the copyright laws give rise to federal question jurisdiction. Except as admitted, Lexmark denies that SCC is entitled to relief in accordance with the allegations contained in paragraph 4.

5.    Lexmark admits the allegations contained in paragraph 5.

6.    Lexmark admits the allegations contained in paragraph 6.

7.    Lexmark admits that SCC is a North Carolina corporation with its principal place of business in Sanford, Lee County, North Carolina. Lexmark also admits that SCC supplies components used by remanufacturers in remanufacturing various brands of computer toner cartridges, including Lexmark toner cartridges. Except as admitted, Lexmark is without

2

knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 7, and on that basis, denies them.

8.     Lexmark admits that remanufacturers remanufacture used OEM laser toner cartridges, and that remanufacturers sell remanufactured laser toner cartridges at a discount price compared to the price of new OEM laser toner cartridges. Except as admitted, Lexmark is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 8, and on that basis, denies them.

9.     Lexmark admits the allegations contained in paragraph 9.

10.    Lexmark admits the allegations contained in paragraph 10.

11.    Lexmark admits that its sells numerous computer printer models, including the T520/522, T620/622, and T630 laser printers. Lexmark admits that it sells some of its printer models to other computer and computer peripheral manufacturers, under the brand names of such manufacturers and using different model numbers. Except as admitted, Lexmark denies allegations contained in paragraph 11.

12.    Lexmark admits that in 2001, it introduced toner cartridges for its T520/522 and T620/622 laser printers containing microchips that utilize a technological measure. Lexmark further admits that, in general, the technological measure requires a "secret handshake" between the printer and toner cartridge to enable printer functionality. Lexmark further admits that the technological measure involves calculations by, and communication between, the printer and the toner cartridge each time a toner cartridge is installed in the printer, the printer is powered on, or whenever the printer is opened and then reclosed. Lexmark further admits that if the technological measure takes place successfully, then the printer recognizes the toner cartridge as being authorized and printer functionality and access to the Lexmark's copyrighted computer programs is enabled. Lexmark further admits that unless the technological measure or "secret

3

handshake" takes place successfully, Lexmark's printers will not recognize the toner cartridges as being authorized Lexmark toner cartridges, and the printers will not print. Except as admitted, Lexmark denies allegations contained in paragraph 12.

13.     Lexmark is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 13, and on that basis, denies them.

14.     Lexmark is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 14, and on that basis, denies them.

15.     Lexmark is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 15, and on that basis, denies them.

16.     Lexmark is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 16, and on that basis, denies them.

17.     Lexmark is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 17, and on that basis, denies them.

18.     Lexmark is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 18, and on that basis, denies them.

19.     Lexmark is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 19, and on that basis, denies them.

20.     Lexmark admits that in July 2003 SCC provided Lexmark with source code for a new microchip designed for use with Lexmark's T520/522 and T620/622 toner cartridges, pursuant to a confidentiality agreement. Lexmark also admits that on July 23, 2003, SCC's counsel, SCC's expert Dr. Goldberg, and an SCC engineer held a videoconference with counsel for Lexmark and Lexmark's expert Dr. Maggs. Except as admitted, Lexmark denies allegations contained in paragraph 20.

4

21.   Lexmark admits that in August 2003 Lexmark's counsel would not concede that SCC's new chip would not violate the DMCA and would not concede that the software for the SCC's new chip did not infringe Lexmark's copyrights.  Except as admitted, Lexmark denies allegations contained in paragraph 21.

22.   Lexmark is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 22, and on that basis, denies them.

23.   Lexmark is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 23, and on that basis, denies them.

24.   The allegations contained in paragraph 24 are conclusions of law to which no responsive pleading is required.  To the extent a pleading is required, the allegations are denied.

25.   Lexmark is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 25, and on that basis, denies them.

26.   Answering the allegations in paragraph 26, Lexmark repeats and incorporates by reference its answers to paragraphs 1-25 above.

27.   Lexmark is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 27, and on that basis, denies them.

28.   Lexmark is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 28, and on that basis, denies them.

29.   Lexmark is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 29, and on that basis, denies them.

30.   The allegations contained in paragraph 30 are conclusions of law to which no responsive pleading is required.  To the extent a pleading is required, Lexmark is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 30, and on that basis, denies them.

5

31.    Answering the allegations in paragraph 31, Lexmark repeats and incorporates by reference its answers to paragraphs 1-30 above.

32.    Lexmark admits that Section 1201(a)(2) of the DMCA, 17.U.S.C. § 1201(a)(1) provides:

No person shall manufacture, import, offer to the public, provide, or otherwise traffic in any technology, product, service, device, component, or part thereof, that --
(A) is primarily designed or produced for the purpose of circumventing a technological measure that effectively controls access to a work protected under this title;
(B) has only limited commercially significant purpose or use other than to circumvent a technological measure that effectively controls access to a work protected under this title; or
(C) is marketed by that person or another acting in concert with that person with that person's knowledge for use in circumventing a technological measure that effectively controls access to a work protected under this title.

33.    Lexmark is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 33, and on that basis, denies them.

34.    The allegations contained in paragraph 34 are conclusions of law to which no responsive pleading is required.  To the extent a pleading is required, Lexmark is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 34, and on that basis, denies them.

35.    Answering the allegations in paragraph 35, Lexmark repeats and incorporates by reference its answers to paragraphs 1-34 above.

36.    Lexmark is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 36, and on that basis, denies them.

37.    Lexmark is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 37, and on that basis, denies them.

38.    Lexmark is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 38, and on that basis, denies them.

39.    The allegations contained in paragraph 39 are conclusions of law to which no responsive pleading is required. To the extent a pleading is required, the allegations are denied.

40.    The allegations contained in paragraph 40 are conclusions of law to which no responsive pleading is required. To the extent a pleading is required, the allegations are denied.

41.    The allegations contained in paragraph 41 are conclusions of law to which no responsive pleading is required. To the extent a pleading is required, the allegations are denied.

## LEXMARK'S COUNTERCLAIMS

## NATURE OF LEXMARK'S COUNTERCLAIMS

42.    Lexmark's counterclaims are for damages and injunctive relief for violations of the Digital Millennium Copyright Act, 17 U.S.C. § 1201 *et seq.*, patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, and for violations of laws of the Commonwealth of Kentucky, including intentional interference with contractual relations, intentional interference with prospective economic advantage, and civil conspiracy.

## ADDITIONAL PARTIES

43.    On information and belief, Counterclaim Defendant Wazana Brothers International, Inc., d/b/a Micro Solutions Enterprises ("MSE"), is a California corporation with its principal place of business at 9111 Mason Avenue, Chatsworth, California. On information and belief, Counterclaim Defendant Pendl Companies, Inc. ("Pendl") is a Wisconsin corporation with its principal place of business at 1825 B Dolphin, Waukesha, Wisconsin. On information and belief, Counterclaim Defendant Image Projections West, Inc. ("Image Projections") is a Colorado corporation with its principal place of business at 14135 E 42nd Avenue, Suite #40,

7

Denver, Colorado. On information and belief, Counterclaim Defendant NER Data Products, Inc. ("NER") is a New Jersey corporation with its principal place of business at 307 S Delsea Drive, Glassboro, New Jersey. MSE, Pendl, Image Projections, and NER are engaged in the business of remanufacturing used toner cartridges, and sell remanufactured used toner cartridges in numerous jurisdictions, including the Eastern District of Kentucky.

## JURISDICTION AND VENUE

44.     This Court has subject matter jurisdiction over these counterclaims pursuant to 28 U.S.C. §§ 1331, 1332, 1338(a), 1367(a) and 17 U.S.C. § 1203(a) and has personal jurisdiction over SCC, MSE, Pendl, Image Projections, and NER. Moreover, venue in this judicial district is proper under 28 U.S.C. §§ 1391 and 1400(a).

## LEXMARK'S BUSINESS AND INTELLECTUAL PROPERTY

### A.     LEXMARK'S PREBATE/RETURN PROGRAM

45.     In 1997, upon the initial introduction of the Lexmark Optra S laser printer family, Lexmark first announced its "Prebate" program to its customers allowing customers an up-front discount when a customer purchased a toner cartridge for an Optra S laser printer in return for the customer's agreement to use the Prebate toner cartridge only once and return the used Prebate toner cartridge only to Lexmark for remanufacturing and/or recycling.

46.     The Prebate program was renamed on April 22, 2003 to the "Lexmark Return Program," but no change was made to the terms of the agreement that are clearly set forth on the top of every applicable toner cartridge. The Prebate program and the Lexmark Return Program will be referred to herein collectively as the "Prebate/Return Program." Lexmark has employed the Prebate/Return Program in various other printer and cartridge lines since the introduction of

8

the Optra S family including, but not limited to the Lexmark T420, T520/522, T620/622, T630/632/634, E320/322, E321/323, and E220 laser printers.

47.    Lexmark's Prebate/Return Program is a printer toner cartridge discount program that features a free and easy way to return empty toner cartridges and allows the customer to avoid the hassles of traditional rebates. Lexmark provides packaging and postage for returning Prebate/Return Program toner cartridges to Lexmark to support Lexmark's remanufacturing business.

48.    Lexmark also offers customers the choice to purchase a "Regular" toner cartridge for those customers who do not choose the Prebate/Return Program toner cartridge with its terms. Regular toner cartridges may be refilled by the purchaser or a third party after its initial use and are readily available for any customer to purchase.

49.    In purchasing a Prebate/Return Program toner cartridge, a customer agrees to certain license/agreement terms in return for a lower price or upfront discount. The current Prebate/Return Program terms placed across the top of every Prebate/Return Program toner cartridge box in English and multiple non-English languages are as follows:

> RETURN EMPTY CARTRIDGE TO LEXMARK FOR
> REMANUFACTURING AND RECYCLING
> Please read before opening. Opening this package or using the patented cartridge inside confirms your acceptance of the following license/agreement: This all-new cartridge is sold at a special price subject to a restriction that it may be used only once. Following this initial use, you agree to return the empty cartridge only to Lexmark for remanufacturing and recycling. If you don't accept these terms, return the unopened package to your point of purchase. A regular price cartridge without these terms is available.

50.    The Prebate/Return Program has significantly increased toner cartridge returns to Lexmark allowing Lexmark the opportunity to participate in remanufacturing operations for these toner cartridges. Lexmark remanufactured toner cartridges for Lexmark printers are priced

9

even lower than the corresponding Prebate/Return Program toner cartridges and are a high quality alternative for customers desiring lower cost remanufactured toner cartridges.

51.    The discount of the Prebate/Return Program toner cartridge and the lower priced remanufactured toner cartridge allow Lexmark to vigorously compete in the printer market, where lifecycle price, including toner cartridges, is an important factor in the printer purchasing decision.

52.    The Prebate/Return Program is pro-competitive, consistent with applicable laws, and environmentally beneficial.

53.    Based on International Data Corporation's Hardcopy Peripherals Tracker, of all the brands and types of laser printers sold in the United States in 2001, only about 14.6 percent were Lexmark branded laser printers.

54.    Of all the brands and types of cartridges sold in the United States in 2001, only about two and one-half percent were Lexmark Prebate/Return Program toner cartridges based upon industry analyst CAP Ventures' view of the total United States sales of all brands of toner cartridges.

**B.    LEXMARK'S COPYRIGHTED COMPUTER PROGRAMS FOR THE LEXMARK T420, T520/522, T620/622, T630/632/634, E320/322, E321/323, AND E220 LASER PRINTERS**

55.    Among the many products developed and marketed by Lexmark are its T420, T520/522, T620/622, T630/632, E320/322, E321/323, and E220 laser printers and toner cartridges. Lexmark is the owner of valid copyright registrations covering computer programs that are used to control various operations of its T420, T520/522, T620/622, T630/632/634, E320/322, E321/323, and E220 laser printers and to monitor operational characteristics of its toner cartridges.

10

56.    The first set of these copyrighted computer programs are versions of Toner Loading Programs. One of the Toner Loading Programs is contained on a microchip located on the T520/522 toner cartridge, and the other Toner Loading Program is located on a microchip located on the T620/622 toner cartridge. The Toner Loading Programs are used to determine toner levels in the respective toner cartridges.

57.    The second set of these copyrighted computer programs are versions of Printer Engine Programs that are used by the Lexmark printers to provide printer functionality. In particular, each Printer Engine Program is a mechanism control program that controls various operations of the printer including, for example, paper feed, paper movement, motor control, fuser operation, and voltage control for the electrophotographic (EP) system. A different Printer Engine Program is located on a controller board inside the Lexmark T420, T520/T522, T620/T622, T630/632/634, E320/E322, E321/E323, and E220 laser printers.

58.    The Toner Loading Programs and the Printer Engine Programs are original works of authorship owned by Lexmark and comprise copyrightable subject matter under the Copyright Laws of the United States

59.    Lexmark has complied in all respects with the Copyright Act, 17 U.S.C. § 101 *et seq.* and all other laws governing copyright, and has obtained Certificates of Registration for the Toner Loading Programs and the Printer Engine Programs from the Register of Copyrights. True and correct copies of the registrations for the Toner Loading Programs for the T520/522 and T620/622 laser printers are attached as Exhibits A and B, respectively. In addition, true and correct copies of the registrations for the Printer Engine Programs for the T420, T620 and T630/632/634, E320/322, and E321/323 laser printers are attached as Exhibits C through G, respectively. The Printer Engine Programs for the T520, T522, and T622 printers are derivative

11

works of the Printer Engine Program for the T620 printer. The Printer Engine Program for the

E220 printer is a derivative work of the Printer Engine Program of the E321/323 printer.

### C.    LEXMARK'S TECHNOLOGICAL MEASURES TO PREVENT UNAUTHORIZED ACCESS TO ITS COPYRIGHTED COMPUTER PROGRAMS FOR THE LEXMARK LASER PRINTERS

60.    Lexmark utilizes a technological measure, or authentication sequence, to prevent

unauthorized access to its Toner Loading Programs and Printer Engine Programs.

61.    In general, the technological measure, or authentication sequence, requires a

"secret handshake" between the printer and toner cartridge to enable printer functionality. The

technological measure involves calculations by, and communication between, the printer and the

toner cartridge each time a toner cartridge is installed in the printer, the printer is powered on, or

whenever the printer is opened and then reclosed. Both the printer and the microchip on the

toner cartridge calculate a code referred to as a Message Authorization Code ("MAC"). The

microchip then communicates its calculated MAC to the printer. If the MAC calculated by the

microchip matches the MAC calculated by the printer, the printer recognizes the toner cartridge

as being authorized and printer functionality and access to the Toner Loading Program and

Printer Engine Program is enabled.

62.    By design, unless the technological measure or "secret handshake" takes place

successfully, Lexmark's printers will not recognize the toner cartridges as being authorized

Lexmark toner cartridges, and the printers will not print. The technological measure prevents

access to the Toner Loading Programs located on the toner cartridges and the Printer Engine

Programs located on a controller board inside those printers. The technological measure thereby

protects consumers to ensure that they are using genuine Lexmark toner cartridges and are not

using Prebate/Return Program toner cartridges that have been remanufactured despite the terms

of the Prebate/Return Program license/agreement.

### D.    LEXMARK'S PATENTS COVERING ITS TONER CARTRIDGES

63.    Lexmark's T420, T520/522, T620/622, T630/632/634, E320/322, E321/323, and E220 toner cartridges and their components are covered by numerous U.S. Patents.

64.    Lexmark's T420, T520/522, T620/622, and/or T630/632/634 toner cartridges and their components are covered by one or more claims in U.S. Patent Nos. 5,634,169, 5,707,743, 5,758,231[1], 5,758,233, 5,768,661, 5,802,432, 5,804,114, 5,874,172, 5,875,378, 5,880,244, 5,952,442, 5,995,772, 6,009,285, 6,009,291, 6,117,557, 6,160,073, 6,300,025, 6,397,015, 6,459,876[2], 6,487,383, 6,492,083[3], and D399,249, duly and legally issued to Lexmark.

65.    Lexmark's E320/322 and E321/323 toner cartridges and components are covered by one or more claims in U.S. Patent Nos. 5,634,169, 5,707,743, 5,758,231[4], 5,804,114, 5,874,172, 5,880,244, 5,952,442, 5,995,772, 6,009,285, 6,117,557, 6,160,073, 6,300,025, 6,397,015, 6,487,383, 6,492,083[5], and D458,300, duly and legally issued to Lexmark.

66.    Lexmark's E220 toner cartridges and components are covered by one or more claims in U.S. Patent Nos. 5,634,169, 5,758,231, 5,995,772, 6,009,285, 6,397,015, 6,487,383, and D458,300, duly and legally issued to Lexmark.

67.    Lexmark owns all right, title and interest in and has standing to sue for infringement of the above-identified patents, which are collectively referred to as "the Lexmark patents-in-suit." True and correct copies of the Lexmark patents-in-suit are attached hereto as Exhibits H through DD respectively.

---

[1] Lexmark's T420 toner cartridges and components are not covered by U.S. Patent No. 5,758,231.

[2] Lexmark's T420 toner cartridges and components are not covered by U.S. Patent No. 6,459,876.

[3] Lexmark's T520/522 toner cartridges and components are not covered by U.S. Patent No. 6,492,083.

[4] Lexmark's E320/322 toner cartridges and components are not covered by U.S. Patent No. 5,758,231.

[5] Lexmark's E320/322 toner cartridges and components are not covered by U.S. Patent No. 6,492,083.

68.     When Lexmark makes, offers for sale and sells its T420, T520/522, T620/622,

T630/632/634, E320/322, E321/323, and E220 toner cartridges that follow the Lexmark patents-

in-suit, Lexmark gives notice to the public that such products are patented in accordance with the

marking provisions of 35 U.S.C. § 287.  In addition, Lexmark places the Prebate/Return Program

agreement (set forth above in paragraph 49 above) across the top of every T420, T520/522,

T620/622, T630/632/634, E320/322, E321/323, and E220 Prebate/Return Program toner

cartridge box.  That Prebate/Return Program agreement is a valid and enforceable shrink-wrap

license that governs the field of use of Lexmark's patented T420, T520/522, T620/622,

T630/632, E320/322, E321/323, and E220 Prebate/Return Program toner cartridges.    In

acquiring a T420, T520/522, T620/622, T630/632/634, E320/322, E321/323, and E220

Prebate/Return Program toner cartridge, a customer agrees to abide by the field of use

restrictions contained in that shrink-wrap license in return for a lower price or upfront rebate.

### SCC, MSE, PENDL, IMAGE PROJECTIONS, AND NER'S VIOLATIONS OF LEXMARK'S INTELLECTUAL PROPERTY RIGHTS AND STATE LAW RIGHTS

69.     SCC engages in the business of manufacturing and selling components to the

toner cartridge remanufacturing industry, including replacement microchips for use with refilled

toner cartridges.

70.     SCC has made statements stating that Lexmark's Prebate/Return Program is

unenforceable and that Prebate/Return Program is unenforceable and that Prebate/Return

Program cartridges can be obtained, remanufactured, marketed, and sold to users of Lexmark

printers.

71.     SCC manufactures and sells replacement microchips.  Despite the terms of the

Prebate/Return Program license/agreement, SCC's microchips are designed to enable

unauthorized toner cartridges to function with Lexmark's printers.  For example, SCC's

14

microchips are designed to enable unauthorized toner cartridges to function with Lexmark's T420, T520/522, T620/622, T630/632/634, E320/322, E321/323, and E220 laser printers.

### A.    SCC's TRAFFICKING OF DEVICES THAT CIRCUMVENT LEXMARK'S TECHNOLOGICAL MEASURE AND PATENT INFRINGEMENT

72.    Lexmark's toner cartridges for its T420, T520/522, T620/622, T630/632/634, E320/322, E321/323, and E220 printers are sold as Prebate/Return Program toner cartridges and Regular toner cartridges. Each type of toner cartridge contains a microchip that performs an authentication sequence with the printer.

73.    With regard to Prebate/Return Program toner cartridges, to ensure that consumers return the Prebate/Return Program cartridges to Lexmark after their initial use, the Prebate/Return Program toner cartridge has been designed to no longer operate even if "refilled" with toner by operation of the microchip residing on the toner cartridge and the Printer Engine Program residing on the printer.

74.    Because SCC's microchips are specifically designed to circumvent that technological measure, however, persons can use SCC's microchips to refill and reuse Prebate/Return Program toner cartridges without returning those toner cartridges to Lexmark. Thus, SCC's sale of its microchips enables consumers to obtain a Prebate/Return Program toner cartridge at a significant discount without returning that toner cartridge only to Lexmark for remanufacturing and recycling in accordance with Lexmark's Prebate/Return Program agreement.

75.    With regard to a Regular toner cartridge for the Lexmark T420, T520/522, T620/622, T630/632/634, E320/322, E321/323, and E220 laser printers, after its initial use, the purchaser or a third party may refill that Regular toner cartridge.

15

76.    Unauthorized toner cartridges containing SCC's microchip are able to function with Lexmark's laser printers because each SCC microchip contains technology that circumvents Lexmark's technological measure performed between Lexmark's printers and original microchips.

77.    In particular, SCC's microchips' method of circumvention involves using technology that mimics the technological measure performed by the original microchips on Lexmark's toner cartridges and printers. For example, when an unauthorized toner cartridge containing an SCC microchip is placed in a Lexmark T420, T520/522, T620/622, T630/632/634, E320/322, E321/323, and E220 laser printer, when the printer containing such a cartridge is powered on, or whenever the printer is opened and closed, the SCC microchip circumvents the technological measure that controls access to Lexmark's copyrighted computer programs. By circumventing Lexmark's technological measure, SCC's microchips enable printer functionality by providing access to Lexmark's copyrighted computer programs.

78.    SCC's microchips are specifically designed and manufactured to circumvent Lexmark's technological measure, or authentication sequence, so remanufacturers can use the microchips to refill and reuse Prebate/Return Program toner cartridges without the purchaser returning the toner cartridges to Lexmark.

79.    SCC has intentionally and specifically marketed its microchips as being capable of defeating Lexmark's technological measure and as allowing for Prebate/Return Program cartridges for Lexmark's laser printers to be remanufactured.

80.    Thus, SCC's sale of its microchips enables consumers to obtain a Prebate/Return Program toner cartridge at a significant discount without returning that toner cartridge to Lexmark for remanufacturing and recycling in violation of the Prebate/Return Program

16

agreement, which governs the field of use of Lexmark's patented T420, T520/522, T620/622, T630/632/634, E320/322, E321/323, and E220 Prebate/Return Program toner cartridges.

81. In addition to its microchips, SCC manufactures, distributes, offers for sale, and sells encoder wheels. An encoder wheel is sold with SCC's replacement microchip. SCC's encoder wheels replace and simulate Lexmark's patented encoder wheels contained on Lexmark's new Prebate/Return Program toner cartridges. SCC's infringing encoder wheels, used in conjunction with SCC's microchips, allow Prebate/Return Program cartridges for Lexmark's T420, T520/522, T620/622, T630/632/634, E320/322, and E321/323, and E220 laser printers to be remanufactured.

**B.    MSE, PENDL, IMAGE PROJECTIONS, AND NER'S TRAFFICKING OF DEVICES THAT CIRCUMVENT LEXMARK'S TECHNOLOGICAL MEASURE AND PATENT INFRINGEMENT**

82. MSE, Pendl, Image Projections, and NER are entities engaged in the business of remanufacturing used toner cartridges, who have purchased SCC's microchips from SCC for use in remanufacturing Prebate/Return Program cartridges for the T420, T520/522, T620/622, T630/632/634, E320/322, E321/323, and/or E220 laser printers. MSE, Pendl, Image Projections, and NER have engaged in the sale and distribution of illegally remanufactured Prebate/Return Program cartridges containing SCC's microchips, which are designed to circumvent Lexmark's technological measure that controls access to Lexmark's copyrighted computer programs for Lexmark's T420, T520/522, T620/622, T630/632/634, E320/322, E321/323, and/or E220 laser printers..

**C.    SCC, MSE, PENDL, IMAGE PROJECTIONS, AND NER'S INTERFERENCE WITH CONTRACTUAL RELATIONS/PROSPECTIVE ECONOMIC ADVANTAGE AND CIVIL CONSPIRACY**

83. MSE, Pendl, Image Projections, and NER are engaged in the business of remanufacturing used toner cartridges. MSE, Pendl, Image Projections, NER, and/or SCC have

17

engaged in one or more of the following: (i) despite knowledge of the Prebate/Return Program license/agreement or contract between Lexmark and its customers, obtained from Lexmark's customers Lexmark Prebate/Return Program toner cartridges for the purpose of remanufacturing and selling those Prebate/Return Program cartridges; (ii) purchased SCC's microchips from SCC for use in remanufacturing Prebate/Return Program cartridges for the T420, T520/522, T620/622, T630/632/634, E320/322, E321/323, and/or E220 laser printers; (iii) engaged in the remanufacturing of Prebate/Return Program cartridges; (iv) engaged in the marketing and sale of the illegally remanufactured Prebate/Return Program cartridges; (v) made statements stating that Lexmark's Prebate/Return Program is unenforceable and that Prebate/Return Program cartridges can be obtained, remanufactured, marketed, and sold to users of Lexmark printers; and (vi) manufactured, trafficked, and/or sold microchips for use in remanufacturing Prebate/Return Program cartridges for the T420, T520/522, T620/622, T630/632/634, E320/322, E321/323, and/or E220 laser printers.

**LEXMARK COUNTERCLAIM – COUNT I**

**SCC'S DIGITAL MILLENNIUM COPYRIGHT ACT VIOLATIONS RELATING TO LEXMARK'S PRINTER ENGINE PROGRAMS**

84.    Lexmark re-alleges each and every allegation set forth in Paragraphs 1-83, inclusive, and incorporates them by reference herein.

85.    SCC has violated and continues to violate Lexmark's rights protected under 17 U.S.C. § 1201(a)(2)(A), (B) and (C) by manufacturing, marketing, distributing and selling replacement microchips, which are designed and produced to circumvent the technological measures that control access to Lexmark's copyrighted Printer Engine Programs residing in Lexmark's T420, T520/522, T620/622, T630/632/634, E320/322, E321/323, and E220 laser printers.

86.    In particular, SCC has violated and continues to violate Lexmark's rights protected under 17 U.S.C. § 1201(a)(2)(A), (B) and (C) because SCC has manufactured and provided a technology, product, device, or component – namely, a replacement microchip – that:

(a) is primarily designed or produced for the purposes of circumventing Lexmark's technological measure that effectively controls access to Lexmark's copyrighted Printer Engine Programs; or
(b) has only limited commercially significant purpose or use other than to circumvent Lexmark's technological measure that effectively controls access to Lexmark's copyrighted Printer Engine Programs; or
(c) is sold for use in circumventing the technological measure that controls access to Lexmark's copyrighted Printer Engine Programs.

87.    Lexmark has been and continues to be damaged by SCC's actions and conduct. Further, if SCC is not enjoined and is allowed to continue its present conduct, Lexmark will suffer irreparable injury, which cannot be adequately compensated by monetary damages. Lexmark is therefore entitled to injunctive relief.

### LEXMARK COUNTERCLAIM – COUNT II

#### SCC'S PATENT INFRINGEMENT

88.    Lexmark re-alleges each and every allegation set forth in Paragraphs 1-87, inclusive, and incorporates them by reference herein.

89.    SCC has infringed and continues to infringe the Lexmark patents-in-suit by actively inducing others to infringe with specific intent and by contributing to the infringement by others through the sale, offer for sale, and distribution of SCC's replacement microchips.

90.    SCC's sale, offer for sale, and distribution of its replacement microchips induce existing and prospective Lexmark customers to breach their valid and enforceable Prebate/Return Program agreement with Lexmark that governs the field of use of Lexmark's patented T420, T520/522, T620/622, T630/632/634, E320/322, E321/323, and E220 Prebate/Return Program toner cartridges.

91.    Furthermore, SCC has infringed and continues to infringe Lexmark's U.S. Patent No. 6,397,015 through among other activities, the manufacture, use, importation, sale and/or offer for sale of encoder wheels for use with Lexmark's toner cartridges.

92.    SCC has also infringed and continues to infringe U.S. Patent No. 6,397,015 by actively inducing others to infringe with specific intent and by contributing to the infringement by others through the use, sale and/or offer for sale of the infringing encoder wheels.

93.    SCC's infringement of the Lexmark patents-in-suit, including U.S. Patent No. 6,397,015, has been, and continues to be, deliberate and willful.    Lexmark has been and continues to be damaged by SCC's actions and conduct.    Further, if SCC is not enjoined and is allowed to continue its present conduct, Lexmark will suffer irreparable injury.

## LEXMARK COUNTERCLAIM – COUNT III

### MSE, PENDL, IMAGE PROJECTIONS, AND NER'S DIGITAL MILLENNIUM COPYRIGHT ACT VIOLATIONS RELATING TO LEXMARK'S PRINTER ENGINE PROGRAMS

94.    Lexmark re-alleges each and every allegation set forth in Paragraphs 1-93, inclusive, and incorporates them by reference herein.

95.    MSE, Pendl, Image Projections, and NER have violated and continue to violate Lexmark's rights protected under 17 U.S.C. § 1201(a)(2)(A), (B) and (C) by distributing and selling replacement microchips, which are designed and produced to circumvent the technological measures or "secret handshakes" that control access to Lexmark's copyrighted Printer Engine Programs residing in Lexmark's T420, T520/522, T620/622, T630/632/634, E320/322, E321/323, and/or E220 laser printers.

96.    In particular, MSE, Pendl, Image Projections, and NER have violated and continue to violate Lexmark's rights protected under 17 U.S.C. § 1201(a)(2)(A), (B) and (C)

because SCC has distributed, sold, or otherwise trafficked a technology, product, device, or

component – namely, SCC's replacement microchip – that:

> (a) is primarily designed or produced for the purposes of circumventing Lexmark's technological measure that effectively controls access to Lexmark's copyrighted Printer Engine Programs; or
>
> (b) has only limited commercially significant purpose or use other than to circumvent Lexmark's technological measure that effectively controls access to Lexmark's copyrighted Printer Engine Programs; or
>
> (c) is sold for use in circumventing the technological measure that controls access to Lexmark's copyrighted Printer Engine Programs.

97.    Lexmark has been and continues to be damaged by MSE, Pendl, Image

Projections, and NER's actions and conduct. Further, if MSE, Pendl, Image Projections, and

NER are not enjoined and are allowed to continue their present conduct, Lexmark will suffer

irreparable injury, which cannot be adequately compensated by monetary damages. Lexmark is

therefore entitled to injunctive relief.

### LEXMARK COUNTERCLAIM – COUNT IV

#### MSE, PENDL, IMAGE PROJECTIONS, AND NER'S PATENT INFRINGEMENT

98.    Lexmark re-alleges each and every allegation set forth in Paragraphs 1-97,

inclusive, and incorporates them by reference herein.

99.    MSE, Pendl, Image Projections, and NER have infringed and continue to infringe

the Lexmark patents-in-suit by actively inducing others to infringe with specific intent and by

contributing to the infringement by others through the sale, offer for sale, and distribution of

SCC's replacement microchips.

100.    MSE, Pendl, Image Projections, and NER's sale, offer for sale, and distribution of

SCC's replacement microchips induce existing and prospective Lexmark customers to breach

their valid and enforceable Prebate/Return Program agreement with Lexmark that governs the

21

field of use of Lexmark's patented T420, T520/522, T620/622, T630/632/634, E320/322, E321/323, and/or E220 Prebate/Return Program toner cartridges.

101.    Furthermore, MSE, Pendl, Image Projections, and NER infringed and continue to infringe Lexmark's U.S. Patent No. 6,397,015 through among other activities, the use, importation, sale and/or offer for sale of encoder wheels for use with Lexmark's toner cartridges.

102.    MSE, Pendl, Image Projections, and NER have also infringed and continue to infringe U.S. Patent No. 6,397,015 by actively inducing others to infringe with specific intent and by contributing to the infringement by others through the use, sale and/or offer for sale of the infringing encoder wheels.

103.    MSE, Pendl, Image Projections, and NER have also directly infringed and continue to directly infringe the Lexmark patents-in-suit by offering for sale and selling used Prebate/Return Program cartridges.    Any sale of used Lexmark's patented T420, T520/522, T620/622, T630/632/634, E320/322, E321/323, and/or E220 Prebate/Return Program toner cartridges by MSE, Pendl, Image Projections, and NER is outside the scope of the valid and enforceable shrink-wrap license that governs the field of use of those patented toner cartridges.

104.    MSE, Pendl, Image Projections, and NER's infringement of the Lexmark patents-in-suit, including U.S. Patent No. 6,397,015, has been, and continues to be, deliberate and willful.  Lexmark has been and continues to be damaged by MSE, Pendl, Image Projections, and NER's actions and conduct.    Further, if MSE, Pendl, Image Projections, and NER are not enjoined and are allowed to continue their present conduct, Lexmark will suffer irreparable injury.

## LEXMARK COUNTERCLAIM – COUNT V

## INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

105.   Lexmark re-alleges each and every allegation set forth in Paragraphs 1-104, inclusive, and incorporates them by reference herein.

106.   The Prebate/Return Program license/agreement is a valid contract between Lexmark and purchasers of Prebate/Return Program toner cartridges.

107.   SCC, MSE, Pendl, Image Projections, and NER have knowledge of the Prebate/Return Program contract between Lexmark and purchasers of Prebate/Return Program toner cartridges.

108.   SCC, MSE, Pendl, Image Projections, and NER engaged in conduct intended to cause, and which did cause, various Lexmark customers to breach their obligations under the Prebate/Return Program contract employed with the Prebate/Return Program Printers.

109.   The conduct of SCC, MSE, Pendl, Image Projections, and NER was improper, willful, and malicious.

110.   The intentional interference with contractual relations committed by SCC, MSE, Pendl, Image Projections, and NER caused Lexmark to suffer damages.

111.   SCC, MSE, Pendl, Image Projections, and NER acted willfully, intentionally and with gross negligence, fraud, oppression, and malice towards Lexmark in committing intentional interference with contractual relations and Lexmark is therefore entitled to punitive damages.

23

## LEXMARK COUNTERCLAIM – COUNT VI

### INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

112. Lexmark re-alleges each and every allegation set forth in Paragraphs 1-111, inclusive, and incorporates them by reference herein.

113. Lexmark's Prebate/Return Program employed with the Prebate/Return Program Printers has been, and continues to be, a valid business expectancy and relationship between Lexmark and its existing and prospective customers.

114. SCC, MSE, Pendl, Image Projections, and NER have knowledge of the valid business expectancy and relationship between Lexmark and its customers.

115. SCC, MSE, Pendl, Image Projections, and NER engaged in conduct intended to interfere, and which did interfere, with the valid business expectancy and relationship between Lexmark and its customers.

116. The conduct of SCC, MSE, Pendl, Image Projections, and NER was improper, willful, and malicious.

117. The intentional interference with prospective economic advantage committed by SCC, MSE, Pendl, Image Projections, and NER caused Lexmark to suffer damages.

118. SCC, MSE, Pendl, Image Projections, and NER acted willfully, intentionally, and with gross negligence, fraud, oppression, and malice towards Lexmark in committing intentional interference with prospective economic advantage and Lexmark is therefore entitled to punitive damages.

24

## LEXMARK COUNTERCLAIM – COUNT VII

### CIVIL CONSPIRACY

119.    Lexmark re-alleges each and every allegation set forth in Paragraphs 1-118, inclusive, and incorporates them by reference herein.

120.    SCC, MSE, Pendl, Image Projections, and NER combined to accomplish the interference with contractual relations and interference with prospective economic advantage alleged herein.

121.    SCC, MSE, Pendl, Image Projections, and NER entered into a plan or agreement on the course of action necessary to bring about the unlawful and actionable objects of committing intentional interference with contractual relations and intentional interference with prospective business advantage.

122.    SCC, MSE, Pendl, Image Projections, and NER committed various acts in furtherance of bringing about the unlawful and actionable objects of committing intentional interference with contractual relations and intentional interference with prospective business advantage.

123.    The conspiracy between SCC, MSE, Pendl, Image Projections, and NER to commit intentional interference with contractual relations and intentional interference with prospective business advantage caused Lexmark to suffer damages.

124.    SCC, MSE, Pendl, Image Projections, and NER acted willfully, intentionally, and with gross negligence, fraud, oppression and malice towards Lexmark in conspiring to commit intentional interference with contractual relations and intentional interference with prospective business advantage and Lexmark is therefore entitled to punitive damages against SCC, MSE, Pendl, Image Projections, and NER.

### RELIEF REQUESTED

**Wherefore**, Lexmark further respectfully requests that:

A.    Judgment that SCC's Complaint for Declaratory Judgment be dismissed with prejudice and without relief or recovery to SCC.

B.    This Court award Lexmark its reasonable costs and attorneys' fees in maintaining this action and defending against SCC's claims.

C.    This Court adjudge that SCC's manufacture and sale of replacement microchips for use in Lexmark's T420, T520/522, T620/622, T630/632/634, E320/322, E321/323, and E220 laser printers has violated the Digital Millennium Copyright Act, 17 U.S.C. § 1201(a)(2)(A), (B) and (C).

D.    This Court adjudge that MSE's, Pendl's, Image Projections', and NER's distribution and sale of microchips for use in Lexmark's T420, T520/522, T620/622, T630/632/634, E320/322, E321/322, and/or E220 laser printers has violated the Digital Millennium Copyright Act, 17 U.S.C. § 1201(a)(2)(A), (B) and (C).

E.    This Court adjudge that SCC has been and is infringing one or more of the claims of the Lexmark patents-in-suit pursuant to 35 U.S.C. § 271.

F.    This Court adjudge that MSE, Pendl, Image Projections, and NER have been and are infringing one or more of the claims of the Lexmark patents-in-suit pursuant to 35 U.S.C. § 271

G.    SCC, and all officers, directors, agents, servants, employees, affiliates, attorneys, successors, and assigns, and all persons in active concert or participation therewith, including but not limited to their customers, suppliers, contractors, sub-contractors, developers, distributors, retailers, any others to whom SCC's replacement microchips and/or infringing encoder wheels have been otherwise transferred by any means, and others that may become aware of such enjoinment and restraint, be permanently enjoined and restrained from infringing Lexmark

26

patents-in-suit, or otherwise performing or practicing any process or method enabling them to
infringe or induce infringement of the Lexmark patents-in-suit

H.     SCC, and all officers, directors, agents, servants, employees, affiliates, attorneys,
successors, and assigns, and all persons in active concert or participation therewith, including but
not limited to their customers, suppliers, contractors, sub-contractors, developers, distributors,
retailers, any others to whom SCC's replacement microchips and/or any other microchips have
been otherwise transferred by any means, and others that may become aware of such enjoinment
and restraint, be permanently enjoined and restrained from violating Lexmark's rights under the
Digital Millennium Copyright Act, and/or continuing to sell, dispose of, transfer, develop or
manufacture any devices, products, or components primarily designed or produced for the
purpose of circumventing a technological measure that effectively controls access to the Printer
Engine Programs for Lexmark's T420, T520/522, T620/622, T630/632/634, E320/322,
E321/E322, and E220 laser printers.

I.     SCC, and all officers, directors, agents, servants, employees, affiliates, attorneys,
successors, and assigns, and all persons in active concert or participation therewith, including but
not limited to their customers, suppliers, contractors, sub-contractors, developers, distributors,
retailers, any others to whom SCC's replacement microchips and/or infringing encoder wheels
have been otherwise transferred by any means, and others that may become aware of such
enjoinment and restraint, be required to deliver up for destruction all devices, products, or
components primarily designed or produced for the purpose of circumventing a technological
measure that effectively controls access to the Printer Engine Programs for Lexmark's T420,
T520/522, T620/622, T630/632/634, E320/322, E321/323, and E220 laser printers, and/or
infringing, contributorily infringing, or inducing infringement of the Lexmark patents-in-suit.

27

J.      MSE, Pendl, Image Projections, and NER, and all officers, directors, agents, servants,
employees, affiliates, attorneys, successors, and assigns, and all persons in active concert or
participation therewith, including but not limited to their customers, suppliers, contractors, sub-
contractors, developers, distributors, retailers, any others to whom SCC's replacement
microchips and/or infringing encoder wheels have been otherwise transferred by any means, and
others that may become aware of such enjoinment and restraint, be permanently enjoined and
restrained from infringing Lexmark patents-in-suit, or otherwise performing or practicing any
process or method enabling them to infringe or induce infringement of the Lexmark patents-in-
suit

K.      MSE, Pendl, Image Projections, and NER, and all officers, directors, agents, servants,
employees, affiliates, attorneys, successors, and assigns, and all persons in active concert or
participation therewith, including but not limited to their customers, suppliers, contractors, sub-
contractors, developers, distributors, retailers, any others to whom SCC's replacement
microchips and/or any other microchips have been otherwise transferred by any means, and
others that may become aware of such enjoinment and restraint, be permanently enjoined and
restrained from violating Lexmark's rights under the Digital Millennium Copyright Act, and/or
continuing to sell, dispose of, transfer, develop or manufacture any devices, products, or
components primarily designed or produced for the purpose of circumventing a technological
measure that effectively controls access to the Printer Engine Programs for Lexmark's T420,
T520/522, T620/622, T630/632/634, E320/322, E321/323, and/or E220 laser printers.

L.      MSE, Pendl, Image Projections, and NER, and all officers, directors, agents, servants,
employees, affiliates, attorneys, successors, and assigns, and all persons in active concert or
participation therewith, including but not limited to their customers, suppliers, contractors, sub-
contractors, developers, distributors, retailers, any others to whom SCC's replacement

28

microchips and/or infringing encoder wheels have been otherwise transferred by any means, and others that may become aware of such enjoinment and restraint, be required to deliver up for destruction all devices, products, or components primarily designed or produced for the purpose of circumventing a technological measure that effectively controls access to the Printer Engine Programs for Lexmark's T420, T520/522, T620/622, T630/632/634, E320/322, E321/323, and/or E220 laser printers, and/or infringing, contributorily infringing, or inducing infringement of the Lexmark patents-in-suit.

M.      SCC, MSE, Pendl, Image Projections, and NER be directed to file with this Court and to serve upon Lexmark within fifteen (15) days after service of any injunction issued in this action, a written report under oath, setting forth in detail the manner of compliance with paragraphs G – M.

N.      Lexmark recover SCC's, MSE's, Pendl's, Image Projections', and NER's profits and the damages sustained by Lexmark arising from SCC's, MSE's, Pendl's, Image Projections', and NER's violations of the DMCA, and infringement of or inducement to infringe the Lexmark patents-in-suit, which damages include but are not limited to Lexmark's lost profits.

O.      Lexmark recover statutory damages sustained by Lexmark based upon violations of the DMCA committed by SCC, MSE, Pendl, Image Projections, and NER, pursuant to 17 U.S.C. § 1203(c)(3).

P.      Lexmark recover an award from SCC, MSE, Pendl, Image Projections, and NER of Lexmark's (i) costs incurred in this action pursuant to 17 U.S.C. § 1203(b)(4) and 35 U.S.C. § 285, and (ii) reasonable attorneys' fees incurred in this action pursuant to 17 U.S.C. § 1203(b)(5) and 35 U.S.C. § 285.

Q.      Lexmark recover damages, jointly and severally, sufficient to compensate it for the intentional interference with contractual relations committed by SCC, MSE, Pendl, Image

29

Projections, and NER and punitive damages sufficient to punish and discourage SCC, MSE, Pendl, Image Projections, and NER, and others from similar conduct in the future.

R.    Lexmark recover damages, jointly and severally, sufficient to compensate it for the intentional interference with prospective economic advantage committed by SCC, MSE, Pendl, Image Projections, and NER and punitive damages sufficient to punish and discourage SCC, MSE, Pendl, Image Projections, and NER, and others from similar conduct in the future.

S.    Lexmark recover damages, jointly and severally, sufficient to compensate it for the civil conspiracy committed by SCC, MSE, Pendl, Image Projections, and NER and punitive damages sufficient to punish and discourage SCC, MSE, Pendl, Image Projections, and NER, and others from similar conduct in the future.

T.    Lexmark recover increased damages as permitted under 35 U.S.C. § 284.

U.    Lexmark recover pre-judgment and post-judgment interest on each and every award.

V.    That Lexmark have such other and further relief as the Court may deem just and proper.

## JURY DEMAND

NOW COMES, Lexmark, and in reliance upon SCC's demand for trial by jury of the issues alleged in SCC's Complaint for Declaratory Judgment, likewise demands trial by jury of those issues and the issues raised by the Answer and Counterclaims of Lexmark.

Respectfully submitted,

Dated: _11/8/04_

By: _____
Charles E. Shivel, Jr.
Steven B. Loy
Hanly A. Ingram
STOLL, KEENON & PARK LLP
300 West Vine Street, Suite
Lexington, KY 40507
Telephone: (859) 231-3000
Facsimile: (859) 253 1093

30

Joseph M. Potenza
BANNER & WITCOFF, LTD.
1001 G Street, N.W., 11th Floor
Washington, DC 20001
Telephone: (202) 508-9100
Facsimile: (202) 508-9299

Christopher J. Renk
Timothy C. Meece
Binal J. Patel
Jason S. Shull
BANNER & WITCOFF, LTD.
10 S. Wacker Drive, Suite 3000
Chicago, IL 60606
Telephone: (312) 715-1000
Facsimile: (312) 715-1234

David A. Shirlen
Mark N. Poovey
John F. Morrow, Jr.
WOMBLE CARLYLE
SANDRIDGE AND RICE, PLLC
One West Fourth Street
Winston-Salem, NC 27101
Telephone: (336) 721-3629

**Attorneys for Plaintiff,
Lexmark International, Inc.**

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing LEXMARK INTERNATIONAL, INC.'S SECOND AMENDED ANSWER AND COUNTERCLAIMS was served by hand delivery or U.S. Mail, postage prepaid, on this 8th day of November, 2004, as follows:

**VIA HAND DELIVERY**
W. Craig Robertson III
Mickey T. Webster
Wyatt, Tarrant & Combs, LLP
250 West Main Street, Suite 1600
Lexington, KY 40507

**VIA U.S. MAIL**
Seth D. Greenstein
William H. Barrett
Melise R. Blakeslee
John R. Fuisz
Stefan M. Meisner
Ann M. Brose
McDermott, Will & Emery
600 13th Street, N.W.
Washington, D.C. 20005-3096

**VIA U.S. MAIL**
William L. London
Static Control Components, Inc.
3010 Lee Avenue, P.O. Box 152
Sanford, North Carolina 27331

BY: _____
ATTORNEYS FOR DEFENDANT/
COUNTERCLAIM PLAINTIFF