# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STATIC CONTROL COMPONENTS, INC.,<br>    PLAINTIFF/COUNTERCLAIM<br>    DEFENDANT | |
| v. | Pending in the United States District<br>Court Eastern District of Kentucky,<br>before the Honorable Gregory F. Van<br>Tatenhove, Civil Action 04-CV-84-<br>GFVT. |
| LEXMARK INTERNATIONAL, INC.,<br>    DEFENDANT/COUNTERCLAIM<br>    PLAINTIFF | |
| v. | MISC. ACTION NO. 06-0474-GK |
| WAZANA BROTHERS INTERNATIONAL,<br>INC. d/b/a MICRO SOLUTIONS ENTERPRISES<br>    COUNTERCLAIM DEFENDANT | |
| v. | **RECEIVED** |
| PENDL COMPANIES, INC.<br>    COUNTERCLAIM DEFENDANT | JAN 2 6 2006 |
| v. | NANCY MAYER WHITTINGTON, CLERK<br>U.S. DISTRICT COURT |
| NER DATA PRODUCTS, INC.<br>    COUNTERCLAIM DEFENDANT | |

## NOTICE OF RULING IN RELATED ACTION:

### JANUARY 25, 2007 ORDER GRANTING MOTION TO QUASH LEXMARK'S IMPROPER SUBPOENA SERVED OCTOBER 18, 2006 ON OPPOSING PARTY'S TRIAL COUNSEL

Movant in the instant miscellaneous action, McDermott Will & Emery LLP

("McDermott"), respectfully notifies this Court of the attached Order (Exh. A), issued in the

federal district court for the District of Colorado. The Order relates to the matter currently

before this Court and supports McDermott's arguments in its October 31, 2006 Motion to Quash

Lexmark International Inc.'s ("Lexmark") October 18, 2006 subpoena on McDermott.

Furthermore, this District of Colorado Order is consistent with the Western District of

Kentucky's January 17, 2007 Order concerning Stites' motion to quash an identical subpoena by
Lexmark. Because this Order addresses key issues raised by McDermott in its Motion and
resolves those issues against Lexmark, McDermott respectfully requests that its Motion be
granted.

## A.    DISTRICT OF COLORADO – JANUARY 25, 2007 ORDER

Yesterday, the District of Colorado granted Bartlit Beck's Motion to Quash Improper
Subpoena Served On Opposing Party's Trial Counsel by Lexmark. The court ruled that the
Pendl Companies, Inc. ("Pendl"), by invoking the advice of counsel defense to a claim of willful
patent infringement, had effected a *narrow* waiver of privilege that does *not* extend to counsel of
all defendants who had entered into a joint defense agreement in preparation for litigation against
Lexmark. A copy of the Order is attached as Exhibit A. Bartlit Beck and McDermott are both
counsel to Static Control Components, Inc. ("Static Control"). Along with McDermott and
various other law firms and individuals, Bartlit Beck was among those subpoenaed by Lexmark
on October 18, 2006, seeking broad discovery of attorney-client, work product, and joint defense
privileged documents and information. Bartlit Beck's motion was granted in its entirety, in an
extensive and well-reasoned opinion. In this opinion, the District of Colorado has defined a
waiver of privilege – consistent with the holding from *In re Echostar Communications Corp.* and
the D.C. District Court in *Intex Recreation Corp.* – rendering the remaining Lexmark subpoenas
ineffective.

The District of Colorado reached several important conclusions:

1.    Consistent with *In Re Echostar* the Court limited any possible waiver caused by
Pendl's invocation of the advice of counsel defense to "any claim of privilege or immunity it has

2

with respect to all communications that **the client received** ... on the issue of infringement."
(emphasis original) Exh. A, Jan 25, 2007 at 10.

    **2.**      Citing the *Intex Recreation Corp.* decision in the District of the District of
Columbia, the Court emphasized that any possible waiver "requires the disclosure only of
materials and information provided to Pendl, and does not require the disclosure of information
provided to Pendl's lawyers but never communicated to Pendl itself." *Id.* at 11 citing *Intex
Recreation Corp. v. Team Worldwide Corp.*, 439 F. Supp. 2d 46 (D.D.C. 2006).

    **3.** The Court expressed particular concern that the broad waiver requested by Lexmark
would unfairly require opposing counsel to disclose its litigation strategies: "By asserting the
advice-of-counsel defense to a charge of willful infringement, the accused infringer and his or
her attorney do not give their opponent unfettered discretion to rummage through all of their files
and pillage all of their litigation strategies." *Id.* at 10 citing *Echostar* at 1303.

    **4.** In the alternative, the Court concluded that Lexmark's subpoena should be quashed
because it does not meet the high burden that would be required to disrupt the adversarial system
by allowing the depositions of opposing counsel. *Id.* at 12.

    It should be noted that this District of Colorado Order is consistent with the Western
District of Kentucky's January 17, 2007 Order concerning Stites' motion to quash an identical
subpoena by Lexmark.   These two orders have the same result, reasoning, and reliance on
*Echostar*.[1]

    Because Lexmark's October 18 subpoena on McDermott is premised on Pendl's advice
of counsel defense and the scope of any waiver effected by that defense, and because it is
undisputed that McDermott has had ***no communications with Pendl*** (*see,* Exhibit 4 to

---

[1] See Notice of Rulings in a Related Actions filed by Static Control with District Court of District of
Columbia, January 19, 2007.

McDermott's Mem. in Supp. of Mot. to Quash, dated October 31, 2006, at ¶13), Lexmark's

subpoena is clearly defective, and McDermott's motion to quash must be granted.

Dated: January 26, 2007                    Respectfully Submitted,


                                           _William H. Barrett_
                                           William H. Barrett (D.C. Bar No. 954131)
                                           Stefan M. Meisner (D.C. Bar No. 467886)
                                           Paul E. Poirot (D.C. Bar No. 459844)
                                           MCDERMOTT WILL & EMERY LLP
                                           600 Thirteenth Street, N.W.
                                           Washington, D.C.  20005-3096
                                           Telephone:  202.756.8000

                                           *Attorneys for McDermott Will & Emery LLP, and*
                                           *Plaintiff/Counterclaim Defendant*
                                           *STATIC CONTROL COMPONENTS, INC.,*

## CERTIFICATE OF SERVICE

I hereby certify that true and correct copies of the foregoing were served this 26th day of January 2007, by electronic mail, to the following (*) individuals:


### BY ELECTRONIC MAIL:

Charles F. Shivel, Jr.
Steven B. Loy*
Hanly A. Ingram
STOLL, KEENON & PARK, LLP
300 West Vine St., Suite 2100
Lexington, KY 40507
Fax: (859) 253-1093
*Counsel for Lexmark Int'l, Inc.*

Joseph M. Potenza*
BANNER & WITCOFF, LTD.
1001 G Street, NW, 11th Floor
Washington, DC 20001
Fax: (202) 508-9299
*Counsel for Lexmark Int'l, Inc.*

Christopher J. Renk
Binal J. Patel*
Jason S. Shull
Timothy C. Meece
BANNER & WITCOFF, LTD.
10 S. Wacker Dr., Suite 3000
Chicago, IL 60606
Fax: (312) 715-1234
*Counsel for Lexmark Int'l, Inc.*

W. Andrew Copenhaver*
Donald R. Esposito, Jr.
Hada V. Haulsee, Mark N. Poovey
WOMBLE, CARLYLE, SANDRIDGE &
RICE, PLLC
One West Fourth Street
Winston-Salem, NC  27101
*Counsel for Lexmark Int'l, Inc.*


McDermott Will & Emery LLP

WDC99 1341168-2.059787.0017

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 06-cv-02182-JLK-BNB

STATIC CONTROL COMPONENTS, INC.,

Plaintiff,

v.

LEXMARK INTERNATIONAL, INC.,

Defendant/Counterclaim Plaintiff,

v.

WAZANA BROTHERS INTERNATIONAL INC., d/b/a MICRO SOLUTIONS
ENTERPRISES,

Counterclaim Defendant,

v.

STATIC CONTROL COMPANIES, INC.,

Counterclaim Defendant,

v.

NER DATA PRODUCTS, INC.,

Counterclaim Defendant.

---

## ORDER

---

This matter is before me on the **Motion to Quash Improper Subpoena Served On
Opposing Party's Trial Counsel** [Doc. # 1, filed 10/30/2006] (the "*Motion*") filed by the law
firm of Bartlit Beck Herman Palenchar & Scott ("Bartlit Beck"). Bartlit Beck is not a party to

any action relevant here, but it is trial counsel for Static Control Components, Inc. ("Static

Control"). The *Motion* is GRANTED, and the discovery shall not be had.

I.

The subpoena at issue here was served in connection with an underlying action, Case No.

04-CV-84-GFVT, pending in the United States District Court for the Eastern District of

Kentucky (the "Underlying Action"). Bartlit Beck is trial counsel for Static Control in the

Underlying Action.

The Underlying Action concerns allegations of patent infringement. According to

Lexmark:

> Lexmark is a manufacturer of laser printers and toner cartridges for
> use with those printers. Lexmark's toner cartridges at issue in this
> case are covered by several of Lexmark's patents. Lexmark sells
> many of its patented toner cartridges at a reduced price but subject
> to a single-use patent license known as the "Prebate" program or
> the "Return Program." Lexmark also sells some of its patented
> cartridges at a regular price without the single-use patent license.
> The single-use patent agreement currently reads:
>
> **"Return Empty Cartridge to Lexmark for Remanufacturing
> and Recycling**
>
> "Please read before opening. Opening this package or using the
> patented cartridge inside confirms your acceptance of the following
> license agreement. This patented Return Program cartridge is sold
> at a special price subject to a restriction that it may be used only
> once. Following this initial use, you agree to return the empty
> cartridge only to Lexmark for remanufacturing and recycling. If
> you don't accept these terms, return the unopened package to your
> point of purchase. A regular price cartridge without these terms is
> available."
>                                          *     *     *
> Counterclaim Defendant Static Control is a supplier of parts and
> related products for use in remanufactuirng (sometimes called
> refilling) toner cartridges after their initial use (*i.e.*, depletion of

2

toner within the cartridge). For example, Static Control sells toner, microchips, drums, tools, and other components to its customers, who use these products to refill and otherwise remanufacture empty Lexmark toner cartridges. The end result of this remanufacturing process is to allow the cartridges to be re-used in Lexmark's laser printers. Each of the three other Counterclaim Defendants in this matter--Pendl, NER, and Micro Solutions Enterprises ("MSE")--is a customer of Static Control. Pendl, NER, and MSE each buys products from Static Control to remanufacture empty Lexmark toner cartridges to then re-sell to Lexmark's customers.

Lexmark's patent claims against Static Control and these remanufacturer defendants relate to the unlawful remanufacture and resale of Lexmark's toner cartridges. Lexmark's patent infringement claims primarily focus upon toner cartridges that Lexmark sells subject to the Prebate agreement, as described above. Lexmark's position is that the remanufacture of these single-use only cartridges by Pendl and others constitutes patent infringement, and that Static Control contributes to and/or induces Pendl's infringement.

*Lexmark International, Inc.'s Opposition to Motion to Quash Subpoena on Opposing party's Trial Counsel* [Doc. # 16, filed 11/27/2006] (the "*Response*") at pp.5-7.

On October 12, 2006, a co-defendant in the Underlying Action, Pendl, stated that it would rely on an advice-of-counsel defense to Lexmark's patent infringement claims. Id. at p.8. Thereafter, Pendl produced a letter dated August 26, 1999, written by Robert D. Becker, a lawyer then practicing at the law firm of Coudert Brothers (the "Becker Letter"). Becker was acting as counsel for Pendl at the time the Becker Letter was written. Among other things, the Becker Letter states that "[a]lthough no court has decided the particular issue presented by the specific facts in your case, we are of the opinion that Pendl is authorized to sell the above-mentioned replacement cartridges for Lexmark Optra Se printers." *Motion*, at Exh.4, pp.1-2.

3

Lexmark's subpoena to Bartlit Beck is intended to explore Pendl's state of mind with respect to willful infringement, and it commands the production by Bartlit Beck of nine categories of documents and the testimony of a representative of Bartlit Beck on eight enumerated topics. The production requests include: (1) "[a]ll documents and things relating to the subject matter discussed in Robert Becker's letter to Randy Pendl of August 26, 1999"; all documents and things that reflect, embody, or discuss communications between Bartlit Beck and Pendl relating to (2) "the subject matter discussed in Robert Beck's Letter to Randy Pendl of August 26, 1999"; (3) "Pendl's advice of counsel defense, including Pendl's decision to invoke the defense"; (4) "the scope, validity, and/or enforceability of Lexmark's Prebate Program";
(5) "communications with Pendl regarding the infringement of Lexmark's Patents"; (6) "the antitrust implications, *vel non*, of Lexmark's Prebate Program"; (7) "the contract law concerns, *vel non*, of Lexmark's Prebate Program"; (8) "the issue of whether Pendl's remanufacturing of used toner cartridges constitutes permissible repair"; and (9) "the legal and/or factual bases set forth in Robert Becker's letter to Randy Pendl of August 26, 1999." *Motion*, Exh. 6 (hereafter the "Subpoena") at Requests for Production 1-9. The deposition topics specified in the Subpoena include communications between Bartlit Beck and Pendl relating to: (1) "the subject matter discussed in Robert Becker's letter to Randy Pendl of August 26, 1999"; (2) "Pendl's advice of counsel defense, including Pendl's decision to invoke the defense"; (3) "the scope, validity, and/or enforceability of Lexmark's Prebate Program"; (4) "the infringement of Lexmark's Patents"; (5) "the antitrust implications, *vel non*, of Lexmark's Prebate Program"; (6) "the contract law concerns, *vel non*, of Lexmark's Prebate Program"; (7) "the issue of whether Pendl's remanufacturing of used toner cartridges constitutes permissible repair"; and (8) "the legal and/or

4

factual bases set forth in Robert Becker's letter to Randy Pendl of August 26, 1999."

Significantly, the subpoena defines "Pendl" to include Pendl's lawyers. Id. at Deposition Topics

1-8.

It is undisputed that Bartlit Beck does not represent Pendl in the Underlying Action.

*Motion*, Exh.3 (hereafter the "Smith Aff.") at ¶4. It also is undisputed that there have been no

direct communications between Bartlit Beck and any of the employees of Pendl. Id. at ¶9.

Bartlit Beck and the lawyers for Pendl and two other co-defendants in the Underlying

Action[1] have entered into a "common interest agreement," however, and consistent with that

agreement Bartlit Beck has communicated with the lawyers for Pendl, NER, and MSE as follows:

> Bartlit Beck has participated with counsel for [Pendl, NER, and
> MSE] in privileged communications concerning matters of common
> interest to those parties' preparation for trial pursuant to a common
> interest agreement. The common interest agreement does not
> contemplate the provision of, nor has it been used to provide, any
> party with any opinions as to the validity or infringement of any
> patent.

Id. at ¶7.

What Lexmark seeks to obtain through the Subpoena are documents and communications

between Bartlit Beck and Pendl's lawyers, exchanged pursuant to the common interest

agreement, concerning the Becker Letter and Pendl's advice of counsel defense. Lexmark

concedes as much, arguing that it is entitled to "full discovery of Pendl's state of mind," including

communications between Bartlit Beck and Pendl, "via Pendl's counsel, regarding the ***subject***

***matter*** of the Becker Opinion (*i.e.*, the validity of Lexmark's Prebate Program, the enforceability

---

[1]The two other co-defendants who are parties to the common interest agreement are NER
Data Products, Inc.; and Wazana Brothers International, Inc.

5

of Lexmark's patents against Pendl, and the infringement of Lexmark's patents)." *Response*, at

p3.

II.

Initially I must determine whether documents and information exchanged between the

lawyers for Static Control and the lawyers for Pendl are subject to any privilege or immunity from

discovery. Bartlit Beck argues that the information sought through the subpoena is not

discoverable because it otherwise is privileged and was exchanged pursuant to a common interest

agreement.

The common interest doctrine, frequently referred to by federal courts as the joint defense

privilege,[2] has been defined as follows:

> The joint defense privilege preserves the confidentiality of
> communications and information exchanged between two or more
> parties and their counsel who are engaged in a joint defense effort.
> Waiver of the joint defense privilege requires the consent of all
> parties participating in the joint defense. [T]he joint defense
> privilege is merely an extension of the attorney-client privilege and

---

[2]As the court noted in Securities Investor Protection Corp. v. Stratton Oakmont, Inc., 213
B.R. 433, 435 n.1 (Bankr. S.D.N.Y 1997):

> Federal courts have used the term "joint defense privilege" to refer
> to both the joint client privilege and the common interest rule
> privilege. . . . The joint client doctrine applies when clients share
> the same lawyer; whereas the common interest or allied lawyer
> doctrine applies when parties with separate lawyers consult
> together under the guise of a common interest or defense.
> Although the doctrines are conceptually different, the
> interchangeable use of the phrase "joint defense privilege" to refer
> to both of them has engendered considerable confusion.

Here, as did the court in the Securities Investor case, I use the term joint defense privilege
to refer to the situation where independently represented parties have agreed in one manner or
another to pursue a joint defense.

6

> the work-product doctrine. In other words, it confers no
> independent privileged status to documents or information. Thus,
> to be eligible for protection under the joint defense privilege, it
> must be established that the materials fall within the ambit of either
> the attorney-client privilege or the qualified immunity afforded to
> work product.

Metro Wastewater Reclamation Dist. v. Continental Casualty Co., 142 F.R.D. 471, 478 (D. Colo.

1992); accord Securities Investor Protection Corp. v. Stratton Oakmont, Inc., 213 B.R. 433, 435

(Bankr. S.D.N.Y. 1997). In addition, a party invoking the joint defense privilege to avoid

discovery must establish that the withheld information (1) arose in the course of a joint defense

effort and (2) was designed to further that effort. In re Grand Jury Proceedings, 156 F.3d 1038,

1042-43 (10th Cir. 1998).

Here, there is no dispute that Lexmark has brought suit in the Eastern District of

Kentucky against Static Control, Pendl, NER, and MSE alleging willful infringement of

Lexmark's patents. *Response*, at p.2. The only evidence before me on the issue of the

applicability of the joint defense privilege is the Affidavit of Joseph C. Smith, Jr., in which

Mr. Smith states:

> Bartlit Beck has participated with counsel for the parties with which
> Static Control is aligned in this litigation--NER Data Products, Inc.;
> Pendl Companies, Inc. ("Pendl"); and Wazana Brothers
> International, Inc. [d/b/a Micro Solutions Enterprises ("MSE")]--in
> privileged communications concerning matters of common interest
> to those parties' preparation for trial, pursuant to a common
> interest agreement. The common interest agreement does not
> contemplate the provision of , nor has it been used to provide, any
> party with any opinions as to the validity or infringement of any
> patent.
>                                             *    *    *

7

> There have been no communications between Bartlit Beck and
> Pendl Companies, Inc.

Smith Aff. at ¶¶7, 9.

Based on the evidence before me, I find that Static Control, Pendl, NER, and MSE have entered into a joint interest agreement. Information was exchanged between Static Control, Pendl, NER, and MSE, and their respective lawyers, in "privileged communications" in connection with those parties' preparation for trial against Lexmark. That information is therefore subject to the attorney-client privilege, the work-product doctrine, and the joint defense privilege.

Lexmark does not seriously dispute the existence or applicability of the joint defense privilege to the information commanded by the Subpoena, arguing instead that the discovery is appropriate anyway. *Response* at p.12. Lexmark does argue, however:

> [T]he alleged common interest agreement should not be given any
> weight by this Court because the parties' legal interests do not
> coincide s evidenced by the fact that NER has asserted a claim
> against and has served discovery on Static Control.

*Response*, at p.12 n.5.

Even if there is adversity between some of the parties to the common interest agreement, they still may invoke the joint defense privilege to protect communications from disclosure to third parties like Lexmark. Thomas E. Spahn, <u>A Practitioner's Guide to the Attorney-Client Privilege and the Work Product Doctrine</u> (2001) at §5.310(B), and collected cases.

8

III.

In In re EchoStar Communications Corporation, 448 F.3d 1294 (Fed. Cir. 2006), the

Court of Appeals for the Federal Circuit held:

> Once a party announces that it will rely on advice of counsel, for example,
> in response to an assertion of willful infringement, the attorney-client
> privilege is waived. The widely applied standard for determining the scope
> of a waiver of attorney-client privilege is that the waiver applies to all other
> communications relating to the same subject matter.

448 F.3d at 1299 (internal citations and quotations omitted).[3]

The circuit court in In re EchoStar also affirmed the decision of the district court that the

waiver of the attorney-client privilege applied to the advice of "any counsel regarding

infringement, . . . either before or after the filing of the complaint. . . ." Id. at 1297. As the court

stated, "[t]he overarching goal of waiver in such a case is to prevent a party from using the advice

he received as both a sword, by waiving privilege to favorable advice, and a shield, by asserting

privilege to unfavorable advice." Id. at 1303.

With respect to the waiver of the work product immunity, however, the circuit court held:

> The second category of work product [previously defined as those
> documents analyzing the law, facts, trial strategy, and so forth that
> reflect the attorney's mental impressions but were not given to the

---

[3]Pursuant to the mandate of the Federal Circuit, I apply its law and not the law of the
Tenth Circuit to the issue of privilege where, as here, the advice of counsel defense is involved:

> Federal Circuit law applies when deciding whether particular
> written or other materials relate to an issue of substantive patent
> law. A remedy for willful patent infringement is specifically
> provided for in the Patent Act; therefore, questions of privilege and
> discoverability that arise from assertion of the advice-of-counsel
> defense necessarily involve issues of substantive patent law.

In re EchoStar, 448 F.3d at 1298 (internal quotations and citations omitted).

client], which is never communicated to the client , is not
discoverable. Under Rule 26(b)(3), this so-called "opinion" work
product deserves the highest protection from disclosure. While an
accused infringer may waive the immunity for work product that
embodies an opinion in letters and memorandum communicated to
the client, he does not waive the attorney's own analysis and debate
over what advice will be given. Upon waiver of attorney-client
privilege, communicative documents, such as opinion letters,
become evidence of a non-privileged, relevant fact, namely what
was communicated to the client; however, counsel's legal opinions
and mental impressions that were not communicated do not acquire
such factual characteristics and are, therefore, not within the scope
of the waiver.

Id. at pp1303-04.

The thrust of the Federal Circuit's decision in In re EchoStar is simply that when a party

asserts the advice of counsel defense to willful infringement, it waives any claim of privilege or

immunity it has with respect to all communications that **the client received,** at whatever time and

from whatever counsel, on the issue of the alleged infringement. This rule allows the opposing

party to probe fully all advice received by the alleged infringer and which played any part in its

belief concerning infringement. That, however, is as far as the waiver goes. "By asserting the

advice-of-counsel defense to a charge of willful infringement, the accused infringer and his or her

attorney do not give their opponent unfettered discretion to rummage through all of their files and

pillage all of their litigation strategies." Id. at 1303. Documents and information not provided to

the alleged infringer, and which therefore played no part in its decisions concerning the alleged

infringement, maintain their privileged nature. Id. at 1305. In particular, "counsel's legal

opinions and mental impressions that were not communicated . . . [are] not within the scope of the

waiver." Id. at 1304.

10

My conclusion that <u>In re EchoStar</u> requires the disclosure only of materials and information provided to Pendl, and does not require the disclosure of information provided to Pendl's lawyers but never communicated to Pendl itself, is consistent with the ruling of the court in <u>Intex Recreation Corp. v. Team Worldwide Corp.</u>, 439 F. Supp. 2d 46 (D.D.C. 2006), where under similar facts the court held:

> A "middle ground" is the most appropriate approach to this issue, under which waiver extends only to those trial counsel work product materials **that have been communicated to the client** and contained conclusions or advice that contradict or cast doubt on the earlier opinions.

439 F. Supp. 2d at 52 (internal citations and quotations omitted; emphasis added).

In this case, Bartlit Beck had no direct communications with any employee of Pendl. Any communications by Bartlit Beck concerning the issue of infringement were with Pendl's lawyers and pursuant to the common interest agreement. Consequently, the rule of <u>In re EchoStar</u> does not apply here to require the disclosure of information exchanged between Bartlit Beck and Pendl's lawyers unless the information was thereafter transmitted to Pendl itself. Bartlit Beck cannot know what information was communicated between Pendl's lawyers and Pendl, of course, and the proper source of that discovery is Pendl or its lawyers, not Bartlit Beck.

IV.

Alternatively, I find that the Subpoena should be quashed pursuant to <u>Boughton v. Cotter</u>, 65 F.3d 823 (10th Cir. 1995). Relying on <u>Shelton v. American Motors Corp.</u>, 805 F.2d 1323, 1327 (8th Cir. 1986), the Tenth Circuit Court of Appeals in <u>Boughton</u> held:

> Taking the deposition of opposing counsel not only disrupts the adversarial system and lowers the standards of the profession, but it also adds to the already burdensome time and costs of litigation. It

11

> is not hard to imagine additional pretrial delays to resolve work-product and attorney-client objections, as well as delays to resolve collateral issues raised by the attorney's testimony. Finally, the practice of deposing counsel detracts from the quality of client representation. Counsel should be free to devote his or her time and efforts t preparing the client's case without fear of being interrogated by his or her opponent.

Boughton, 65 F.3d at 829 (internal quotations and citations omitted).

Consequently, before a party may depose its opposing counsel it first must make a showing that "(1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." Id. Lexmark has not and cannot meet this burden.

First, not only is Bartlit Beck not the sole source of the requested information, it is the wrong source. The relevant inquiry under In re EchoStar is what information Pendl received and considered in connection with the issue of infringement. Bartlit Beck had no communications with Pendl; its communications were with Pendl's lawyers only. Bartlit Beck does not know what part of those communications, if any, was passed on to Pendl. Lexmark must obtain discovery of the information concerning the issue of infringement communicated to Pendl from Pendl itself or its lawyers.

Second, under In re EchoStar, information not communicated to the party, including the uncommunicated work product of the party's own lawyers, is not relevant to the advice of counsel defense and is not crucial to Lexmark's preparation of its case.

V.

IT IS ORDERED that the Motion to Quash Improper Subpoena Served On Opposing

Party's Trial Counsel [Doc. #1]  is GRANTED.  The discovery commanded by the Subpoena

shall not be had.

IT IS FURTHER ORDERED that Bartlit Beck's request for attorneys' fees is DENIED.

Dated January 25, 2007.

                    BY THE COURT:

                     s/ Boyd N. Boland
                    United States Magistrate Judge

13